IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Patrick J. Griffin, III,

    Plaintiff

                            Civil Action No. WMN -02-1917

v.

Department of Veterans Affairs, et al.,

    Defendents

## DECLARATION OF MARTHA E. (M'LIZ) McLENDON

I, Martha E. (M'Liz) McLendon, hereby declare as follows:

1. I am currently an analyst working directly for the Director, Office of Field Programs, in the National Cemetery Administration (NCA), Department of Veterans Affairs, Washington, DC. I have been with NCA and its predecessor organization, the National Cemetery System; as a correspondence analyst; Chief, Executive Communications and Regulatory Division; and Executive Assistant to the NCA Deputy Under Secretary for Memorial Affairs. In my current position, I work with the Director, the highest-ranking position in the operations area of NCA, who is responsible for the daily operations of our Nation's 120 VA national cemeteries. In this capacity, I also work directly with the five Memorial Service Network (MSN) Directors, who have oversight and responsibility for the national cemeteries in their geographical areas. This declaration is based on personal knowledge obtained by me in the performance of my official duties.

2. NCA takes seriously its charge at 38 U.S.C. § 2403(c) that "all national and other veterans' cemeteries under the control of the National Cemetery Administration shall be considered national shrines as a tribute to our gallant dead. . . . " To that end, cemetery directors are instructed to work with their communities to further awareness of deceased

veterans: "Each national Cemetery Director has an opportunity and a responsibility to further exhibit community leadership by inspiring and encouraging a renewed public awareness of our deceased veterans on a least the two very meaningful major national holidays: Memorial Day and Veterans Day." (M40-2, Chapter 11, Ceremonies and Special Activities, dated May 1, 1984.) NCA permits memorial services with prior permission that honor veterans buried within specific cemeteries or that honor the service of America's veterans in general.

3. National cemeteries have, from time to time, been viewed as a potential location for speech of a partisan political nature and NCA has on rare occasions received requests from political figures to make announcements or speeches that include their partisan views. We have declined permission based upon regulations at 38 CFR 1.218. Indeed, NCA supplemented M40-2, Chapter 11, with a policy letter signed by the Director, National Cemetery System (precursor to the Under Secretary for Memorial Affairs) on October 29, 1993, to ensure that Cemetery Directors did not knowingly permit partisan speech by either political figures or members of the public. The policy letter states, in part, "It is not appropriate to invite non-office holding, partisan public figures to speak at public ceremonies and events in national cemeteries."

4. NCA has also refused entry to cemetery grounds to groups that have not received approval, or whose perceived message is contrary under 38 CFR 1.218 to those deemed appropriate for a national cemetery. For example, on March 19, 2003, the director of Los Angeles National Cemetery turned away approximately 70 anti-war protestors who attempted to gain access to the cemetery to present their point of view with the 85,000 veterans and family members interred at the cemetery as their backdrop. With the assistance of VA security, the protestors were denied access and were directed to an area outside the perimeters of the Federal Building nearby where they made their protest.

5. In May 2001, NCA's Calverton National Cemetery on Long Island, New York, received a request from a U.S. Congressman's staff for the Congressman to come to

the cemetery to speak with members of the press about a bill he was sponsoring that affected the length of time individual grave site flags remained in place at national cemeteries over Memorial Day. Initially, the Congressman's staff was told that he could meet with the press at the cemetery. Once VA's Central Office learned of the request it was determined that the request, if honored, would be contrary to 1.218(a)(14) and the caveat on "partisan" speech. Therefore, the Congressman's staff was contacted and the request was denied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2003.

MARTHA E. (M'LIZ) McLENDON