**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Patrick J. Griffin, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. WMN-02-1917 |
| v. | ) | |
| | ) | |
| Department of Veterans Affairs, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO**
**DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND ADMINISTRATIVE BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Point Lookout Confederate Cemetery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Previous Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    THE COURT LACKS JURISDICTION TO REVIEW PLAINTIFFS'
        CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A    Plaintiffs Lack Standing To Assert Their Claims For
               Declaratory And Injunctive Relief As They Face No
               Imminent Likelihood Of Suffering Injury In Fact.. . . . . . . . . . . . . . . . 11

        B.    Plaintiffs' Claims Are Not Ripe for Adjudication. . . . . . . . . . . . . . . . 14

        C.    Claims Asserted On Behalf Of People Who May Wish To
               Hear Speeches At Point Lookout Must Be Dismissed As
               Too Generalized to Confer Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    II.    VA'S APPLICATION OF ITS REGULATION TO PLAINTIFFS' SPEECH IS
        CONSTITUTIONAL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    The Restrictions In § 1.218(a)(14) Are Reasonable As It Is Being
               Applied In The Same Manner As Has Already Been Held
               Reasonable By Two Courts Of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.    The Court Lacks Jurisdiction To Hear Plaintiffs' Third Claim For
               Relief As It Is Barred By Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . 21

        C.    Plaintiff's "As Applied" Challenge To C.F.R. 38 § 1.218(a)(14)

Fails Because The Regulation Was Applied In A Viewpoint-
Neutral
Manner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      D.      VA's Request For A Brief Summary Of Remarks Is A Reasonable
And Viewpoint Neutral Application Of § 1.218(a)(14) . . . . . . . . . . . . . 26

III.     SHOULD THE COURT REACH THE MERITS OF THE CASE,
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON
THE VIEWPOINT NEUTRAL MANNER IN WHICH VA APPLIES
§ 1.218(A)(14). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.     THE PUBLIC INTEREST FAVORS UPHOLDING THE RESTRICTIONS ON
PLAINTIFFS' SPEECH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**INTRODUCTION**

Plaintiffs have asked this Court to issue declaratory and injunctive relief based on both facial and as applied constitutional challenges to 38 C.F.R. § 1.218(a)(14). Plaintiffs also assert facial and as applied challenges to certain actions intended to fulfill the regulation's objective to insure that VA cemeteries remain "national shrines as a tribute to our gallant dead."

The VA regulation at issue, 38 C.F.R. § 1.218(a)(14), has already been scrutinized by the Court of Appeals for the Federal Circuit and been upheld as facially constitutional in its entirety. Therefore, the only aspect of plaintiffs' complaint that has not been conclusively resolved is whether § 1.218(a)(14) is unconstitutional as applied to plaintiffs in the nonpublic forum of the Point Lookout Confederate Cemetery.

Dismissal of plaintiffs' claims is justified for several reasons. First, plaintiffs claims suffer from several jurisdictional infirmities. Plaintiffs lack standing to prosecute this action as the injuries they allege are entirely speculative and do not constitute cognizable injury in fact. At best, plaintiffs are attempting to assert First Amendment rights for a third party that is not part of this lawsuit, the Camalier Camp of the Sons of Confederate Veterans. Plaintiffs' claims are also not ripe as they have not yet sought permission to hold a ceremony at Point Lookout and therefore are under no imminent threat of application of § 1.218(a)(14).

Even if this Court determines that plaintiffs have standing and the claims are ripe, plaintiffs' have failed to state a claim upon which relief can be granted. First, it has already been decided by two Courts of Appeals that § 1.218(a)(14) imposes reasonable, viewpoint neutral restrictions on speech in light of the purpose and nature of VA cemeteries. Plaintiffs' pleadings cannot show that VA will apply § 1.218(a)(14) to them in a viewpoint discriminatory manner.

In any event, even if there were a cognizable claim before the Court, the defendants would be entitled to summary judgment.  The informal discovery conducted in this case demonstrates that VA applies § 1.218(a)(14) to all prospective speakers regardless of the proposed viewpoint to be expressed, be they Members of Congress wishing to discuss new legislation, peace protesters seeking to protest the war in Iraq, or groups holding memorial observances at cemeteries.  Therefore, § 1.218(a)(14), and VA's application of that regulation, constitutionally limit both political speech and unauthorized orations to groups of people in a viewpoint neutral manner.

## STATUTORY AND ADMINISTRATIVE BACKGROUND

National cemeteries such as Point Lookout Confederate Cemetery ("Point Lookout") are under the control of the National Cemetery Administration within the Department of Veterans Affairs.  38 U.S.C. §§ 2400(b), 2403(c).  National cemeteries are to be maintained as "national shrines as a tribute to our gallant dead."  Id. § 2403(c).  Pursuant to this mandate, VA has the obligation to maintain national cemeteries under its control "as national shrines in perpetuity as a final tribute of a grateful Nation to honor the memory and service of those who served in the Armed Forces."  Department of Veterans Affairs, Statement of Regulatory Priorities, 66 Fed. Reg. 61,261 (Unified Agenda, Dec. 3, 2001).

The Secretary of Veterans Affairs is "authorized to make all rules and regulations which are necessary or appropriate" to administer cemeteries and memorials under the Department's jurisdiction. 38 U.S.C. § 2404(a).  The Secretary has delegated this authority to the Under Secretary for Memorial Affairs, who heads the National Cemetery Administration (formerly the

2

Director of the National Cemetery System).  38 C.F.R. § 2.6(f); see 38 U.S.C. §§ 512, 2400(a)

(authority for delegation); Pub. L. No. 93-43, § 6(a)(1), 87 Stat. at 81 (Director of NCS under

prior law).

The regulations of the Department of Veterans Affairs (VA) include a general provision

on "Security and law enforcement at VA facilities," which applies to "all property under the

charge and control of VA."  38 C.F.R. § 1.218(a).  That section, among other things, prohibits the

unauthorized destruction of government property; requires compliance with official signs;

prohibits disturbances such as obstructing the usual use of entrances and corridors; and prohibits

operating a motor vehicle under the influence of alcohol or drugs.  Id. § 1.218(a)(3), (4), (5), (7).

These provisions are very similar to regulations promulgated by other federal agencies.  See

4 C.F.R. pt. 25 (General Accounting Office); 32 C.F.R. Part 228 (Department of Defense); 39

C.F.R. § 232.1 (Postal Service); 41 C.F.R. Subpart 101-20.3 (GSA).  Like the regulations of

these other agencies, VA's regulation sets forth penalties for violation of its prohibitions.  See 38

C.F.R. § 1.218(b).

VA's regulations include a provision entitled "Demonstrations":

(i) All visitors are expected to observe proper standards of decorum and
decency while on VA property. Toward this end, any service, ceremony, or
demonstration, except as authorized by the head of the facility or designee, is
prohibited. Jogging, bicycling, sledding and other forms of physical recreation on
cemetery grounds is prohibited.

