IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Patrick J. Griffin, III, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action No. WMN-02-1917 |
| v.          ) | |
| ) | |
| **Department of Veterans Affairs, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs are seeking a preliminary injunction to prohibit VA from enforcing 38 C.F.R. § 1.218(a)(14) to inhibit speech in which plaintiffs allege they would like to engage in the future at Point Lookout Confederate Cemetery ("Point Lookout").[1] This Court should deny plaintiffs' motion for preliminary injunction for several reasons.

First, the harm to the public interest and injury to VA an injunction would cause greatly outweigh any harm plaintiffs may suffer by not being able to give partisan speeches in a national cemetery. VA is charged with maintaining national cemeteries as shrines honoring those buried there. Opening this nonpublic forum to partisan speech threatens to destroy the cemetery's

---

[1] This is actually the fourth attempt by plaintiff Griffin to prevent enforcement of § 1.218(a)(14). The first, Griffin lost in the Fourth Circuit, Griffin v. Dep't of Veteran Affairs, 274 F.3d 818 (4th Cir. 2001), cert. denied, 123 S.Ct. 410, 154 L.Ed.2d 290 (2002) ("Griffin I"); the second he lost in the Federal Circuit, Griffin v. Secretary of Veterans Affairs, 288 F.3d 1309 (Fed. Cir. 2002), cert. denied, 123 S.Ct. 410, 154 L.Ed.2d 290 (2002) ("Griffin II"); the third - an attempt to stop the enforcement of § 1.218(a)(14) at the 2002 Point Lookout ceremony - he lost in Md. District Court when it refused to grant his Temporary Restraining Order. Now, Mr. Griffin is again arguing that VA should be enjoined from enforcing its regulation, this time as against the 2003 Point Lookout ceremony.

intrinsic nature, and is unnecessary because plaintiffs have multiple other venues in which to express themselves.

Second, plaintiffs have failed to demonstrate any likelihood of success on the merits. Plaintiffs do not show that the regulation is unreasonable or viewpoint discriminatory as applied to them; rather they renew previously rejected facial challenges to the regulation. Further, plaintiffs misinterpret the purpose and scope of the oration prohibition in § 1.218(a)(14) as it has never been used to prohibit impromptu conversations on cemetery grounds.

## STANDARD OF REVIEW [2]

A request for emergency injunctive relief is "'an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought.'" Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc., 889 F.2d 524, 526 (4th Cir. 1989) (quoting Federal Leasing v. Underwriters at Lloyds, 650 F.2d 495, 499 (4th Cir. 1981)); see also Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992) ("Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.") (internal quotation marks and citations omitted).

"[T]he entry of a preliminary injunction is governed by the four-part test set forth in Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir.1977), which requires a court to consider '(1) the likelihood of irreparable harm to the

---

[2] Defendants have fully described the factual and statutory background to this case in their memorandum in support of their motion to dismiss or, in the alternative, summary judgment ("Def. Opening Mem.").

plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.'" Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002) (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (internal quotation marks omitted); Blackwelder, 550 F.2d at 193-95).  All four factors governing the issuance of emergency injunctive relief do not weigh equally; the first two dominate.  See, e.g., Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 120 (4th Cir. 1993).  Thus, if in balancing irreparable harm to the movant on denial of emergency injunctive relief against the harm to the potentially enjoined party on granting of it, the balance decidedly favors the movant, an injunction will issue when "the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."  Blackwelder, 550 F.2d at 195.  Conversely, as the balance tips away from the movant, a stronger showing on the merits is required.  See, e.g., Virginia Carolina Tools, 984 F.2d at 120; Rum Creek Coal Sales, 926 F.2d at 359.

   In determining whether to grant a preliminary injunction, "the first task of the district court is to determine the harm that will be suffered by the plaintiff if no preliminary injunction is entered.  The harm demonstrated by the plaintiff must be neither remote nor speculative, but actual and imminent."  Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (internal quotation marks and citations omitted); see also, Direx Israel, 952 F.2d at 812 (plaintiff must make a "clear showing" of irreparable harm that is "actual" and "immediate").  "The district court must then balance this harm against the harm which would be suffered by the defendant if the preliminary

injunction is granted." Id.