(ii) For the purpose of the prohibition expressed in this paragraph,
unauthorized demonstrations or services shall be defined as, but not limited to,
picketing, or similar conduct on VA property; any oration or similar conduct to
assembled groups of people, unless the oration is part of an authorized service; the
display of any placards, banners, or foreign flags on VA property unless approved

3

by the head of the facility or designee; disorderly conduct such as fighting, threatening, violent, or tumultuous behavior, unreasonable noise or coarse utterance, gesture or display or the use of abusive language to any person present; and partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.

Id. § 1.218(a)(14).  This provision was upheld by the Federal Circuit Court of Appeals in Griffin v. Secretary of Veterans Affairs, 288 F.3d 1309 (Fed. Cir. 2002), cert. denied, 123 S.Ct. 410, 154 L.Ed.2d 290 (2002) (referred to herein as "Griffin II").[1]

## FACTUAL BACKGROUND

### I.    Point Lookout Confederate Cemetery

During the Civil War, the United States held prisoners captured from the Southern armies in a camp at Point Lookout, Maryland.  A number of those who were imprisoned at Point Lookout died during their imprisonment, and many remains are now rest in a common grave at Point Lookout Confederate Cemetery ("Point Lookout").  See  Griffin II at 1314.  The State of Maryland transferred ownership of the Cemetery to the United States in 1910.  Griffin v. Dep't of Veteran Affairs, 274 F.3d 818, 819 (4th Cir. 2001), cert. denied, 123 S.Ct. 410, 154 L.Ed.2d 290 (2002) (referred to herein as "Griffin I").

When the United States acquired ownership of Point Lookout, administration of the area was initially performed by the Department of War and, later, by the Department of the Army.  In 1973, the administration of Point Lookout, along with most other national cemeteries, was

---

[1] This provision is very similar to a regulation of the Department of the Army, which administers Arlington National Cemetery.  See 32 C.F.R. § 553.22(f).

4

transferred to the newly-created Department of Memorial Affairs, later the National Cemetery System within the Veterans Administration, which became the Department of Veterans Affairs in 1988. Id.; Pub. L. No. 93-43, § 6(a)(1), 87 Stat. 75, 81 (1973). The National Cemetery System became the National Cemetery Administration in 1998. Pub. L. No. 105-368, § 403(a), 112 Stat. 3315, 3338 (1998).

Ms. Robin Pohlman[2], former Director of VA's Baltimore National Cemetery (which has jurisdiction over Point Lookout), on an annual basis, has granted the Camalier Camp of Sons of Confederate Veterans ("Camalier Camp") permission to conduct a memorial service at the Point Lookout in early June. See Aug. 2002 Letter from Mr. Roger Rap (then VA's Deputy Under Secretary for Operations) to Mr. J. B. Couch, Amended Compl. Ex. 7. These annual requests were granted based on the representations from the Camalier Camp that the purpose of the memorial service was to honor those buried at Point Lookout. See id. Prior to the June 8, 2002 ceremony, the Camalier Camp had conducted memorial ceremonies that, on the whole, respected the decorum and sanctity of Point Lookout. See id.

On March 1, 2002, J. B. Couch, on behalf of the Camalier Camp, sent Ms. Pohlman a request for approval to hold the 2002 memorial service at Point Lookout on June 8, 2002. See June 5, 2002 Letter from Roger Rapp to J. B. Couch, Amended Compl. Ex. 3. That request stated that the purpose of the service was to "honor the veterans who are buried at Point

---

[2] Ms. Pohlman assumed other duties within the National Cemetery Administration on September 23, 2002. She was succeeded as the Director of the Baltimore National Cemetery by Mr. Ken Stoner.

Lookout." Id.  Based on the expectation that the memorial service would commemorate the

Confederate war dead, VA, on March 19, 2002, granted Camalier Camp approval to hold the

June 8, 2002 ceremony.  See id.

On May 24, 2002, Ms. Pohlman and Mr. Rapp, received a faxed letter from Michael

Wright, Esq. on behalf of Patrick Griffin and the Maryland Division of the SCV, that enclosed a

speech that Mr. Griffin intended to give at Point Lookout on June 8, 2002.  See Amended Compl.

Ex. 2.  Mr. Griffin's intended remarks, which were entitled 'Respect for Confederates:  Point

Lookout Cemetery," contested VA's Confederate flag policy and protested what Mr. Griffin

perceived as inadequate maintenance of the cemetery.  See id.  The intended remarks

characterized VA's flag policy as "insidious" and the Fourth Circuit Court of Appeal's decision

upholding the policy as "hogwash[.]"  See id.  The speech also accused VA of "a deliberate

program of demolition [of the cemetery] by neglect[,]" and accused VA of "'big brother'

activities[.]"  See id.

VA viewed such remarks as inconsistent with maintaining the decorum of Point

Lookout.  See Amended Compl. Ex. 3.  VA also viewed the remarks as not relating to the

honoring of Confederate war dead, which was the stated purpose of the service requested by the

Camalier Camp, and approved by VA.  See id.  Accordingly, on June 5, 2002, Tim McClain,

VA's General Counsel, sent a letter to Mr. Wright responding that political statements in Mr.

Griffin's speech would not be consistent with maintaining the decorum of a national cemetery

and that VA expected Mr. Griffin to revise his remarks so that they would be limited to paying

tribute to the Confederate soldiers buried at Point Lookout.  See Amended Compl. Ex. 4.  In

addition, Mr. Rapp wrote to Mr. Couch to inform him of Mr. Griffin's intended remarks.  See
Amended Compl. Ex. 3.  Mr. Rapp's letter also warned Mr. Couch that if the Camalier Camp
consented to or acquiesced in the delivery of Mr. Griffin's proposed speech, subsequent
authorization for the Camalier Camp to hold future services at Point Lookout would be
jeopardized.  See id.

Plaintiffs sought a temporary restraining order to prevent enforcement of 38 C.F.R. §
1.218(a)(14) at the June 8, 2002 ceremony.  The request was denied following a hearing on the
matter before Judge Andre M. Davis of this Court.

At the June 8, 2002 memorial service two speeches of particular significance were given.
The first, by plaintiff Patrick Griffin, was a modified version of the proposed speech voluntarily
provided to VA in advance of the ceremony.  See Amended Compl. Ex. 5.  VA did not object to
the speech as modified by Mr. Griffin.  However, another speech presented during the memorial
service by Reverend Alistair Anderson[3] contained remarks inappropriate in national cemetery,
including:

(1)    lamenting what he described as the "white liberal socialists and
elitist activist of the country [who have] sponsored and nurtured
attacks on all the traditional aspects of our nation." See, Amended
Comp. of P., Ex. 6, p. 2;

(2)    criticizing "the rise of uncontrolled Feminism, the ugly, demonic
Sexual Revolution and the ever increasing octopus-like
domination and control of the Federal Government." See id.; and

---

[3] Reverend Anderson's speech, which was not provided to VA in advance, was
subsequently posted on the Point Lookout POW Descendent's Organizations website,
http://members.tripod.com/~PLWOW/plpow.htm.