## ARGUMENT

I. **THE BALANCE OF HARDSHIPS DOES NOT FAVOR GRANTING A PRELIMINARY INJUNCTION.**

    A. **Plaintiffs Have Failed To Demonstrate They Will Suffer Irreparable Injury In The Absence Of A Preliminary Injunction.**

In attempting to establish a cognizable injury justifying a preliminary injunction, plaintiffs misinterpret both the purpose and scope of § 1.218(a)(14). As explained in defendants' Opening Memorandum, the VA regulation at issue is applied equally to all speakers at VA cemeteries regardless of viewpoint. Plaintiffs suffer no greater hardship than anyone else seeking to make inappropriate political speeches in a national cemetery. As with all other speakers, there are more appropriate fora for the types of speech in which plaintiffs would like to engage.[3]

Plaintiffs misstate the scope of § 1.218(a)(14) in arguing that it affects persons engaged in impromptu conversations. The regulation at issue prohibits unauthorized <u>orations</u> to assembled groups of people, but does not apply to small groups of people engaging in conversation.[4] Therefore, plaintiffs' claim that they are at risk when engaging in impromptu conversation is baseless.

Plaintiffs' confusion exemplifies why their claim is premature. The doctrine of ripeness

---

[3] Plaintiffs indicate the ceremonies at Point Lookout are only part of an annual pilgrimage sponsored by Plaintiff Point Lookout Prisoner of War Association. Pl. Mem. at 5. Any part of this pilgrimage, other than the approved ceremony at Point Lookout, would be a more appropriate venue for Plaintiffs to express their partisan opinions.

[4] The term oration has been defined as: an elaborate discourse delivered in a formal and dignified manner. Webster's New Collegiate Dictionary, 800 (1979).

exists precisely to avoid unnecessary litigation stemming from misperceptions as to the scope of statutes and regulations.  See, Manning, 119 F.3d at 263 ("harm demonstrated by the plaintiff must be neither remote nor speculative, but actual and imminent.").  Since the VA regulation does not prohibit plaintiffs, or anyone else, from expressing their political viewpoint in other more appropriate locations or engaging in conversations in small groups while on cemetery grounds, plaintiffs have failed to make a showing of irreparable harm that is actual and immediate.  See Manning, 119 F.3d at 263; see also, Direx Israel, 952 F.2d at 812.

The balance of the hardship does not favor Plaintiff Griffin because he is not being denied access to the cemetery and remains free to give unmodified versions of his speech in other more suitable venues.  Any hardship Griffin may allegedly suffer by not being permitted to give a partisan speech at Point Lookout is significantly outweighed by the harm such speech would inflict upon VA and it cemeteries.  See Greer v. Spock, 424 U.S. 828, 839 (1976) (upholding a ban on partisan political campaigns on a military base because such speech was incompatible with the forum).  Griffin voluntarily chose to modify his remarks at the 2002 ceremony and has indicated a willingness to do the same in order to be a part of the 2003 ceremony.  See, Amended Compl. Ex. 5 and Griffin Supp. Dec., ¶ 13, Ex. 9.

      **B.**    **The Serious Harm To VA And Damage To The Public Interest Militate Against Issuance Of A Preliminary Injunction.**

"If it should be found that the plaintiff [has] made a clear showing of irreparable injury absent preliminary injunctive relief [which, in this case, it has not], the *next* step then for the court to take is to balance the likelihood of harm to the defendant from the grant of such relief." Direx Israel, 952 F.2d at 812 (emphasis in original) (citations and internal quotation marks

omitted).