    (3)    declaring that SCV members should oppose "the enormous growth of the bureaucratic Federal Government and the great centralization of absolute power in Washington, D.C."  See id.

Reverend Anderson also went on to express personal views that were critical of a number of individuals and organizations, including the National Association for the Advancement of Colored People, the Southern Poverty Law Center, and the Governor of Virginia.  See id p. 6-7. A review of Rev. Anderson's speech reveals that it was not devoted to honoring the Confederate prisoners buried at Point Lookout, but rather to commentary on current events and other statements of a political nature.  Amended Comp. Ex. 6.

In response to the events that occurred at the June 8, 2002 memorial service, Roger Rapp, wrote a letter to J.B. Couch, Commander, Camalier Camp, Sons of Confederate Veterans, received by Mr. Couch on August 9, 2002.  See Amended Compl. Ex. 7.  The letter emphasized the cooperative relationship between VA and the Camalier Camp in prior ceremonies held at Point Lookout and expressed a hope to maintain that relationship in the future.  See id. However, due to the nature of the remarks made by Rev. Anderson, VA sought Camalier Camp's assurances that it would make its best efforts to avoid political or partisan statements during subsequent authorized memorial services conducted by the Camalier Camp at Point Lookout Cemetery.  See id.  In an effort to insure the continued cooperative relationship and to give the Camalier Camp the greatest opportunity to conduct future ceremonies, VA requested the Camalier Camp provide a schedule of events along with a brief summary of the intended remarks of any speakers when it submitted its petition 30 days prior to the proposed event in 2003.  See id.

## II.    <u>Previous Litigation</u>

In September 2000, Mr. Griffin filed suit in this Court challenging VA's Confederate flag policy, which limits the display of a Confederate flag at VA national cemeteries where Confederate soldiers and sailors are buried to two days a year - Memorial Day and Confederate Memorial Day in States with a Confederate Memorial Day, or an approved Ceremonial Day in those States (such as Maryland) that do not recognize Confederate Memorial Day.  Mr. Griffin prevailed in the District Court on his as-applied challenge to the flag policy provisions of 38 C.F.R. § 1.218(a)(14), although the Court ruled that it lacked jurisdiction over his facial challenge to the regulation.  <u>Griffin v. Dep't of Veterans Affairs</u>, 129 F. Supp. 2d 832 (D. Md. 2001).  The Fourth Circuit reversed on the merits as to plaintiff's as-applied challenge to VA's refusal to grant him permission to display a Confederate Flag at Point Lookout on a daily basis. <u>Griffin I</u>.

Mr. Griffin subsequently filed a petition in the Federal Circuit to invalidate § 1.218(a)(14).  The Federal Circuit denied his petition and upheld the facial validity of the regulation in its entirety.  <u>Griffin II</u>.  The Supreme Court denied petitions for certiorari in <u>Griffin I</u> and <u>Griffin II</u>.

## III.    <u>Plaintiffs' Claims</u>

Plaintiffs in the Amended Complaint are Mr. Griffin, the Sons of Confederate Veterans ("SCV") (a Mississippi non-profit corporation) and the Point Lookout Prisoner of War

Association ("PLPOW") (a non-profit unincorporated association).  Complaint ¶¶ 3-5.[4]  The

defendants, in addition to VA itself, are Ken Stoner (Director of Baltimore National Cemetery),

and Roger Rapp, who are both sued in their official capacities.  Id. ¶¶ 6-8.  Plaintiffs seek four

claims of relief: (1) declaratory and injunctive relief against what they allege is the

unconstitutionality of the Partisan Activities Prohibition of  38 C.F.R. § 1.218(a)(14) as applied

to partisan speech, particularly speech that expresses the viewpoints of Rev. Andersen given at

the June 8, 2002 Confederate memorial ceremony; (2) declaratory and injunctive relief against

what they allege is the unconstitutionality of the Orations Prohibition of  38 C.F.R. §

1.218(a)(14) as applied to plaintiffs; (3) declaratory and injunctive relief against what they

allege is the unconstitutional prohibition of partisan speech, both facially and as applied, against

plaintiffs; and (4) declaratory and injunctive relief against what they allege is the

unconstitutionality, both facial and as applied, of VA's request to the Camalier Camp to provide

a brief summary of intended remarks to be given at the June 2003 Confederate memorial

ceremony prior to VA's grant of approval to hold the event.

## ARGUMENT

## I.      THE COURT LACKS JURISDICTION TO REVIEW PLAINTIFFS' CLAIMS.

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual

'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750 (1984).  This is a "bedrock

requirement."  Valley Forge Christian College v. Americans United for Separation of Church

---

[4] The Camalier Camp of the Sons of Confederate Veterans is no longer a plaintiff to this litigation and does not challenge application of the regulation to it or others in the future.

and State, Inc., 454 U.S. 464, 471 (1982). As the Supreme Court stated in Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37 (1976), "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." See also Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any matter unless it involves a case or controversy.").

Plaintiffs have failed to establish two of the primary components of the "case or controversy" requirement: that they have standing to bring the lawsuit and that their claims are ripe for adjudication.

A.     **Plaintiffs Lack Standing To Assert Their Claims For Declaratory And Injunctive Relief As They Face No Imminent Likelihood Of Suffering Injury In Fact.**

It is axiomatic that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," and goes to the Court's very jurisdiction to hear the case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing requires: (1) that the plaintiff personally has suffered actual or threatened injury that is concrete and particularized, not conjectural or hypothetical; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision from the court." Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir 1998) (citing Lujan 504 U.S. at 560-61). "[A] deficiency on any one of the three prongs suffices to defeat standing." US Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

11

In order to assert standing, a plaintiff must "face 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" <u>Local 391, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. City of Rocky Mount</u>, 672 F.2d 376, 379 (4th Cir. 1982) (citing <u>Hickory Fire Fighters Ass'n v. City of Hickory, NC</u>, 656 F.2d 917 n.5 (4th Cir. 1981) (quoting <u>Babbitt v. United Farm Workers</u>, 422 U.S. 289, 298 (1979))). It is also settled that "'a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" <u>Burke</u> at 405 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975); <u>see also</u> <u>New World Radio v. FCC</u>, 294 F.3d 164, 170 (D.C. Cir. 2002) ("[t]he burden is on the party seeking judicial review 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's powers.'") (internal citations omitted).