VA is specifically tasked with preserving the tranquil and respectful atmosphere of the national cemeteries. 38 U.S.C. §§ 2400(b), 2403(c). Point Lookout is part of a nationwide system and the regulation at issue pertains to all the cemeteries in that system. Most Confederate soldiers are buried in national cemeteries where non-Confederate soldiers are also buried. Allowing partisan or political speech within the confines of a national cemetery would gravely impair VA's ability to maintain the decorum necessary to honor war dead. A cemetery is not suited "to facilitate the free exchange of ideas[,]" which is why a cemetery is a nonpublic forum. Warner, 64 F. Supp. 2d at 1291. While plaintiffs are free to express their ideas elsewhere, partisan speech would irreparably harm the public interest and VA's ability to discharge its mandate to maintain national cemeteries "as national shrines in perpetuity as a final tribute of a grateful Nation to honor the memory and service of those who served in the Armed Forces." Department of Veterans Affairs, Statement of Regulatory Priorities, 66 Fed. Reg. 61,261 (Unified Agenda, Dec. 3, 2001). If all national cemeteries were to be opened to partisan speech, they would cease to be environments where people of all viewpoints would be comfortable visiting loved ones or ancestors, and attending authorized events on cemetery grounds.

Rather than continue to hold ceremonies similar to those in the past, which, to defendants knowledge, have been for the most part respectful and proper, plaintiffs express their desire to brazenly violate § 1.218(a)(14) by giving incendiary political speeches at future ceremonies. That plaintiffs allege similar unlawful speech has occurred in years past, Pl. Mem. at 30, is of no consequence since failure to apply a regulation in the past is no bar on VA's ability to enforce it

in the future. Cf., Heckler v. Chaney, 470 U.S. 821 (1985). In fact, it merely confirms the harm that would be inflicted upon defendants and the public interest if VA is restrained from enforcement of its regulation. Particularly where, as here, the challenged regulation has been upheld as a constitutional restriction on narrow types of speech incompatible with the purpose of the nonpublic forum, preliminary injunctive relief preventing the regulation's subsequent application to proposed similar future speech cannot be justified.

## II.     PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.     Plaintiffs Have Failed To Demonstrate That 38 C.F.R. § 1.218(a)(14) Is Either Unreasonable Or Viewpoint Discriminatory.

Plaintiffs' memorandum in support of their motion for a preliminary injunction correctly summarizes the law regarding viewpoint neutrality requirements for restriction of speech in a nonpublic forum, and acknowledges the distinction between unlawful viewpoint based discrimination and the proper exclusion of subject matter when necessary to preserve the forum for a legitimate and limited purpose. Pl. Mem. at 19-21. Plaintiffs also are correct that it is reasonable to restrict speech only to the degree necessary to preserve the forum for its intended use. Id. What plaintiffs do not and cannot do, is establish that § 1.218(a)(14) has been applied to plaintiffs in an unconstitutional manner. Plaintiffs have only succeeded in mounting another facial attack on § 1.218(a)(14), which cannot survive the Federal Circuit's ruling in Griffin II.

### 1.     VA's regulation is viewpoint neutral.

Plaintiffs claim that because § 1.218(a)(14) does not bar all discussion of policy but bars only "'particular views taken by speakers'" it must, therefore, be considered viewpoint

discriminatory. Pl. Mem. at 23. In purported support, plaintiffs claim that a speaker could hypothetically trace the development of Federal policies or detail the number of federally owned cemeteries in which Confederate dead are interred without violating § 1.218(a)(14); however, making a statement in support or opposition to a government policy does violate the regulation. See Pl. Mem. at p. 23. The flaw in plaintiffs' reasoning is that factual accounts or descriptions of historical policies are not partisan speech, and hardly qualify as expressing a viewpoint. What makes speech "partisan" is the taking of a position in support or opposition to the topic. The regulation is constitutional because it limits <u>all</u> partisan speech, regardless of viewpoint.