Plaintiffs have failed to allege facts sufficient to demonstrate the type of injury in fact necessary for the injunctive relief they seek. They have not sought approval to hold a ceremony at Point Lookout. The only relevance of this year's ceremony, as it relates to these plaintiffs, is Mr. Griffins vague statement that he "wishes to engage in, and hear, forms of speech the VA has forbidden at the Cemetery." Amended Compl. of P. ¶ 3. Nor have plaintiffs alleged an "as applied" challenge that they have been prevented from speaking with others while visiting the cemetery grounds.

Quite the contrary, the allegations of the complaint state that plaintiffs have made informal visits to the cemetery during which they discuss and criticize VA policies and engage in impromptu group discussions. E.g., Complaint ¶¶ 13, 24. There is no allegation that they

have interacted with VA authorities on such occasions or have been threatened with regulatory

enforcement against such activities.  Nor is there or could there be a meritorious allegation that

the regulation restricts such activities.   As can be seen by the allegations of the complaint, ¶ 11,

the regulation speaks only to "oration or similar conduct to assembled groups of people."

Informal, impromptu discussions among groups of people are not the same thing as oration to

assembled groups.  As the Federal Circuit recognized in Griffin II, " . . . [plaintiff] must show

that 38 C.F.R. § 1.218(a)(14) poses more than a theoretical danger to protected speech."

Plaintiffs have never had an application to hold a ceremony at the cemetery rejected, nor are

they threatened with imminent enforcement of § 1.218(a)(14).[5]

Shorn of hyperbole, plaintiffs' amended complaint merely attempts to assert the First

Amendment rights of a third party that does not itself object to VA's policy.  The Camalier

Camp, not plaintiffs, is subject to the requirements of providing a brief summary of intended

remarks for the June 14, 2003 ceremony and it is the Camalier Camp that has been notified that

failure to abide by § 1.218(a)(14) may result in VA's refusal to grant the Camalier Camp access

to Point Lookout in the future.   See Amended Compl. Ex. 3 & 7.  But the Camalier Camp has

withdrawn its challenge to VA's regulation and is not longer a plaintiff.  Thus, whether the

Camalier Camp would have standing to complain about VA's policies and regulations based on

the correspondence between VA and the Camalier Camp is a moot issue.  See Amended

_____

[5] Even if Mr. Griffin were to argue he has standing due to the events that occurred
surrounding his speech at the June 8, 2002 ceremony, his claims are still barred as they are
unripe.  See infra, p. 18.

Compl.of P., Ex. 3, 4 and 7.[6]

Because plaintiffs cannot demonstrate that they have been injured by VA's conduct, there is no basis for their as applied challenge. Such "indirectness of injury, while not necessarily fatal to standing, 'may make it substantially more difficult to meet the minimum requirement of Art. III: [I.e.,] [t]o establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm.'" Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 44-45 (1976), quoting Warth v. Seldin, 422 U.S. 490, 505 (1975). As Supreme Court has elsewhere explained:

> When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to control or to predict . . . .

Lujan, 504 U.S. at 562 (emphasis in original). Accord, Burke at 405 (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975).

### B.    Plaintiffs' Claims Are Not Ripe for Adjudication.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Laboratories. v. Gardner, 387 U.S. 136, 148-49 (1967). The Supreme Court recently stressed, "[a] claim is not

---

[6] The Camalier Camp has agreed to abide by § 1.218(a)(14), provide a brief summary of speakers and is willing to refuse a place on its platform for those who speakers who are unwilling to provide a summary. See infra.

ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotation marks and citations omitted).  It is a well-settled principle that courts should not pass on issues of constitutionality until it is necessary to do so to preserve the rights of the parties.  Coffman v. Breeze Corps., 323 U.S. 316, 324-325 (1945).  Thus, "[c]ourts are particularly vigilant to ensure that cases are ripe when constitutional questions are at issue." Artway v. Attorney Gen'l of the State of New Jersey, 81 F.3d 1235, 1249 (3d Cir. 1996).   In deciding whether judicial review is proper, a court must  evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Texas v. United States, 523 U.S. at 300-01 (quoting Abbott Laboratories, 387 U.S. at 149).

Plaintiffs' claim fails the first prong of the Abbott test because there are uncertainties yet to be resolved concerning possible future speech by plaintiffs' at the cemetery.  In order to present a justiciable claim, plaintiffs must present a record that they are subject to an actual or imminent application of the regulation.  See Renne v. Geary, 501 U.S. 312, 321-22 (1991).  The Fourth Circuit has consistently held that without a factual record of actual or threatened action by an agency that would result in suppression of speech, no ripe, justiciable controversy exists. See Woodall v. Reno, 47 F.3d 656, 658 (4th Cir. 1995), cert. denied, 515 U.S. 1141 (1995); see also Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 198 (4th Cir. 1998), cert. denied, 522 U.S. 1077 (1998).  As the Fourth Circuit concisely states:

> [a] case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or actions giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings.

Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 665 (4th Cir. 1997) (cits. omitted).

That is not the case here.  Plaintiffs seek declaratory judgments and injunctions on the

grounds:

> (1) "that the Partisan Activities Prohibition of 38 C.F.R. § 1.218(a)(14) is
> unconstitutional as applied to . . . [v]erbal speech at the cemetery . . . and [a]ny
> speech that expresses the viewpoints set forth in plaintiff Griffin's intended
> speech and Fr. Anderson's speech . . . or similar viewpoints";

> (2) that the Orations Prohibition of 38 C.F.R. § 1.218(a)(14) is unconstitutional
> as applied speech by and among plaintiffs, their members and other persons at
> the Cemetery;

> (3) "that both facially and as applied to speech at the Cemetery, VA's
> prohibitions on 'political' speech, 'personal views' critical of individuals,
> governments or organizational entities and 'commentary on current events
> violate the First Amendment; and,

> (4) "that on its face and as applied to Plaintiffs, the VA's censorship requirement
> violates the First Amendment."

Amended Compl. pp. 20-21

But, plaintiffs have not sought an application to hold a ceremony at Point Lookout and VA has

not been given the opportunity make any decision on such a request.  Thus, plaintiffs seek

injunctions against enforcement of a regulation that has not been applied to them.  This is

obviously not an "as applied" challenge and, therefore, is not ripe for judicial review at this

juncture.  See Woodall at 658.  Plaintiffs' claims, at bottom, amount to a facial challenge to the

regulation, which has already been rejected by the Federal Circuit. Griffin II, 288 F.3d at 1331. [7]

---

[7]  Concerns about the ambiguity and arbitrary enforcement of the term "partisan activity"
have already been rejected as a matter of law; the Federal Circuit ruled that the term "is well-
explained by the regulations and we fail to see any real ambiguity in its definition."  Griffin II at
1330.  Likewise, with respect to the regulatory term "oration . . . to assembled groups of people,"

An independent reason for dismissing plaintiffs' unripe claims is that deferring consideration of this claim will cause no hardship for plaintiffs.  The second prong of the <u>Abbot</u> test requires a determination of the extent of hardship to the plaintiff if judicial review is deferred.  <u>See</u> <u>Texas,</u> 523 U.S. at 300-01 (quoting <u>Abbott Laboratories</u>, 387 U.S. at 149).  In assessing the hardship to the parties, the Fourth Circuit has held that a court must determine whether postponing review will create harm to the plaintiff that is "immediate, direct, and significant."  <u>West Virginia Highlands Conservancy, Inc. v. Babbitt</u>, 161 F.3d 797, 801 (4th Cir. 1998) (cits. omitted).  A determination of hardship necessary to warrant judicial review depends upon the "totality of the circumstances."  <u>Id.</u>  No direct harm is inflicted on plaintiffs by deferring consideration because they have other appropriate outlets to express their political or partisan views without resorting to the nonpublic forum of a cemetery for war dead.  Moreover, as described above, it is the Camalier Camp that might be affected by the terms of § 1.218(a)(14), and it is not longer a plaintiff to this litigation.