Plaintiffs also claim the "partisan activities" prohibition is viewpoint discriminatory because the regulation may be applied to prohibit different viewpoints on various topics (albeit in the abstract and not as applied to the plaintiffs in this case.) Pl. Mem. at 23. This Court need not reach the constitutional issue raised by plaintiffs as it is bound by the Federal Circuit's holding that § 1.218(a)(14) is facially viewpoint neutral. See <u>Griffin II</u> at 1331. Therefore, the issue is not whether VA is entitled to restrict all partisan viewpoints, but whether VA has discriminated against plaintiffs' particular viewpoint. As argued <u>supra</u>, Def. Opening Mem at 24-26, VA applies its regulation to plaintiffs in the same manner it applies it to all those seeking to make partisan speech in a national cemetery.

Plaintiffs misinterpret the law in contending that the exclusion of different viewpoints on the same subject violates free-speech guarantees in this context. Pl. Mem. at 24-26. In fact, it is just the opposite. Because <u>all</u> viewpoints on "partisan" subject matters are restricted, e.g. influencing or attempting to influence government policy in any direction, the restriction is

viewpoint neutral. The Supreme Court did not hold otherwise in <u>Rosenberger v. Rector & Visitors of the Univ. of Va.</u>, 515 U.S. 819, 829 (1995).[5] If plaintiffs were correct that the Supreme Court had prohibited speech restrictions where multiple viewpoints exist, there would be no ability to limit speech in nonpublic fora on a viewpoint neutral basis. That is not the law. <u>See</u>, <u>Cornelius</u>, 473 U.S. at 806 ("[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.")

Nor can plaintiffs' position be reconciled with the decision by the Fourth Circuit in <u>Griffin I</u>, in which the Court held Point Lookout to be a place to honor Americans in nonpartisan surroundings. <u>See</u> <u>Griffin I</u> at 821 (holding that the purpose of Point Lookout is to honor Americans in tranquil and <u>nonpartisan</u> surroundings) (emphasis added). Intrinsic to maintaining nonpartisan conditions is restricting all speech of partisan content. Plaintiffs' proposed partisan speech **is** inconsistent with the purposes of the forum and plaintiffs' proposed partisan speech **does** interfere with the carrying out of the purposes of the cemetery. <u>See</u>, <u>Multimedia Publ. Co. of South Carolina v. Greenville-Spartanburg Airport Comm.</u>, 991 F.2d 154, 159 (4th Cir. 1993).

This is also not a case where the proposed speech addresses a subject matter that would be otherwise permissible in the given forum if from a different viewpoint. In <u>Lamb Chapel v. Center Moriches School Dist.</u> 508 U.S. 384 (1993), the Supreme Court held that the school district violated the First Amendment by denying a church access to school premises where the

---

[5] <u>Rosenberger</u> addresses restrictions on speech that take place in a limited public forum which limits its precedential value to nonpublic forums like Point Lookout. <u>See</u> <u>Rosenberger</u> 515 U.S. at 829.

church proposed to provide a religious viewpoint on family and child-rearing issues faced by parents. The school district would have permitted speech concerning families and child-rearing if the viewpoint was secular. The Supreme Court held that once the district restricted access due to the religious viewpoint on an otherwise permissible topic, the district policy, as applied to the church, violated the First Amendment. In contrast, the regulation at issue in this case allows for no type of partisan speech in any form on cemetery grounds. See Air Line Pilots Assoc. v. Dept. of Aviation of the City of Chicago 45 F.3d 1144, 1160 (7th Cir. 1995) (holding that when determining whether a statute is viewpoint neutral, it is not necessarily the ban on a broad category of speech that is the relevant inquiry, rather ". . . the proper focus concerns whether or not the forum has included speech on the same general subject matter.") By excluding the general subject matter of partisan speech, VA has eliminated discretion and created a viewpoint neutral regulation, both on its face and as applied to anyone who wishes to speak in the cemetery.