Finally, plaintiff Griffin's claim is unripe, despite what took place last year at Point Lookout, because he has done nothing this year that would result in enforcement of § 1.218(a)(14); he has not applied to hold his own ceremony, nor provided (or been asked to provide by VA) a brief summary of intended remarks that might run afoul of the partisan prohibition in § 1.218(a)(14).  Even if Griffin were to claim that he has standing due to alleged unconstitutional application of § 1.218(a)(14) to him at the 2002 ceremony (a claim VA

---

the Federal Circuit expressed "little doubt that visitors of ordinary intelligence reading section 1.218(a)(14) would understand what behavior was expected of them – particularly on the grounds of a national cemetery."  <u>Griffin II</u>, 288 F.3d at 1330.

specifically denies), the Fourth Circuit has held "'[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse threat.'" Jordahl, 122 F.3d at 198 (4th Cir. 1998) (quoting Renee v. Geary, 501 U.S. 312 (1991)).

Because plaintiffs claims are not fit for adjudication, and there is no hardship to be suffered by plaintiffs if judicial action is deferred, this Court should dismiss plaintiffs' claims as unripe.

### C.    Claims Asserted On Behalf Of People Who May Wish To Hear Speeches At Point Lookout Must Be Dismissed As Too Generalized To Confer Standing.

Claims for Relief I and II in Plaintiffs' Amended Complaint allege that people who may wish to hear speech prohibited by § 1.218(a)(14) are being denied their First Amendment rights. Not only are these claims entirely speculative, but courts are hesitant to adjudicate a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens.'" Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir 1998) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). Even if these plaintiffs were to satisfy standing on their own, a court should not find standing to assert generalized claims that affect large groups equally. Id. Under plaintiffs theory, it is not just those who are members of plaintiffs' organizations who may be affected by application of § 1.218(a)(14), but anyone who happens to attend the ceremony. This is too attenuated a connection to confer standing for these claims on these plaintiffs.

### II.    PLAINTIFFS' DO NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE VA'S APPLICATION OF ITS REGULATION, AS APPLIED, IS CONSTITUTIONAL.

18

Even if the plaintiffs had standing and their claims were not premature, the claims alleged in Plaintiffs' Amended Complaint should be dismissed because, even if the "as applied" allegations of the complaint were accepted as true, they fail to allege a claim upon which relief may be granted.  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir.1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992), cert. denied, 510 U.S. 828 (1993).  A court is justified in granting a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.  Id. at 244.

The government may, consistent with the Constitution, limit the exercise of First Amendment rights on public property.  "[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." USPS v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981).  In fact, governmental actions are subject to a lower level of First Amendment scrutiny when the activity in question is not regulation or lawmaking, but the management of governmental properties as proprietor.  See United States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion).

The degree to which the government may restrict First Amendment activity on public property varies along a "spectrum" depending on the "character" and "purpose" of the property

19

involved.  <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 44-45 (1983);

<u>Kokinda</u>, 497 U.S. at 732.  Generally, the Supreme Court classifies government-owned property

into three categories for this purpose: "the traditional public forum, the public forum created by

government designation, and the nonpublic forum."  <u>Cornelius v. NAACP Legal Defense &</u>

<u>Educ. Fund, Inc.</u>, 473 U.S. 788, 802 (1985).  It is undisputed that Point Lookout Confederate

Cemetery is a nonpublic forum.  <u>See</u> Amended Compl. ¶ 26.  <u>See</u> <u>also</u>,  <u>Griffin I</u>, 274 F.3d at

820 (the district court and the parties agreed on this point); <u>Griffin II</u>, 288 F.3d at 1322.  <u>Accord</u>

<u>Warner v. City of Boca Raton</u>  64 F. Supp. 2d 1272, 1291 (S.D. Fla. 1999) (ruling that

cemeteries are nonpublic fora).

 Restrictions on First Amendment activity in nonpublic fora need only be "reasonable and

not an effort to suppress expression merely because public officials oppose the speaker's view."

<u>Kokinda</u>, 497 U.S. at 730.  Indeed, "[c]ontrol over access to a nonpublic forum can be based on

subject matter and speaker identity so long as the distinctions drawn are reasonable in light of

the purpose served by the forum and are viewpoint neutral."  <u>Cornelius</u>, 473 U.S. at 806.  In

addition, there does not need to be a record of past disturbances to justify the denial of access to

a non-public forum on the grounds that the proposed use *may* disrupt the property's intended

functions.  <u>See</u> <u>Perry Educ. Ass'n. v. Perry Local Educs.' Ass'n</u>, 460 U.S. 37, nt. 12 (1983)

(citing <u>Greer v. Spock</u>, 424 U.S. 828 (1976)).

> **A. 38 C.F.R. § 1.218(a)(14) As Applied In This Case is Reasonable As It Is Being Applied In the Same Manner As Has Already Been Held Reasonable By Two Courts Of Appeal.**

It has been repeatedly held that § 1.218(a)(14) is a reasonable means to restrict speech in

light of the purpose served by the cemetery. Two separate courts have examined this issue and come to the same conclusion. The Federal Circuit Court of Appeals in Griffin II concluded, "that the discretion vested in VA administrators by section 1.218(a)(14) is reasonable in light of the characteristic nature and function of national cemeteries." Griffin II at 1325. The Fourth Circuit Court of Appeals similarly concluded that because, "[t]he First Amendment does not preclude the VA from taking steps to preserve the nature of the nonpublic forum . . . the VA's restrictions are reasonable in light of the nature of this particular forum, a cemetery dedicated to honoring, as Americans, the Nation's war dead." Griffin I at 824.

In the present case, VA is applying § 1.218(a)(14) in the same reasonable manner for the same purposes. VA reasonably restricts partisan speech and unauthorized orations to groups of people in order to "honor, as Americans, in tranquil and nonpartisan surroundings, those who have given their lives to the Nation." Griffin I at 820. (emphasis added). The goal of VA in restricting partisan speech and unauthorized orations, just as it was in Griffin I and Griffin II, is "to ensure that cemeteries remain 'sacred to the honor and memory of those interred or memorialized there' . . ." Griffin II, 288 F.3d at 1325. Therefore, as has already been decided by two Courts of Appeal, restricting speech that is inapposite to these goals and the nature of the cemetery is a reasonable exercise of VA's authority.