      Plaintiffs also claim that VA's concern with decorum and tranquility at its national cemeteries is merely a facade for viewpoint discrimination and that the underinclusiveness of "partisan activities" belies any genuine concern with decorum and tranquility. Pl. Mem. at 26-28.[6] They argue that a person who "blasts" local government for removing a Confederate monument does not violate § 1.218(a)(14), but if that same person politely criticizes VA restrictions on flag policy he runs afoul of the regulation. Id. This argument is no more than yet

---

[6] The Federal Circuit has already held that "maintaining an atmosphere of tranquility and respect is necessarily central to the purpose of the forum." Griffin II at 1324. The Federal Circuit also concluded, "[t]he nature and function of the national cemetery make the preservation of dignity and decorum a paramount concern . . ." Therefore, the importance of maintaining tranquility and decorum at Point Lookout cannot be challenged.

another shrill facial attack on the regulation.  Hypotheticals are not examples of the regulation being unconstitutionally applied to plaintiffs.  In any event, a regulation is not underinclusive merely because it does not mention all types of conceivably disruptive speech.  Without any evidence that any of the types of speech plaintiffs insist should be included has ever occurred or been threatened, it hardly follows that a regulation that fails to ban each of those types of speech is unconstitutional.

Nor can plaintiffs argue VA selectively enforced its regulation in objecting to Rev. Anderson's 2002 speech.  Id. at 27-28.  In its letter to the Camalier Camp, VA objected to those portions of the speech that were obvious violations of the partisan activities prohibition.  See Amended Compl. Ex. 7.  The purpose of the letter was to put the Camalier Camp on notice that speeches like the one given by Rev. Anderson are inappropriate in the cemetery.  The letter points to several examples from Rev. Anderson's speech, but nowhere states the list is exclusive.

Finally, plaintiffs contend the occasional flying of the Confederate Flag is inconsistent with the tranquil nature of the cemetery because some (although not plaintiffs) see it as a symbol of division.[7]  Pl. Mem. at 28-29.  VA permits the flying of a Confederate Flag at certain times of the year at national cemeteries when it is appropriate to serve the purpose of honoring those interred at the cemetery.  Again, § 1.218(a)(14) need not ban all symbolic speech to make time, place and manner restrictions of verbal speech constitutional.  The regulation seeks to limit verbal speech of a political nature to groups of individuals inside cemeteries.  While a

---

[7] The Fourth Circuit decided, in no uncertain terms, that flying the Confederate Flag every day was not protected speech in the cemetery, and that VA's refusal to permit that display was both reasonable and viewpoint neutral.  Griffin I.

11

Confederate Flag, in certain contexts, may symbolize viewpoints similar to those plaintiffs wish to espouse, it does not threaten decorum and tranquility in the way an oration from a podium can.

    2.    <u>Section 1.218(a)(14) is a reasonable means to restrict speech in light of the nature and purpose of this particular forum.</u>

Plaintiffs expend considerable effort arguing the VA regulation is unreasonable. Pl. Mem. at 29-34. First, plaintiffs argue that VA's regulation is unreasonable because the regulation is not based on evidence that the types of speech proposed by plaintiffs leads to disruptive or improper conduct at a cemetery. Pl. Mem. at 30-33. In support of this proposition, plaintiffs cite to numerous precedents involving speech regulations that were struck down because the symbolic speech at issue did not create a credible threat of disruption. See <u>Tinker v. Des Moines Indep. School Dist.</u> 393 U.S. 508 (11945); <u>Sypnieski v. Warren Hills Reg. Board of Educ.</u>, 307 F.3d 243 (3rd Cir. 2002); <u>Sammartano v. First Judcial Court, Etc.</u> 303 F.3d 959 (9th Cir. 2002); and <u>Cohen v. California</u>, 403 U.S. 23 (1971).