### B.    The Court Lacks Jurisdiction To Hear Plaintiffs' Third Claim For Relief As It Is Barred By Res Judicata.

Plaintiffs' third claim for relief seeks declaratory and injunctive relief because VA's prohibition on "political" speech, "personal views" critical of individuals, governments or organizational entities and "commentary on current events" allegedly violate the First

Amendment.  The terms challenged by plaintiffs are synonyms for partisan/political activities and track directly with the definition provided in § 1.218(a)(14)(ii).  Therefore, the Court lacks jurisdiction over this claim because it is no more than another facial attack on the regulation and the doctrine of res judicata bars plaintiffs from relitigating this settled issue.

As an initial matter, a facial challenge to the regulation may be brought only in the Federal Circuit under 38 U.S.C. § 502.  Griffin, 129 F. Supp. 2d at 837.  And, as this Court is aware, the Federal Circuit has examined § 1.218(a)(14) and affirmed the regulation in its entirety against Mr. Griffin's facial challenge.  Griffin II, 288 F.3d at 1331.  Section 1.218(a)(14) specifically prohibits "partisan activities" and in it defines these as "those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise." 38 C.F.R. § 1.218(a)(14)(ii).  The Federal Circuit held "[t]he term 'partisan activity' is well-explained by the regulation and we fail to see any real ambiguity in its definition." Griffin II, 288 F.3d at 1330.  Thus, it is hardly surprising that the definition of partisan activity includes activities such as "political" speech, "personal views" critical of individuals, governments or organizational entities and "commentary on current events."

In using these synonyms for partisan speech, Mr. Rapp, in his Aug. 2002 letter to the Camalier Camp, simply sought to further explain the ways in which Reverend Anderson's speech came within the meaning of partisan activities in § 1.218(a)(14)(ii).  See Amended Compl. Ex. 7.  Mr. Rapp wanted to insure the Camalier Camp had a clear understanding of partisan activities so that there would be no future violations.  See id.  When "[c]onsidering the

22

esthetic judgments inherently necessary to maintain VA cemeteries as national shrines," <u>Griffin II</u>, 288 F.3d at 1327, it is obvious that these are exactly the types of activities and the type of speech § 1.218(a)(14) seeks to prohibit at the cemetery.  Thus, this facial challenge is barred by res judicata and this Court should dismiss on that basis.

> **C.    Plaintiff's "As Applied" Challenge To 38 C.F.R. § 1.218(a)(14) Fails Because The Regulation Was Applied In A Viewpoint-Neutral Manner.**

In addition to being reasonable in light of the nature of the forum, the restrictions on speech in a non-public forum must be viewpoint-neutral.  <u>Cornelius</u>, 473 U.S. at 806.  In particular, such restrictions should not attempt "to suppress expression merely because public officials oppose the speaker's view."  <u>Kokinda</u>, 497 U.S. at 730.  "The essence of viewpoint-based discrimination is the state's decision to pick and choose among similarly situated speakers in order to advance or suppress a particular ideology or outlook." <u>Berner v. Delhanty</u>, 129 F.3d 20, 27 (1ˢᵗ Cir. 1997), <u>cert. denied</u>, 523 U.S. 1023 (1998) (citing to <u>Lamb Chapel v. Center Moriches School Dist.</u> 508 U.S. 384, 393-394 (1993) and <u>Cornelius</u>, 473 U.S. at 806.).  In the context of a nonpublic forum, there is a distinct difference between a content based restriction and applying the restriction in a viewpoint neutral manner.  Content-based restrictions are permissible in nonpublic fora while viewpoint discriminatory restrictions are not.  <u>See Cornelius</u>, 473 U.S. at 806 ("Control over access to a nonpublic forum can be based on subject matter . . . so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.").

In describing whether VA was viewpoint-neutral by restricting the flying of a

23

Confederate flag at Point Lookout, the Fourth Circuit found that "[t]he only issue is how the VA treats what little private speech it does allow at the cemetery." Griffin I, 274 F.3d at 824. As the Supreme Court has stated, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." Perry at 49. For example, "[p]ermissible content-based restrictions exclude speech based on topic, such as politics or religion, regardless of the particular stand the speaker takes on a topic." Diloreto v. Downey Unified School District Board of Ed., 196 F.3d 958, 969 (9th Cir. 1999), cert. denied, 529 U.S. 1067 (2000). In addition, the Griffin II court noted that, "Congress has similarly prohibited 'orations' on other government property at which decency and decorum are central to the purpose of the forum, such as the Library of Congress and the Supreme Court Building. 2 U.S.C. § 167(d) (2000); 40 U.S.C. § 13j (1994)." Griffin II, 288 F.3d at 1330.

Section 1.218(a)(14) prohibits partisan speech or unauthorized orations to assembled groups of people regardless of whether they support, oppose, or attempt to influence current government policies. It is not the "motivating ideology or the opinion or the perspective of the speaker that is the rationale for the restriction." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995). In the present case, in allowing the June 8, 2002 memorial service to take place at Point Lookout, VA approved the request of the Camalier Camp of Sons of Confederate veterans precisely because it appeared to be limited to a "memorial service . . . to honor the dead buried there." See Amended Compl. Ex. 3. VA has repeatedly stated that speeches honoring the veterans buried at Point Lookout and other speeches conforming with the nature of the cemetery have been and will continue to be allowed at Point Lookout. See

Amended Compl. Ex. 3, Aug., 2002 Rapp Letter, June 5, 2002 Letter from Tim McClain to

Michael Wright attached to Amended Compl. at Ex. 4.

In contrast, it was the partisan <u>content</u> of both Mr. Griffin's speech and Rev. Anderson's

speech that was unacceptable, not the particular viewpoint they expressed.  Anyone who seeks

to engage in speech that contains partisan or political <u>content</u> will be denied the right to speak at

a VA cemetery.  See <u>id.</u>  Mr. Griffin stated that he sought to make a statement "in opposition to

VA policy concerning the Cemetery."  Amended Compl. at ¶14.  These remarks included

criticizing VA's policy concerning display of Confederate flags, the alleged failure to adequately

maintain Point Lookout, alleged misallocation of resources and, VA's bureaucratic culture.  <u>Id.</u>

Mr. Griffin also stated that he "sought to inform his listeners" that he was then pursuing

challenges to VA's speech restriction in the Supreme Court and would continue to litigate what

he believed was his right to display a Confederate flag at Point Lookout.  Amended Compl. at

¶15.  As applied to Mr. Griffin, VA's letters in response to Griffin's draft speech (provided by

Griffin without prompting or request from VA) were reasonable and viewpoint neutral.