Section 1.218(a)(14) need not be directed at physical disruption or destruction to be constitutional. The cases plaintiffs cite are inapposite because the specific parts of § 1.218(a)(14) objected to by plaintiffs seek to limit <u>verbal</u> speech that would disrupt the tranquil and nonpartisan surroundings of its national cemeteries. VA does not seek to limit symbolic speech at ceremonies, like wearing buttons or t-shirts; it simply requires that the orations not divert ceremonies from their intended purpose. The Supreme Court has held that there does not need to be a record of past disturbances to justify the denial of access to a nonpublic forum on the grounds that the proposed use *may* disrupt the property's intended functions. See <u>Perry Educ. Ass'n. v. Perry Local Educs.' Ass'n</u>, 460 U.S. 37, nt. 12 (1983) (citing <u>Greer v. Spock</u>, 424 U.S.

828 (1976)).[8] In addition, VA is justified in tailoring its speech restriction to fit the special needs of a national cemetery, which are different from those of a courthouse or a school. Compare, Sypnieski v. Warren Hills Reg. Board of Educ., 307 F.3d 243 (3rd Cir. 2002); Sammartano v. First Judcial Court, Etc., 303 F.3d 959 (9th Cir. 2002).

The Fourth Circuit has also held that VA may be legitimately concerned with disruption that is not necessarily physical. In Griffin I, the Court held VA could limit "controversy" in its cemeteries as controversy could "undermine the goal of keeping cemeteries free from partisan conflict." Griffin I at 823. The Court also found that VA had a legitimate concern over counter-speech and the "probable effects of demands made by other groups." Id. Both these restrictions on speech address the need to preserve cemeteries as nonpublic forums and are reasonable in light of the nature of the particular forum. See Griffin I at 824.

The regulation does not, as plaintiffs suggest, attempt to regulate the "offensiveness" of ideas. Pl Mem. at 34. VA is simply preserving the nature of the forum in a manner that has been held reasonable by two courts of appeal. Further, the evidence put forward by defendants in the summary judgment portion of its opening memorandum disproves plaintiffs' factual allegations. See Def. Opening Mem. at 28-31. The regulation is applied to anyone seeking to engage in partisan activities, regardless of whether those activities may be deemed "offensive." Id. For this additional reason, plaintiffs cannot show a likelihood of success on the merits.

---

[8] Although, such a record may exist here. Plaintiffs contend that "[t]he audience reaction to Fr. Anderson's speech was enthusiastic. It included sustained applause and cheers." Griffin Supp. Dec. ¶ 11. This is not the type of response appropriate for a memorial service intended to honor Confederate soldiers.

Lastly, plaintiffs attempt to challenge the "attempting to influence" portion of the "partisan activities" restriction in § 1.218(a)(14) on the grounds that it gives VA officials unbridled discretion to infer the speakers intent, and that it is vague and subjective. This is another facial attack on the regulation as plaintiffs cannot show how these infirmities are unconstitutionally applied to plaintiffs. The Federal Circuit has specifically held: (1) "that the discretion vested in VA administrators by section 1.218(a)(14) is reasonable in light of the characteristic nature and function of national cemeteries," Griffin II at 1325; and (2) that the terms of the regulation are not unconstitutionally vague. Griffin II at 1331.

### B.   Plaintiffs Misinterpret The Purpose And Scope Of The "Orations Prohibition" in § 1.218(a)(14); Consequently, Their Claims Are Unripe.

The allegations in plaintiffs' amended complaint state plaintiffs have made informal visits to the cemetery during which they discuss and criticize VA policies and engage in impromptu group discussions. E.g., Amended Complaint ¶¶ 13, 24. There is no allegation that they have ever been approached by VA authorities on such occasions or have been threatened with regulatory enforcement against such activities. Private conversations have never been prohibited pursuant to § 1.218(a)(14). As can be seen by the allegations of the amended complaint, ¶ 11, the regulation speaks only to "oration or similar conduct to assembled groups of people." This is clearly distinguishable from informal, impromptu discussions among groups of people.