As the Federal Circuit held in <u>Griffin II</u>, VA is entitled to enforce its regulations to

ensure the integrity of its property, and a review of the both the letter sent by VA's General

Counsel to Mr. Griffin's attorney, Amended Compl. Ex. 4, and the June 5, 2002 letter to the

Camalier Camp by Roger Rapp, Amended Compl. Ex. 3, reveals that these letters were

measured and viewpoint neutral responses to the draft Griffin provided.  The VA did not

prohibit Mr. Griffin from presenting his speech or, threaten him with criminal prosecution.  The

letters merely explained that the proposed speech included remarks that were not in keeping

with the decorum of a national cemetery, and requested, in essence, that Mr Griffin comply with

VA's regulation.  Amended Compl. Exh. 4 & 5.  The absence of any requirement of submission

of the revised remarks demonstrates the measured nature of these letters.

Plaintiffs have failed to make a prima facia case that VA has engaged in any form of

viewpoint discrimination through the application of § 1.218(a)(14).  As the regulation has

already been determined to be reasonable in light of the forum, plaintiffs fail to state a claim

upon which relief must be granted and their claims must be dismissed.  See Fed.R.Civ.P.

12(b)(6).

### D.    VA's Request For A Brief Summary Of Remarks Is A Reasonable And Viewpoint Neutral Application Of § 1.218(a)(14).

Plaintiffs' fourth claim for relief seeks declaratory judgment and injunctive relief against

what it terms a "censorship requirement."  Amended Compl. at ¶¶ 18-19.  As a direct

consequence of the political comments made by Rev. Anderson at the June 8, 2002 ceremony,

VA has reasonably, and in a viewpoint neutral manner, asked for additional assurance from the

Camalier Camp that it will avoid speech with similar content at this years ceremony.  See

Amended Compl. Ex. 7.  This additional assurance comes in the form of a brief summary of

intended remarks for the 2003 Ceremony.  See id.  The action by VA is a reasonable attempt to

enforce the regulation and ensure proper decorum at the cemeteries.

This requirement, as applied, in no way infringes on plaintiffs First Amendment rights.[8]

---

[8]  In contending that the "VA's Censorship Requirement" violates the First Amendment on its face, plaintiffs make a facial challenge to the regulation, a claim over which this Court has no jurisdiction.  Griffin, 129 F. Supp. 2d at 837 (facial challenge to the regulation may be brought only in the Federal Circuit under 38 U.S.C. § 502).  As stated previously, the Federal

26

Much of Rev. Anderson's speech was an inflammatory condemnation of the United States government and private groups or associations such as the NAACP or the Southern Poverty Law Center.  Importantly, it is not the particular opinions or viewpoints expressed by Rev. Anderson that are problematic, but the fact that he choose to ignore VA regulations and deliver a politically charged speech at the Point Lookout memorial ceremony.  The brief summary asked for by VA is a reasonable response to actions that took place that were not in keeping with the purpose of the cemetery.  For VA to do otherwise risks a perception that Point Lookout, at least during the June memorial service, is no longer a national shrine dedicated to the memory of those interred and has lost its character as a nonpublic forum.

In the August letter from Roger Rapp to J. B. Couch, VA indicated that failure to abide by § 1.218(a)(14) could impact future requests by the Camalier Camp to hold ceremonies at Point Lookout.  See Amended Compl. Ex. 7.  Rather than use these extreme measures, VA has sought to maintain a cooperative relationship with persons interested in commemorating Confederate soldiers buried at the cemetery.  This in no way amounts to "prior restraint" as VA is taking additional measures to allow interested parties to express themselves in a manner appropriate for this nonpublic forum.  Accord Perry, 460 U.S. at 49.  Indeed, the letter from VA in response to Rev. Anderson's speech was directed to the Camalier Camp which is no longer a plaintiff to this litigation.[9]  Therefore, because plaintiffs' fourth claim for relief fails to establish

---

Circuit affirmed the regulation in its entirety against Mr. Griffin's facial challenge.  Griffin II, 288 F.3d at 1331.

[9] As described in defendants motion for summary judgment, the Camalier Camp has indicated a willingness to insure that VA regulations are complied with during the 2003

VA is being unreasonable or engaging in viewpoint discrimination, it must be dismissed for

failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).

### III.    SHOULD THE COURT REACH THE MERITS OF THE CASE, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON THE VIEWPOINT NEUTRAL MANNER IN WHICH VA APPLIES § 1.218(a)(14).

VA would be entitled to summary judgment on the existing record because the

preliminary discovery that plaintiffs requested demonstrates that VA enforces its regulation in a

viewpoint neutral manner.  In determining whether summary judgment pursuant to Fed.R.Civ.P.

56 is proper:

> [e]vidence should be viewed in the light most favorable to the non-moving party.  The court must find that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir.1990). If no material factual disputes remain, summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986). When the record taken as whole could not lead a rational trier of fact to find for the non- moving party, disposition by summary judgment is appropriate.  Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir.1991).

A Fisherman's Best, Inc. v. Recreational Fishing Alliance, 310 F.3d 183, 190 (4th Cir. 2002).

Here, there are no material facts in dispute and plaintiffs cannot show that VA's application of

§ 1.218(a)(14) is unreasonable or viewpoint discriminatory.

In attempting to facilitate resolution of this claim and demonstrate the constitutional

manner in which VA applies § 1.218(a)(14), defendants agreed to engage in limited informal

discovery prior to filing dispositive motions.  See Letter from Michael Wright to James

---

ceremony.  Infra, pp. 35-36.

Schwartz attached hereto as Ex. A.  Plaintiffs requested information on ten discrete topics.  See

id.  The request from plaintiffs was modified slightly by agreement of the parties to focus the

request on the National Cemetery Administration ("NCA"), rather than VA as a whole.  See

letter from James Schwartz to Michael Wright attached hereto as Ex. B.

    The preliminary, informal discovery has been completed.  It demonstrates that VA has

been consistent in its enforcement of this regulation in a viewpoint neutral manner to protect the

cemeteries as national shrines.[10]  The NCA has on rare occasions received requests from

political figures to make announcements or speeches that include their partisan views.  See

Decl. of Martha E. (M'Liz) McLendon, ¶ 3, attached hereto as Ex. C.  The NCA has declined

permission to those wishing to express partisan view in VA cemeteries based upon regulations

at 38 C.F.R. 1.218.  Id.  Indeed, NCA supplemented M40-2, Chapter 11, with a policy letter

signed by the Director, National Cemetery System (precursor to the Under Secretary for

Memorial Affairs) on October 29, 1993, to ensure that Cemetery Directors did not knowingly

permit partisan speech by either political figures or members of the public.  Id.