The Federal Circuit specifically rejected the notion that there is any confusion between "orations" and "conversation". See Griffin II, at 1330 (in holding the orations prohibition was not unconstitutionally vague, the court stated, "[c]hallenged terms must be read in context of the regulation as a whole and we have little doubt that visitors of ordinary intelligence reading

§ 1.218(a)(14) would understand what behavior was expected of them on VA property - - particularly on the grounds of a national cemetery.") [9] The regulation seeks to prevent organized speeches to assembled groups of people which have not been approved by VA.  To violate § 1.218(a)(14), it would be required that the assembled people would be present to listen to a presentation **delivered** by a speaker, not to engage in impromptu conversation.  See Griffin II at 1330.  (holding ". . . while 'assembled groups of people' is not a precise term, one must **deliver** an 'oration or similar conduct' to said groups in order to run afoul of the regulation to begin with.") (emphasis added).

Since plaintiffs have failed to show that VA has ever enforced its regulation in a manner that would restrict conversations between small groups of people, plaintiffs have not presented a justiciable claim.

### C.    Plaintiffs Fail To State A Cognizable Claim Challenging Certain Applications of § 1.218(a)(14)

Plaintiffs challenge VA's application of its regulation in two ways.  First, they state that Mr. Rapp's definition of "partisan activities" in his August, 2002 letter violates both 38 U.S.C. § 901 and the First Amendment.  Pl. Mem. at 38-40.  Second, plaintiffs challenge VA's requirement that the Camalier Camp of the Sons of Confederate Veterans provide a brief summary of intended remarks prior to gaining approval for the 2003 ceremony at Point Lookout.

---

[9] VA is not alone in prohibiting orations on its property.  The Griffin II court noted that, "Congress has similarly prohibited 'orations' on other government property at which decency and decorum are central to the purpose of the forum, such as the Library of Congress and the Supreme Court Building.  2 U.S.C. § 167(d) (2000); 40 U.S.C. § 13j (1994)." Griffin II, 288 F.3d at 1330.

Pl. Mem. at 40-41. The failure of these issues to state a claim upon which relief can be granted is fully addressed in defendants' opening memorandum. <u>See</u> Def. Opening Mem. at 21-23, 26-28. The Appellate Courts have defined the terms of the regulation and the terms used by Mr. Rapp are within that definition. Further, as a direct consequence of the political comments made by Rev. Anderson at the June 8, 2002 ceremony, VA asked for additional assurance from the Camalier Camp that it will avoid speech with similar content at this year's ceremony. <u>See</u> Amended Compl. Ex. 7. That action by VA is a reasonable and viewpoint neutral attempt to enforce the regulation and ensure proper nonpartisan decorum at the cemeteries. Neither challenge to VA's application of its regulation demonstrates a likelihood of success on the merits and neither can justify the issuance of a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, this Court should deny plaintiffs' motion for preliminary injunction and grant defendants motion to dismiss or for summary judgment.

Dated:  May 1, 2003

                Respectfully submitted,

                ROBERT D. McCALLUM, JR.
                Assistant Attorney General

                THOMAS M. DIBIAGIO
                United States Attorney

                _____\s_____
                ARIANA WRIGHT ARNOLD
                Assistant United States Attorney
                6625 United States Courthouse
                101 West Lombard Street
                Baltimore, Maryland 21201-2692
                Telephone: (410) 209-4973
                Fax:  (410) 962-2310


                _____\s_____
                RICHARD G. LEPLEY
                Assistant Director
                JAMES J. SCHWARTZ
                Trail Attorney
                U.S. DEPT. OF JUSTICE, CIVIL DIV.
                FEDERAL PROGRAMS BRANCH
                20 Massachusetts Ave, N.W., Room 7310
                P.O. Box 883
                Washington, D.C.  20044
                (202) 514-3378 ph
                (202) 616-8202 fx

                OF COUNSEL:

                RICHARD J. HIPOLIT
                    Deputy Assistant General Counsel
                MARTIN J. SENDEK
                    Staff Attorney
                Department of Veterans Affairs
                Counsel for Defendant