    In May 2001, NCA's Calverton National Cemetery on Long Island, New York, received

a request from a U.S. Congressman's staff for the Congressman to come to the cemetery to

speak with members of the press about a bill he was sponsoring that affected the length of time

individual grave site flags remained in place at national cemeteries over Memorial Day.  Id. at ¶

5.  Initially, the Congressman was told that he could meet with the press at the cemetery.  Id. at ¶

---

[10]As explained above, this Court need not address the reasonableness of VA's regulation
as it has already been upheld as reasonable by both the Federal Circuit Court of Appeals and the
Fourth Circuit Court of Appeals.

5.  However, once the request was made known to VA's Central Office, it was determined the request, if honored, would be contrary to § 1.218(a)(14) and the caveat on "partisan" speech.  Id. at ¶ 5.  Subsequently, the Congressman's staff was contacted and the request to speak at the cemetery was denied.  Id. at ¶ 5.

On March 19, 2003, the director of Los Angeles National Cemetery turned away approximately 70 anti-war protestors who attempted to gain access to the cemetery for the purpose of giving an unauthorized oration to an assembled group of people, in violation of the orations clause of § 1.218(a)(14)(ii).  Id. at ¶ 4.  With the assistance of VA security, the protestors were denied access and were directed to an area outside the perimeters of the Federal Building nearby where they held their protest.  Id.

During an otherwise proper ceremonial day at Springfield National Cemetery on June 2, 2002, an announcement was made at the conclusion of one of the speeches that there would be a meeting with officers from the Sons of the Confederacy on the cemetery grounds.  See June 3, 2002 E-mail from Gary Edmonson to Jan Klahs, attached hereto as Ex. D.  This meeting was not listed on the program and was not pre-approved by the VA.  See id.  The organizer of the ceremonial day was immediately advised by a VA representative present at the ceremony that such unapproved orations to assembled groups of people was not allowed on cemetery grounds. See id.  In addition to explaining the VA regulation to the organizer of the event at Springfield National Cemetery, the VA representative explained to gathered media that such meetings were improper on cemetery grounds. See id.

Correspondence between Ken Stoner, director of the Baltimore National Cemetery (who

30

has jurisdiction over Point Lookout cemetery) and John Stober, a member of the Camalier Camp

of the Sons of Confederate Veterans concerning the scheduled June 14, 2003 ceremony also

shows the VA's reasonable and viewpoint neutral application of § 1.218(a)(14).  See E-mail

correspondence between Ken Stoner and John Stober, attached hereto as Ex. E.  In this

correspondence, Mr. Stoner advises Mr. Stober that a short summary of remarks will be

adequate if it contains sufficient information to accurately reveal the content and character of the

presentation.  See id.   Mr. Stoner emphasizes that VA is only seeking assurances that the event

will not serve a politically oriented purpose and that the focus should be on the dignified

memorialization of the deceased.  See id.  In response, Mr. Stober advises Mr. Stoner that the

Camalier Camp has every intention of abiding by VA regulations and providing VA with a brief

summary of the presentations.  See id.  Mr. Stober also indicates that anyone who does not

provide a summary of remarks will not be given a place in the Camalier Camp's program.  See

id.  The Camalier Camp has clearly expressed its willingness to abide by VA rules and

regulations.  See id.

       As these examples demonstrate, both the partisan speech restrictions and the restrictions

on unauthorized orations in § 1.218(a)(14)(ii) are applied universally and in a viewpoint neutral

manner.  Thus, while the regulation may be content-based, it is viewpoint-neutral and

constitutional as applied to plaintiffs.  Therefore, to the extent plaintiffs raise generalized

allegations against VA's implementation of this regulation, and the court finds that they may

pursue those allegations at this time, VA is entitled to summary judgment because the record

does not support plaintiffs' allegations.

**IV.     THE PUBLIC INTEREST FAVORS UPHOLDING THE RESTRICTIONS ON PLAINTIFFS' SPEECH.**

If the Court grants the relief sought by plaintiffs and allows partisan speech or unauthorized orations to groups of people at Point Lookout, the public interest in maintaining the tranquil and nonpartisan nature of its national cemeteries will be harmed. Plaintiffs are free to express their ideas – in this Court, in correspondence with VA, and in public fora. What they cannot do is insist on an opportunity to engage in speech that is inherently unsuited to the forum at issue. In Greer v. Spock, the Supreme Court upheld a ban on partisan political campaigns on a military base because such speech was incompatible with the forum. 424 U.S. at 839. The Court noted that even though members of the armed forces are free to participate in political campaigns out of uniform and off-base, "the military as such is insulated from both the reality and the appearance of acting as a handmaiden for partisan political causes or candidates." Id. Similarly, plaintiffs are free to speak and gather to hear speeches in a public forum, but not within the quiet confines of a national cemetery.

If, as plaintiffs allege, VA's prohibition of partisan political statements and unauthorized orations at memorial services constitutes viewpoint discrimination, with the result that plaintiffs must be permitted to give speeches which may contain inappropriate political content, then the nation's cemeteries would be wide open to partisan political speech, at the cost of undermining, if not destroying, the purpose of the cemeteries. A cemetery is not suited "to facilitate the free exchange of ideas[,]" which is why a cemetery is a non-public forum. Warner, 64 F. Supp. 2d at 1291. See also Henderson v. Lujan, 964 F.2d 1179, 1182 (D.C. Cir. 1992) (although affirming injunction against prohibition of the distribution of literature on sidewalks near the Vietnam

32

Veterans Memorial, the court did not reach the status of the paths leading to the Memorial wall; "their evidently more specialized use may outweigh the attributes that would otherwise mark them as public fora"). In order to preserve national cemeteries as quiet places to honor deceased veterans, VA must be permitted to prohibit partisan speech and unauthorized orations to assembled groups of people in the cemeteries.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss plaintiffs' claims because plaintiffs lack standing their claims are not ripe for adjudication. In the event the Court determines plaintiffs have standing and their claims are ripe, this Court should dismiss plaintiffs' claims for failure to state a claim upon which relief can be granted, or in the alternative, enter summary judgment for defendants.

Dated:  April 14, 2003

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

THOMAS M. DIBIAGIO
United States Attorney

_____\s_____
ARIANA WRIGHT ARNOLD
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692
Telephone: (410) 209-4973
Fax:  (410) 962-2310

_____\s_____
RICHARD G. LEPLEY
Assistant Director
JAMES J. SCHWARTZ
Trail Attorney
U.S. DEPT. OF JUSTICE, CIVIL DIV.
FEDERAL PROGRAMS BRANCH
20 Massachusetts Ave, N.W., Room 7310
P.O. Box 883
Washington, D.C.  20044
(202) 514-3378 ph
(202) 616-8202 fx

OF COUNSEL:

RICHARD J. HIPOLIT
    Deputy Assistant General Counsel
MARTIN J. SENDEK
    Staff Attorney
Department of Veterans Affairs
Counsel for Defendant

34