UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Patrick J. Griffin, III, an individual,<br>14101 Berryville Road<br>Darnestown, Maryland 20874-3517<br><br>Sons of Confederate Veterans,<br>a Mississippi non-profit corporation,<br>R.G. Wilson, Commander-in-Chief,<br>740 Mooresville Pike, Columbia, TN 38401<br><br>Point Lookout Prisoner of War Assn.,<br>A nonprofit unincorporated association,<br>Patricia B. Buck, President,<br>1214 Moyer Road, Newport News, VA 23608-2453<br><br>                        Plaintiffs,<br><br><br>         vs.<br><br><br>Department of Veterans Affairs,<br>a Department of the United States Government;<br>810 Vermont Avenue, NW<br>Washington, D.C. 20420-0001<br><br>Roger R. Rapp, Director,<br>National Cemetery System,<br>a Division of the Department of Veterans Affairs,<br>an individual, in his official capacity,<br>810 Vermont Avenue, NW<br>Washington, D.C. 20420-0001<br><br>Ken Stoner, Director,<br>Point Lookout Confederate Cemetery,<br>an individual, in her official capacity,<br>5501 Frederick Avenue<br>Baltimore, Maryland 21228,<br><br>                        Defendants. | Civil Action No. WMN-02-1917<br><br>PLAINTIFFS' OPPOSITION TO<br>DEFENDANTS' MOTION TO<br>DISMISS OR IN THE<br>ALTERNATIVE FOR SUMMARY<br>JUDGMENT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# TABLE OF CONTENTS

Page

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE . . . . . . . . . . . . 4

       A.    Plaintiffs Have Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             1.    Plaintiffs Face a Credible Threat of Prosecution for Their Intended
                   Informal Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             2.    Plaintiffs' Formal Speech Has Been Chilled and Is Currently Being
                   Subjected to VA Censorship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             3.    Plaintiffs Have Standing Based on the Right to Hear Speech the
                   VA Has Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.    Plaintiffs' Claims Are Ripe for Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.    THE FIRST AMENDED COMPLAINT STATES VALID CLAIMS FOR RELIEF . . 14

       A.    Defendants' Erroneous *Res Judicata* Arguments . . . . . . . . . . . . . . . . . . . . . 14

             1.    No Prior Decision Has Upheld the Reasonableness of the VA's
                   Application of Its Verbal Speech Restrictions to Plaintiffs . . . . . . . . . . 14

             2.    Plaintiffs' Challenge to the VA's Unwritten Speech Restrictions
                   Is Not a Facial Challenge to § 1.218(a)(14) and is not Barred by
                   Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       B.    Defendants' Motion to Dismiss Plaintiffs' Second Claim Based on
             Application of the "Orations" Prohibition Should Be Denied . . . . . . . . . . . . . 17

       C.    Plaintiffs' First Claim Adequately Alleges that the VA's Application of the
             "Partisan Activities" Prohibition is Unreasonable and Viewpoint-Based . . . . . 18

       D.    The VA's Unwritten Restrictions Were Not Properly Promulgated and
             Violate the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

             1.    The Unwritten Restrictions Are Unlawful If Consideration as
                   Independent of § 1.218(a)(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2.      The Unwritten Restrictions Violate the First Amendment If Considered as an Application of § 1.218(a)(14) . . . . . . . . . . . . . . . . . . . 26

E.      The VA's Censorship Requirement Is Viewpoint-Based and is Not Embodied in Any Written Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

V.      DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT . . . . . . . . . . 30

A.      The VA's Application of the "Partisan Activities" Prohibition on Other Occasions Does Not Make Its Application to Plaintiffs Viewpoint-Neutral . . . . 30

B.      If Either Side Is Entitled to Judgment, It Is Plaintiffs . . . . . . . . . . . . . . . . . . . . . 31

VI.     THE PUBLIC INTEREST DOES NOT SUPPORT THE VA'S ARBITRARY SPEECH RESTRICTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

Page

Air Line Pilots Ass'n, Intern.
v. Department of Aviation of City of Chicago  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

American Charities for Reasonable Fundraising
Regulation, Inc. v. Pinellas County
221 F.3d 1211 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 13

Andrews v. Daw
201 F.3d 521 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Babbitt v. United Farm Workers
442 U.S. 289, 99 S.Ct. 2301 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12, 13

Board of Airport Commissioners
v. Jews for Jesus, Inc.
482 U.S. 569, 107 S.Ct. 2568 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

Board of Educ., Island Trees Free
School Dist. No. 26 v. Pico
457 U.S. 853, 102 S.Ct. 2799 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Burke v. City of Charleston
139 F.3d 401 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cornelius v. NAACP Legal Defense
and Educational Fund, Inc.
473 U.S. 788, 105 S.Ct. 3439 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Edwards v. City of Goldsboro
178 F.3d 231 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Griffin v. Dept. of Veteran Affairs
274 F.3d 818 (4th Cir. 2001), cert. denied, 123 S.Ct. 410 (2002)  . . . . . . . . . . . . . . . . . . . . . *Passim*

Griffin v. Secretary of Veterans Affairs
288 F.3d 1309 (Fed. Cir.), cert. denied ,123 S.Ct. 410 (2002)  . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Jacobs v. Florida Bar
50 F.3d 901 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Majors v. Abell
317 F.3d 719 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iii

Meekins v. United Transp. Union
946 F.2d 1054 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Multimedia Publishing Co. of South Carolina, Inc.
v. Greenville-Spartanburg Airport Dist.
991 F.2d 154 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

NAACP v. Button
371 U.S. 415, 83 S.Ct. 328 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

New Hampshire Right to Life Political
Action Comm. v. Gardener
99 F.3d 8 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

North Carolina Right to Life v. Barlett
168 F.3d 705 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Rosenberger v. University of Virginia
515 U.S. 819, 115 S.Ct. 2510 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Scheidler v. National Organization for Women, Inc.
_____ U.S. ____, 123 S.Ct. 1057 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Steffel v. Thompson
415 U.S. 452, 94 S.Ct. 1209 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United Food and Commercial Workers
Union Local 751 v. Brown Group, Inc.
517 U.S. 544, 116 S.Ct. 1529 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

Virginia v. American Booksellers Ass'n, Inc.
484 U.S. 383, 108 S.Ct. 636 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Virginia Society for Human Life, Inc.
v. Federal Election Commission
263 F.3d 379 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 12, 13

Virginia State Bd.of Pharmacy
v. Virginia Citizens Consumer Council, Inc.
425 U.S. 748, 96 S.Ct. 1817 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

## STATUTES

38 C.F.R. § 1.218(a)(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

38 U.S.C. § 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

38 U.S.C. § 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 29

Fed. R. iv. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# I.

## INTRODUCTION

Defendants in this action are like a pursued octopus that squirts ink into the water.  They hope to sew confusion and get away.  Defendants therefore argue standing and ripeness, ignoring that Plaintiffs are about to engage in speech forbidden by the express terms of the VA's speech restrictions.  The Supreme Court and the Fourth Circuit have held that is enough to confer standing and give rise to a ripe claim for prospective relief.

Defendants also argue that prior decisions bar much of Plaintiffs' case, ignoring that (1) Plaintiffs have brought as-applied claims here that the Federal Circuit expressly left open in *Griffin II*, and (2) Plaintiffs' as-applied claims arose *after* the prior decisions.  Claims that did not exist at the time a judgment is rendered cannot be barred by *res judicata*.

Defendants argue that they have applied the VA's speech restrictions in a viewpoint-neutral manner.  But the VA's "partisan activities" restriction *by its terms* is viewpoint-based.  The prohibition forbids "commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise."  The prohibition targets certain "opinions," "perspectives" and "particular views" and thus is viewpoint-based.  The VA's letters applying the restriction also target the speaker's "particular views" and underscore that the VA's application of the restriction is squarely based on viewpoint.

The VA's "orations" restriction prohibits "any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service."  Although this restriction is viewpoint-neutral, it is unreasonable.  Contrary to the VA's attempt to rewrite the restriction, it

applies by its terms to informal groups who gather to hear a prayer or historical commentary. Defendants make no attempt to meet their burden of showing that this restriction is reasonable.

Plaintiffs have also challenged the VA's "unwritten speech restrictions," *i.e.* bans on "political statements," "commentary on current events" and "personal views critical of... individuals and organizations." Plaintiffs call them "unwritten" because they are not part of any written regulations and Plaintiffs first learned of them in VA warning letters. These restrictions can be viewed in two ways: either as independent restrictions or, as Defendants argue, as applications of the "partisan activities" prohibition.

In either case, they are unconstitutional. Considered independently, the unwritten restrictions are viewpoint-based. They target specific opinions of the speaker, Fr. Alister C. Anderson, and do not even exist as promulgated administrative rules. Considered as applications of the "partisan activities" prohibition, the unwritten restrictions underscore that "partisan activities" is defined in terms of viewpoint. The Supreme Court, moreover, has rejected the VA's theory that the prohibition is viewpoint-neutral because it prohibits competing viewpoints. The unwritten restrictions prohibit a broad range of speech that is permissible under the "partisan activities" ban. A speaker can never be sure of whether his speech is prohibited. The unwritten restrictions thus make the VA's *application* of "partisan activities" unconstitutionally vague.

The VA has imposed a censorship system that requires speakers at the Point Lookout Confederate memorial ceremony to submit their remarks in advance for review by VA officials. As a result, Mr. Griffin's proposed 2003 speech has been self-censored, censored again by the sponsor of the ceremony and submitted for further censorship by the VA. The VA's correspondence implementing the censorship scheme shows that its purpose is to detect

disfavored viewpoints. As applied here, the VA's censorship scheme thus is viewpoint-based and unconstitutional. And like the VA's unwritten speech restrictions, it has never been promulgated as an agency rule. In short, the First Amended Complaint in this action ("FAC") alleges a justiciable controversy and valid claims for relief. The Court therefore should deny Defendants' motion to dismiss.

Defendants also seek summary judgment based on other evidence that, according to the VA, shows that it acted in a viewpoint-neutral fashion. Even if one assumes the VA did not discriminate on the basis of viewpoint *in other cases*, that would not entitle the VA to summary judgment here. The evidence is uncontradicted that *in this case* the VA has (1) applied the "partisan activities" prohibition, which by its terms is viewpoint-based, and (2) has added further viewpoint discrimination via its unwritten restrictions, which the VA has (3) enforced through a censorship scheme that is itself expressly based on viewpoint. If anyone is entitled to judgment on this record, it is Plaintiffs, not Defendants. And the same is true with respect to all of Plaintiffs' claims. At a minimum, Defendants' motion for summary judgment should be denied.

## II.

## PLAINTIFFS' CLAIMS

Plaintiffs have explained the nature of this action in their Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction. ("Inj. Mot."). Plaintiffs will not repeat that discussion here. Instead, Plaintiffs will briefly recap their claims as set forth in the FAC. Plaintiffs' first claim challenges the VA's application of the "partisan activities" prohibition of 38 C.F.R. § 1.218(a)(14) to verbal speech at the Cemetery on grounds of viewpoint discrimination, unreasonableness and vagueness. Plaintiffs' second claim alleges that the

3

"orations" prohibition is unreasonable as applied to Plaintiffs.  The third claim challenges the

VA's new prohibitions on "political remarks," "commentary on current events" and "personal

views" critical of persons or organizations as set forth in the VA's June and August, 2002 letters

as viewpoint-based, unreasonable and vague.  The fourth claim challenges the VA's censorship

requirement on viewpoint grounds.

**III.**

**PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE**

**A.      Plaintiffs Have Standing.**

**1.      Plaintiffs Face a Credible Threat of Prosecution for Their Intended Informal
Speech.**

In *Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309 (1979), the

Court set forth the test for standing in an action for prospective relief against enforcement of a

criminal statute:

> A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining
>
> direct injury as a result of the statute's operation or enforcement.  But one does not
>
> have to await the consummation of threatened injury to obtain preventive relief.  *If*
>
> *the injury is certainly impending that is enough.*  It is not necessary that the plaintiff
>
> first expose himself to actual arrest or prosecution to be able to challenge the statute
>
> that he claims deters the exercise of his constitutional rights.  *When the plaintiff has*
>
> *alleged an intention to engage in a course of conduct arguably affected with a*
>
> *constitutional interest but proscribed by a statute and there exists a credible threat*
>
> *of prosecution thereunder, he 'should not be required to await and undergo a*

4

*criminal prosecution a the sole means of seeking relief.*' *Id.* (Citations, internal quotations and brackets omitted; emphasis added.)

In *North Carolina Right to Life v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999)("*NCRL*"), the court went a step farther and added that a credible threat of prosecution establishes not just *standing* but *justiciability*:

> When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute. A non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat, and *a case or controversy thus exists in the absence of compelling evidence to the contrary*. This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights. (Citations, brackets and internal quotation marks omitted.)

Plaintiffs intend to engage in speech at the Cemetery, which is an activity arguably affected with a constitutional interest. Mr. Griffin intends to express criticism of VA flag and speech policies at the Cemetery, as well as support for the policies of private groups that support display of the Confederate flag. He also intends to engage in and listen to informal addresses to groups at the Cemetery, without obtaining advance permission from the VA. (Declaration of Patrick J. Griffin, III in Opposition to Defendants' Motion to Dismiss, Etc. ("Griffin Opp. Decl.")) ¶¶ 6-7. Supplemental Declaration of Patrick J. Griffin, III, filed April 14, 2003 ("Griffin Supp. Decl.") ¶¶ 5-8, 19; Declaration of Patricia B. Buck ("Buck Decl") ¶¶ 7-8.) SCV and PLPOW members routinely engage in such speech at the Cemetery (First Amended Complaint ("FAC") ¶ 13)) and wish to continue doing so. (*Id*. ¶¶ 4-5.)

The VA's restrictions forbid Plaintiffs' intended speech. The "partisan activities" prohibition of § 1.218(a)(14) forbids "commentary in support of, or in opposition to...any current policy of the Government of the United States or any private group, association or enterprise." Last year the VA threatened to prosecute Mr. Griffin and cancel future ceremonies because his and Fr. Anderson's speech contained remarks the VA viewed as "partisan activities." (*See* Declaration of J.B. Couch, Exh. 2.)

Section 1.218(a)(14)(ii) also prohibits "any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service." *Webster's* defines "group" as "a relatively small number of individuals assembled or standing together." *Webster's Third New International Dictionary of the English Language Unabridged* (Merriam-Webster 1993)("*Webster's*") at 1004. By its terms, the prohibition applies to all "groups" capable of "assembling" together. Whether the group consists of four members or seventy makes no difference in terms of the language of the regulation. The group discussions in which Mr. Griffin and other SCV and PLPOW members participate are not "authorized" by the VA. Mr. Griffin has no intention of obtaining such authorization. Nor could it be obtained in view of the spontaneous nature of Plaintiffs' group speech. (Griffin Opp. Decl. ¶¶ 6-7; Griffin Supp. Decl. ¶ 6; Buck Decl. ¶ 7.) Such discussion, regardless of its content, falls within the definition of prohibited "oration[s] or similar conduct" set forth in § 1.218(a)(14)(ii).

Defendants argue (Mot. at 13) that Plaintiffs' informal group speech is not prohibited because "[i]nformal, impromptu discussions among groups of people are not the same thing as oration to assembled groups." This attempt to rewrite the prohibition is unavailing. The *language of the regulation* determines whether Plaintiffs' challenged conduct is prohibited. In

6

*Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379, 388 (4th

Cir. 2001)("*VSHL*") and *NCRL*, 168 F.3d at 710, the Fourth Circuit determined whether

plaintiffs' conduct was prohibited based on the statutory language.  The court did so despite the

government entities arguments that the statutes would not be enforced, *VSHL*, *id*. at 388, or did

not apply to groups such as the plaintiff.  *NCRL*, at 710-711.[1]

    *By its terms* the oration prohibition bans "any oration or *similar conduct*," not just

"orations" themselves.  *Webster's* defines an "oration" as "an elaborate discourse delivered in

public and treating an important subject in a formal and dignified manner; esp: a formal

discourse on some special occasion (as a funeral or an anniversary)."  *Id*. at 1586.  An address

like a graveside prayer or historical commentary, during which one person speaks and the other

groups members listen, is similar to an oration.  Plaintiffs engage in such speech at the Cemetery

and intend to do so in mid-June.  (Griffin Opp. Decl. ¶¶ 6-7; Griffin Supp. Decl. ¶ 8; Buck Decl.

¶ 7.)  A casual conversation among members of an assembled group is also similar.  Plaintiffs

intend to engage in this kind of speech as well.  (Griffin Opp. Decl., ¶¶ 6-7;Griffin Supp. Decl.

¶¶ 5-7; Buck Decl. ¶ 7.)  Informal addresses, prayers and other speech among groups of speakers

thus fall within the language of the "orations" prohibition.  Plaintiffs should not be required to

_____

    [1]  If the VA truly has no intention of prohibiting informal addresses to groups and other
group speech, it could have so stipulated in the summer of 2000 before *Griffin I* even began.
Instead, the VA objected to Plaintiffs' attack on the regulation in this Court on jurisdictional
grounds and defended the restriction – in all its breadth – in the Federal Circuit and in opposing
certiorari to the Supreme Court.  Indeed, even in its June 7, 2002 opposition to the TRO in this
case, the VA said (at 14) only that the "orations" prohibition would not be enforced *at the
ceremony itself*.  The VA gave no indication – for almost three years – that the prohibition is
inapplicable to informal group speech.  Is this the kind of conduct one expects from responsible
government?  Plaintiffs think not.  If the "orations" prohibition excludes informal group speech,
the VA should have said so three years ago.  The Court should not allow the VA to escape an
adverse judgment on the "orations" prohibition by belatedly rewriting it.

explain the difference between and "oration" and their group speech in a criminal proceeding.

The VA in 2002 prohibited expression in which Plaintiffs seek to engage as "political" remarks, "commentary on current events" and "critical" comments. (*See* VA 2002 correspondence, Griffin Supp. Decl. ¶¶ 10-12, Exhs. 5-7.) This expression includes criticism of VA flag policy by Mr. Griffin and Fr. Anderson's criticisms of private groups and the governor of Virginia. Plaintiffs allege (FAC ¶¶ 3, 4, 5, 29, 33, 37, 41) that they wish to engage in the speech the VA has forbidden at the Cemetery, but (*id*. ¶ 23) are concerned that they may be prosecuted if they do so. Since almost any speech concerning the Civil War can be viewed as "political" ("The original thirteen colonies recognized the right to secede."), the VA can enforce this prohibition against virtually any speech one is likely to hear at the Cemetery.

Plaintiffs' thus face a "non-moribund statute" that facially restricts expressive activity. Under the Fourth Circuit's interpretation of *Babbitt*, a credible threat of prosecution and a justiciable controversy exist in this case. *NCRL*, 168 F.3d at 710. *See also New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12-14 (1st Cir. 1996)("*NHRL*"); *Majors v. Abell* 317 F.3d 719, 721 (7th Cir. 2003)(plaintiff need not show express threat to prosecute); *cf*. Mot. at 12-13 (arguing no injury because Plaintiffs purportedly have not been threatened). Two additional facts bolster the credibility of the threat Plaintiffs face: Last year, the VA enforced the "partisan activities" and unwritten speech restrictions. Second, the VA has a history of enforcing previously unenforced restrictions on speech. (Griffin Opp. Decl. ¶ 8; Buck Decl. ¶ 3.)

Where the *Babbitt* test is satisfied, as it is here, the plaintiff has standing to assert a pre-enforcement *as-applied* challenge. *American Charities for Reasonable Fundraising Regulation,*

8

*Inc. v. Pinellas County* 221 F.3d 1211, 1214 (11th Cir. 2000); *Jacobs v. Florida Bar*, 50 F.3d 901,

904 (11th Cir. 1995); *see also Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209 (1974), as

well as a facial challenge.  *VSHL*, 263 F.3d at 390; *NCRL*, 168 F.3d at 711.  With respect to their

informal speech, Plaintiffs clearly have standing to challenge the VA's written and unwritten

speech restrictions *as applied* to their informal speech at the Cemetery.[2]

> **2.     Plaintiffs' Formal Speech has been Chilled and is Currently Being Subjected
> to VA Censorship.**

Last year, the VA threatened to fine Mr. Griffin for attempting to criticize VA flag

policies, the *Griffin I* decision and the condition of the Cemetery.  It also threatened to cancel

future ceremonies if speech such as Fr. Anderson's occurred again, and instituted a censorship

policy to prevent such a repetition.  (Griffin Supp. Decl. ¶¶ 10-12; FAC ¶¶ 13-20.)  As a result,

Mr. Griffin has self-censored his proposed 2002 and 2003 speeches and submitted his 2003

remarks to the VA's censorship scheme (Griffin Supp. Decl. ¶¶ 13, 18; Griffin Opp. Decl. ¶¶ 3-

5), despite deeply held misgivings (Griffin Supp. Decl. ¶ 18; Griffin Opp. Decl.¶ 8 ).  Plaintiffs

wish to engage in the forms of speech at the Cemetery that the VA prohibits, (FAC ¶¶ 3, 4, 5, 29,

33, 37, 41) but their speech is chilled by the VA's restrictions and enforcement threats.  (FAC ¶

23; Griffin Supp. Decl. ¶ 13; Griffin Opp. Decl. ¶ 7; Buck Decl. ¶¶ 7, 8.)

This injury confers standing.  In *NCRL*, 168 F.3d at 710-711, the Fourth Circuit held that

NCRL alleged the requisite injury where it claimed that it wished to distribute voter guides

---

[2]  Usually, in the course of considering an as-applied challenge, the court may hold the
challenged statute unconstitutional on its face.  *Jacobs*, 50 F.3d at 906, n. 19.  Here, however, 38
U.S.C. § 502 requires any facial challenges arising out of Plaintiffs' as-applied challenge to §
1.218(a)(14) to be brought in the Federal Circuit.  Whether the VA's unwritten restrictions must
also be brought there is discussed below.

9

arguably prohibited by the challenged statute and would do so but for its fear of prosecution. In *NHRL*, 99 F.3d at 14, the court reasoned that standing exists where the plaintiff's speech has been chilled. *See also Jacobs*, 50 F.3d at 904-905 (actual injury where plaintiffs had discontinued advertising to avoid violating statute). Whether Plaintiffs respond to the VA's threats of enforcement by risking prosecution or altering their speech is irrelevant. Both types of injury are justiciable. *NHSL*, 99 F.3d at 14. Plaintiffs face what the *NHSL* court described as a "classic dilemma" of risking prosecution or foregoing free expression. *Id*. That is exactly what Plaintiffs face here. (Griffin Opp. Decl. ¶ 8; Griffin Supp. Decl.¶ 18; Buck Decl. ¶ 7; FAC ¶ 23.)

### 3.    Plaintiffs Have Standing Based on the Right to Hear Speech the VA Has Prohibited.

Mr. Griffin has testified to the importance he attaches not only to his right to speak, but to his ability to hear formal speeches such as those of Fr. Anderson and Mrs. Buck and informal speech of the kinds the VA has prohibited at the Cemetery. (Griffin Supp. Decl. ¶ 21.) If Mr. Griffin is prevented from speaking, about 200 willing listeners, most of whom are members of the SCV, PLPOW or both, will be unable to hear him. (*Id*. ¶ 20.) This injury exists to the extent speakers like Mr. Griffin or Fr. Anderson are self-censored, censored, or not allowed to speak.

The First Amendment protects the "right to receive information and ideas." *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico,* 457 U.S. 853, 866-867, 102 S.Ct. 2799, 2808 (1982). Prohibition of speech injures the right to receive speech just as surely as it injures the right to speak, which confers standing on the would-be recipient. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*. 425 U.S. 748, 756-757, 96 S.Ct. 1817,

1823 (1976)(collecting cases in which recipients have challenged speech prohibitions).  It also

confers standing on the speaker.  *See Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383,

392-93, 108 S.Ct. 636 (1988).

 The right to receive speech has been impaired here.  Mr. Griffin's intended formal

remarks have been self-censored and censored by others.  (Griffin Supp. Decl. ¶ 13; Griffin Opp.

Decl. ¶¶ 2-5.)  Listeners' right to receive informal speech in groups, and to hear taboo

viewpoints like criticism of VA flag policy is also under a realistic threat of VA prosecution.

(Griffin Supp. Decl. ¶ 7; Griffin Opp. Decl. ¶ 8.)  Mr. Griffin is one such listener.  Most of the

others are SCV and PLPOW members.  (Griffin Supp. Decl. ¶ 20.)  The SCV and PLPOW have

standing to sue for injury to their members.  *See United Food and Commercial Workers Union

Local 751 v. Brown Group, Inc*. 517 U.S. 544, 552, 116 S.Ct. 1529, 1534 (1996).  "Recipient"

injury thus provides an independent basis for Plaintiffs' standing.

 Defendants argue (Mot. at 18) that the injury to listeners is a "generalized grievance" that

does not confer standing.  Defendants' only authority, however, is *Burke v. City of Charleston*,

139 F.3d 401 (4th Cir. 1998), a case that turned on the fact that the plaintiff artist had sold his art

work and therefore had no more standing than a member of the general public to contest its

removal.  Nothing of the kind is involved here.  As persons who engage in and hear speech at the

Cemetery, Plaintiffs suffer a distinct and particularized injury as a result of the VA's

enforcement of its speech restrictions. That injury is not shared by the public generally.


**B.** **Plaintiffs' Claims Are Ripe for Decision.**

 Defendants also argue that Plaintiffs' claims are not ripe.  "Ripeness concerns the

'appropriate timing of judicial intervention.'" *VSHL*, 263 F.3d at 389.  The question is whether

"adjudication might be postponed until 'a better factual record might be available.'" *Babbitt*,

442 U.S. at 300.  Nothing would be gained here, and much lost, by postponement.

      With respect to Plaintiffs' informal speech, the factual record is as complete now as it

will ever be up to the moment the groups gather to speak.  Plaintiffs have identified the

viewpoints they wish to express and hear at the Cemetery (Griffin Opp. Decl. ¶¶ 6-7; Griffin

Supp. Decl. ¶ 3-8; Buck Decl. ¶¶ 7-8; FAC ¶ 15, Exh. 1, ¶ 16, ¶ 21, Exh.6, ¶ 22, Exh.7; ¶¶ 3-5,

29, 33, 37, 41) which the VA has forbidden.  Plaintiffs have shown that they will not, and indeed

cannot, obtain the required advance VA permission for their informal group addresses, prayers

and other speech.  (Griffin Supp. Decl. ¶ 6; Griffin Opp. Decl. ¶¶ 6-7; Buck Decl. ¶ 7.)

      Nothing is to be gained from delay.  There is no "application process" for informal

speech.  All that is required is that people walk into the Cemetery, form groups and engage in

speech, including the taboo viewpoints.  Significantly, Plaintiffs' informal speech implicates *all*

of the VA's written and unwritten speech prohibitions.  A fully ripe controversy therefore exists

with respect to *informal speech alone*.

      With respect to Mr. Griffin's formal remarks, the final version of his speech is before the

Court and in the VA's possession.  (Griffin Opp. Decl. ¶ 5. Exh. 3.)  The only event yet to occur

is whether the VA will allow him to deliver his twice-edited address in its present form.  The

speech is less than two (2) pages long.  The VA could review the speech in a few minutes and

inform Plaintiffs and the Court in its opposition papers of any further objections it may have.  To

give the VA the opportunity to exercise censorship over Mr. Griffin's speech thus requires *no

departure from the existing briefing schedule*, much less dismissal of this action.  Dismissal is

not required to get even the very "last fact" from the VA.

Case law, moreover, does not require government restrictions to be fully exercised for a case to be ripe. The *Babbitt* Court held that the UFW's challenge to the state labor law's restrictions on secondary boycotts and "false" statements in the union's appeals to consumers was ripe, even though the content of the UFW's future speech was not yet known. In holding plaintiff's claims ripe in *VSHL*, 263 F.3d at 389, the Fourth Circuit did not require VSHL to show that the state had prohibited specific ads or even that the ads had been prepared. In *NCRL*, 168 F.3d at 710-711, the court did not require that the state actually forbid distribution of a specific voter guide. In *Local 391*, 672 F.2d at 379, the Fourth Circuit held the plaintiff labor union's claims justiciable although plaintiff had not again violated the challenged picketing ordinance. In *American Charities for Reasonable Fundraising Regulation*, 221 F.3d 1211, 1214 (11th Cir. 2000), the court held that plaintiffs' challenge to fundraising restrictions ripe without requiring the plaintiff to submit an actual mailing for review by state officials.

Here, the Court has before it a much more complete factual record with respect to the speech the VA has prohibited and that in which Plaintiffs wish to engage and hear than was presented in the above cases. Mr. Griffin's proposed remarks (Griffin Opp. Decl. ¶ 5, Exh. 3) and even the editing history of his speech (*id*. ¶ 4, Exh. 2; Griffin Supp. Decl. ¶ 13, Exh. 9) are before the Court. Plaintiffs' injury is imminent. The Confederate memorial ceremony is only six weeks away. In *VSHL*, 263 F.3d at 389, the court held VSHL's injury "not only imminent but immediate" when it filed its case because the next election was then only 15 months away and VSHL "needed to plan the substance and placement of its advertisements." Like VSHL, Plaintiffs must have "clarification of the conduct that [Plaintiffs] can engage in without the threat

13

of penalty."

Further, if the Court dismisses the case on ripeness grounds, the VA will be able simply to take no action on Mr. Griffin's remarks before the ceremony or wait to the very last minute to act, in the hope that it will then be too late for Mr. Griffin's lead counsel, located in California, to file a new action before the ceremony. If Mr. Griffin is able to file, moreover, the Court probably will have to deal with the case in the context of a TRO, which will impose a needless additional burden on the Court and its staff. Nor is there any guarantee that VA action will clarify the record at all. Last year the VA objected vaguely to the "political" nature of Mr. Griffin's remarks. A repeat of such objections would do little to clarify the issues now before the Court. To require re-filing when the VA can provide the "last fact" *under the current briefing schedule* makes no sense.

## IV.

### THE FIRST AMENDED COMPLAINT STATES VALID CLAIMS FOR RELIEF

**A.    Defendants' Erroneous *Res Judicata* Arguments.**

**1.    No Prior Decision has Upheld the Reasonableness of the VA's Application of its Verbal Speech Restrictions to Plaintiffs.**

In addition to their arguments on justiciability, Defendants seek dismissal on the merits under Fed. R. Civ. P. 12(b)(6). Such a motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999).

14

Defendants argue (Mot. at 20-21) that the *Griffin I* and *Griffin II* decisions somehow hold that the VA's application of § 1.218(a)(14)(ii) to Plaintiffs' verbal speech is reasonable. This argument appears to be directed at the "unreasonableness" allegations of the first claim and Plaintiffs' second claim. (*See* Mot. at 29, n. 10.) Defendants' argument is clearly wrong. *Griffin v. Dept. of Veterans Affairs*, 274 F.3d 818 (4th Cir. 2001), *cert. denied*, 123 S.Ct. 410 (2002)("*Griffin I*") upheld application of the VA's flag restrictions to Mr. Griffin. It also rejected Mr. Griffin's facial challenge to the VA's New Flag Manual. *See id*. at 825. The case did not address §1.218(a) (14)'s restrictions on *verbal speech*, on their face or as applied. Plaintiffs' claims that Defendants have unreasonably applied § 1.218(a)(14)'s verbal speech restrictions were not presented in *Griffin I*, nor did they even exist at that time. *Res judicata* "does not bar claims that did not exist at the time of the prior litigation." *Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991).

*Griffin v. Secretary of Veterans Affairs,* 288 F.3d 1309 (Fed. Cir.), *cert. denied* 123 S.Ct. 410 (2002)("*Griffin II*"), held that the speech restrictions of § 1.218(a)(14) were not unconstitutional *on their face* for vagueness and lack of procedural safeguards. The *Griffin II* court expressly recognized that its decision did not preclude as-applied challenges: "Of course," stated the court, "any individual decision to exclude or permit a certain speaker remains vulnerable to an as-applied challenge if that decision is unreasonable or viewpoint-discriminatory." *Id*. at 1325. "[W]e think," the court repeated, "as-applied challenges to particular acts of viewpoint discrimination are a more appropriate means to ensure that VA facility heads do not wield their power to grant exceptions arbitrarily or unreasonably." *Id*. at 1327. Plaintiffs have now brought exactly the kind of as-applied challenge to § 1.218(a)(14) the

*Griffin II* court left open. Neither *Griffin I* nor *Griffin II* bars any of Plaintiffs' claims.

**2.    Plaintiffs' Challenge to the VA's Unwritten Speech Restrictions Is Not a Facial Challenge to § 1.218(a)(14) and is not Barred by Res Judicata.**

Defendants argue (Mot. at 21-23) that Plaintiffs' challenge to the VA's unwritten restrictions on verbal speech is "no more than another" facial challenge to § 1.218(a)(14), which Defendants claim to have been held immune from any further facial challenges.  According to Defendants, the VA's unwritten restrictions are just "synonyms" for "partisan activity" as defined in § 1.218(a)(14).  This Court, say Defendants, lacks jurisdiction to hear such a claim because it is purportedly barred by *res judicata*.  Defendants' argument is without merit.

In banning "political" remarks, "personal views...critical of...individuals and organizations," and "commentary on current events," the VA is applying either § 1.218(a)(14)(ii)(and in particular the "partisan activities" prohibition) or something else – *i.e.* speech restrictions independent of § 1.218(a)(14)(ii).  In either case, this Court has jurisdiction to decide a challenge to that *application*.  *Griffin I*, 129 F.Supp.2d at 837-838 (no "statutory bar to this Court exercising jurisdiction over the as applied challenge" to § 1.218(a)(14)).

The Court also has jurisdiction over a facial challenge to the unwritten restrictions. Under 38 U.S.C. § 502, the Federal Circuit has exclusive jurisdiction over challenges to VA rules promulgated under 5 U.S.C. § 552(a)(1).  *See Griffin I*, 129 F.Supp.2d at 837.  The independent restrictions, however, have not been promulgated as rules and thus would not appear to fall within the Federal Circuit's exclusive jurisdiction.

Defendants assume that any challenge to their purported use of "synonyms" for "partisan activities" must be a *facial* challenge to § 1.218(a)(14).  This assumption is wrong.  If, as

16

Defendants argue, the VA's unwritten prohibitions represent an application of § 1.218(a)(14),

Plaintiffs may – and do – challenge the regulation *as applied*.  (*See* FAC, First Claim for Relief.)

Plaintiffs are not obligated to assert a facial challenge to § 1.218(a)(14) and have brought no

such claim here.

Further, *res judicata* "does not bar claims that did not exist at the time of the prior

litigation."  *Meekins*, 946 F.2d at 1057.  The earliest-arising claims asserted in this case arose in

June, 2002 when the VA prohibited Mr. Griffin's proposed speech.  These claims did not exist in

December, 2001 when *Griffin I* was decided or in April, 2002 when *Griffin II* was decided.

Defendants' suggestion that *res judicata* applies here is based on the theory that claims can be

barred *before they even exist*.  Defendants also seem to think that *Griffin II* insulates §

1.218(a)(14) from any further facial challenges.  If such an improbable proposition is true,

Defendants have cited no authority for it.  Finally, another requirement of *res judicata* is identity

of parties.  *Andrews v. Daw,* 201 F.3d 521, 524 (4th Cir. 2000).  Neither the SCV nor the PLPOW

was a party to *Griffin I* or *Griffin II*.  For all these reasons, Defendants' *res judicata* argument

should be rejected.

**B.    Defendants' Motion to Dismiss Plaintiffs' Second Claim Based on Application of the "Orations" Prohibition should be Denied.**

In their second claim for relief (FAC at 15-16), Plaintiffs allege that the "orations"

prohibition of § 1.218(a)(14) is unreasonable because it prohibits a broad range of informal

group speech that need not be banned in order to preserve the Cemetery for its intended use.

Defendants fail even to argue, much less demonstrate, that the FAC shows the reasonableness of

Defendants' application on its face.  Defendants' only argument for dismissal of this claim

(Mot.at 29 n. 10) is that the courts purportedly upheld the reasonableness of Defendants'

application of § 1.218(a)(14) in *Griffin I* and *Griffin II.* (Mot. at 20-21.)  As shown above,

however, these decisions have no such effect.

Defendants' only remaining argument on the "orations" claim, which they assert with

respect to standing (Mot. at 12-13), is that the prohibition does not apply to "[i]nformal,

impromptu discussions among groups of people [which] are not the same things as oration to

assembled groups."  As shown above, however, the prohibition by its terms applies to "any

oration or similar conduct to assembled groups of people, unless the oration is part of an

authorized service."  "Similar conduct" includes all conduct similar to an oration, such as a

prayer or other address spoken by one group member while the others listen, or even simple

conversation among group members.  (Griffin Opp. Decl. ¶¶ 6-7.)  Defendants make absolutely

no showing, based on the face of the FAC or otherwise, that such a broad prohibition is

necessary to preserve the forum for its intended uses.  *Multimedia Publishing Co. of South

Carolina, Inc. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 162-163 (4th Cir.1993).  As

to Plaintiffs' second claim, Defendants' motion to dismiss should be denied.

**C.**    **Plaintiffs' First Claim Adequately Alleges that the VA's Application of the**
**"Partisan Activities" Prohibition Is Unreasonable and Viewpoint-Based.**

Defendants argue (Mot. at 23-26) that Plaintiffs' as-applied challenge to § 1.218(a)(14)

fails because Plaintiffs purportedly have failed to allege a "prima facie case" of viewpoint

discrimination.  This argument is directed at Plaintiffs' first claim for relief, which challenges the

"partisan activities" prohibition as applied to Plaintiffs.[3]  Plaintiffs allege (FAC ¶ 28) that as applied to them, the prohibition is viewpoint-based, unreasonable and vague.  Defendants argue (*id.* at 24) that § 1.218(a)(14) "prohibits partisan speech or unauthorized orations...regardless of whether they support, oppose or attempt to influence current government policies."  Defendants assert that the VA prohibited Mr. Griffin's and Fr. Anderson's speeches because of their "partisan and political <u>content</u>" (Defendants' emphasis), not the viewpoints they expressed.

Defendants make no substantive argument with respect to Plaintiffs' challenge on grounds of reasonableness or vagueness (*see* FAC ¶ 28 b., c.).  With respect to these issues, they rely on their *res judicata* arguments, which as shown above are meritless.  Application of the VA's "partisan activities" prohibition to speech at the Cemetery, especially if (as Defendants argue (Mot. at 20-21) the prohibition includes all "political" remarks, criticisms of private and government groups, and "commentary on current events," will stifle an enormous amount of informal as well as formal speech.  Defendants bear the burden of showing that such a restriction, with the resulting ability of VA "speech police" to arrest people for expressing *verboten* viewpoints (*e.g.* "I wish the VA would let us fly our flag here every day.") in casual conversation is really necessary to preserve the Cemetery for its intended use.  *Multimedia*, 991 F.2d at 162-163.  Defendants could never make such a showing, which probably explains why they instead rely on erroneous *res judicata* arguments.

With respect to vagueness, the FAC sets forth the VA's August, 2002 objections to Fr. Anderson's speech and June, 2002 objections to Mr. Griffin's proposed remarks.  (FAC Exhs. 3,

---

[3] Defendants also argue that the "orations" prohibition is viewpoint-neutral.  That is true, but Plaintiffs' challenge to the "orations" restriction is not based on viewpoint discrimination.

4 and 7.)  These objections, if considered as applications of the "partisan activities" prohibition, are both vague and overbroad, as Plaintiffs argue below.  Defendants do not address either issue, except via their meritless *res judicata* arguments.  The first claim for relief therefore survives on the basis of Plaintiffs' reasonableness and vagueness challenges alone.

Defendants' viewpoint-neutrality argument (Mot. at 24-25), although insufficient for dismissal of Plaintiffs' claim, also fails.  Defendants repeat the now familiar refrain that the prohibition of competing viewpoints is viewpoint-neutral content regulation.[4]  As Plaintiffs have explained in the memorandum filed in support of their motion for preliminary injunction (("Inj. Mot.") at 24-26), however, the Supreme Court has explicitly rejected this theory.  *Rosenberger v. University of Virginia*, 515 U.S. 819, 831-832 (majority rejecting theory), 895-896 (dissent articulating theory), 115 S.Ct. 2510 (1995).

Defendants fail to address viewpoint neutrality in terms of the language of the "partisan activities" prohibition.  The language of a speech restriction, however, controls with respect to whether the restriction is viewpoint-neutral.  *See, e.g. Rosenberger*, 515 U.S. at 831 (rejecting claim of viewpoint neutrality by reference to "the very terms" of the challenged guidelines); *UFCW*, 163 F.3d at 362 (rejecting argument of viewpoint neutrality where court did not "see such a limitation in the express language" of challenged advertising policy).  When one looks at what § 1.218(a)(14) and the VA's correspondence enforcing it *actually say*, Defendants' viewpoint-neutrality argument falls apart.

Section 1.218(a)(14) prohibits speech "in support of, or in opposition to, or attempting to

---

[4]  Defendants seem to think (*see* Mot. at 23) that content-based speech restrictions are constitutional *per se*.  Content-based restrictions, however, must pass reasonableness scrutiny. There is no "automatic pass" for even a viewpoint-neutral restriction.

influence, any current policy" of the federal government or a private group.  The regulation does not prohibit all mention of current federal or private policies.  It only forbids the expression of certain "opinions," "perspectives" or "particular views" on those subjects.  *Rosenberger*, 515 U.S. at 829.  Such prohibitions are viewpoint-based.  (*See* Inj. Mot. at 22-23.)

Defendants assert (Mot. at 25) that the VA prohibited Mr. Griffin's speech and repetition of Fr. Anderson's address because of its "partisan [and] political content."  The "partisan activities" prohibition, however, is not written in terms of the "partisan-ness" or "political-ness" of speech.  It is based on whether one expresses a particular viewpoint about current federal or private policy.

In analyzing whether the "partisan activities" prohibition really excludes "partisan" or "political" speech, it is useful to ask what such speech is.  *Webster's* defines a "partisan" as "one that takes the part of another: an adherent to a party, faction, cause or person," "a strong or devoted supporter."  It defines "partisan" when used as an adjective as "composed of, based upon, or controlled by a single political party or group."  The definition also refers to "partisanship," which *Webster's* defines as "adherence to a single person or thing," "a strong or sometimes blind and unreasoning adherence to a single cause or group," and "conduct or attitudes resulting from or characterizing such adherence."  *Webster's* at 1647.

The "partisan activities" prohibition is not targeted at "partisan" speech.  The prohibition permits Fr. Anderson's criticism of *past* policies of the federal government, such as confining Confederates in "diabolical Yankee prison hell-holes" (Griffin Supp. Decl. Exh. 6 at 6, second full paragraph, third line).  It permits his description of Reconstruction as "the brutal demonic force of a radical Federal Government gone amuck."  (*Id*. at 3, first full paragraph).  It permits

21

Fr. Anderson to say that "it would have been better if the South had won [its] independence," (*id*. at 4, first full paragraph), to describe the Old South as "the last Christian civilization on this earth" (*id*. at 6, second full paragraph), and to call his listeners to faith in God (*id*. at 8).  Such speech is clearly "partisan" as *Webster's* defines the term and is just as "partisan" as the speech the VA prohibits.  The prohibition thus does not target "partisan" speech.

Nor does the "partisan activities" prohibition target "political" speech.  *Webster's* defines "political" as "of or relating to government, a government, or the conduct of governmental affairs."  *Id*. at 1755.  It defines "politics" as "the art or science of government: a science dealing with the regulation and control of men living in society."  Under this definition, Fr. Anderson's remarks about federal Reconstruction policy (Griffin Supp. Decl. Exh. 6 at 3, first full paragraph, twelfth line), and his description of the Southern cause as dedicated to "the right of all men to freely govern themselves in society" (*id*. at 3, first full paragraph, fourth line)– all of which § 1.218(a)(14) permits – are "political" comments.  They at least as "political" as making the taboo comment that the NAACP's attacks on the Confederate flag are wrong.  (*Id*. at 4-5.)

One could cite numerous additional examples but the point is clear: *By its terms* the "partisan activities" prohibition does not exclude speech based on how "partisan" or "political" it is, but on whether it expresses a forbidden viewpoint.  The application of such a prohibition to Plaintiffs is necessarily viewpoint-based because the categories of prohibited speech are viewpoints.  (*See* Inj. Mot. at 22-23.)  To apply the prohibition thus is to analyze speech in an effort to find forbidden viewpoints.

The letter of August 5, 2002 letter from the VA's Roger Rapp to Mr. Couch (Couch Decl. Exh.2; FAC Exh. 7) further singles out specific viewpoints that Fr. Anderson expressed:

> (1) lamenting what he described as 'white liberal socialists and elitist activists of the country [who have] sponsored and nurtured attacks on all the traditional aspects of our nation; (2) criticizing 'the rise of uncontrolled feminism, the ugly, demonic sexual revolution and the ever increasing octopus-like domination and control of the Federal Government;' and (3) declaring that SCV members should oppose 'the enormous growth of the bureaucratic Federal Government and the great centralization of absolute power in Washington, D.C.'

Mr. Rapp further objected to Fr. Anderson's expression of "personal views that were critical of a number of individuals and organizations including" the NAACP and the Southern Poverty Law Center, and the Governor of Virginia.

Mr. Rapp's objections are viewpoint-based. Mr. Rapp objected to Fr. Anderson's "lamenting," "criticism" and calls to "oppose," and thus to the expression of "opinions," "perspectives" and "particular views," *i.e.* to his expression of *viewpoints*. Criticism of a private group, for example, is the expression of a viewpoint. *See Air Line Pilots Ass'n, Intern. v. Department of Aviation of City of Chicago,* 45 F.3d 1144, 1157 (7th Cir. 1995)("criticism of a major airline" expresses a viewpoint). The FAC and the attached exhibits thus show that the VA has applied the "partisan activities" prohibition to Plaintiffs on the basis of the viewpoints expressed. Plaintiffs' first claim for relief therefore withstands a motion to dismiss on the independent grounds that Plaintiffs allege viewpoint discrimination.

**D.    The VA's Unwritten Restrictions were not Properly Promulgated and Violate the**

**First Amendment.**

1.    **The Unwritten Restrictions are Unlawful if Considered as Independent of §**
      **1.218(a)(14).**

In its June 5, 2002 and August, 2002 letters (Griffin Supp. Decl. Exhs.3, 4; Couch Decl.

Exh. 2), the VA objected Mr. Griffin's proposed remarks and Fr. Anderson's speech on the

grounds that they contained "political statements," "personal views that were critical of a number

of individuals and organizations," and "commentary on current events."  As discussed above,

these restrictions are either independent of § 1.218(a)(14) or they reflect an attempt to apply the

"partisan activities" prohibition.

Considered independently, the restrictions do not appear to have been properly

promulgated.  They are not included in the VA's published rules, as contemplated by 38 U.S.C. §

901 and the Administrative Procedure Act, 5 U.S.C. § 552.

The VA's application of the unwritten restrictions in its August, 2002 and March 21,

2003 letters (Wright Decl. Exh. 1), as discussed above, refers to Fr. Anderson's expression of

viewpoints the VA disapproves, such as criticism of private organizations and a state official.

The VA's application of these restrictions to Plaintiffs thus is viewpoint-based.

The unwritten restrictions are also unreasonable.  The VA bears the burden of showing

the reasonableness of its restrictions.  *Multimedia*, 991 F.2d at 162-163; *see also* Inj. Mot. at 21-

22.  The VA has not shown in any of its papers that the suppression of "political statements,"

personal criticisms or commentary on current events is necessary to preserve the Cemetery for its

intended use as a forum for speech that honors the Confederate dead.  It is not enough for the VA

to argue that such speech does not advance this purpose.  "Much nondisruptive speech – such as

24

the wearing of a T-shirt or button that contains a political message – may not be [forum-]related but is still protected speech even in a nonpublic forum." *Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, 107 S.Ct. 2568, 2573 (1987); *Multimedia*, 991 F.2d at 162.

The unwritten restrictions are also void for vagueness. In *Jews for Jesus*, 482 U.S. at 576, the Court rejected a limiting construction on a local ordinance that banned virtually all speech in an airport, which the Court assumed to be a nonpublic forum. The airport commission sought to limit the ordinance to forbid only speech that was not "airport-related." The Court reasoned that "[t]he line between airport-related speech and nonairport-related speech is, at best, murky." The proposed limitation would give local "officials alone the power to decide in the first instance whether a given activity is airport related." Such a law, the Court concluded, would confer "'a virtually unrestrained power to arrest and charge persons with a violation'...."

The same is true of any restriction that would allow VA officials to decide the "partisan-ness" or "political-ness" of speech. Such a restriction would be particularly oppressive with respect to a forum related to the Civil War. Almost all speech related to the war is fraught with partisan conviction and political implication. The same is true of criticisms and commentary on current events. If government officials can decide when remarks become "critical" or touch on current events, those officials will have the unlimited powers of enforcement that led the *Jews for Jesus* Court to reject the airport commission's limiting construction.

**2.      The Unwritten Restrictions Violate the First Amendment if Considered as an Application of § 1.218(a)(14).**

Another way to view the unwritten restrictions is as an attempted application of the "partisan activities" prohibition of § 1.218(a)(14).  That is how Defendants contend they should be viewed.  (Mot. at 21-22.)  Considered as such, the restrictions far exceed the scope of the "partisan activities" ban.  Much of the speech by Fr. Anderson that Mr. Rapp found objectionable does not fall within the  "partisan activities" prohibition.  Fr. Anderson's comments about "white liberal socialists and elitist activists" does not identify any "private group, association, or enterprise."  Fr. Anderson also did not specify any "current policy" of such persons.  The only identifiable policy attributed to them is enactment of the Great Society, generally understood to be 1960's social welfare legislation, *i.e.* a past federal policy.  Fr. Anderson refers to the Great Society historically, as a cultural force with which SCV members grew up.  (*See* Griffin Supp. Decl. at 2, near bottom of third full paragraph.)  The same is true of Fr. Anderson's comments on feminism, the sexual revolution and the increased domination of the federal government.  These comments refer to no private "group, association or enterprise," nor to any "policy."  (*See id*.)

The VA objects to Fr. Anderson's discussion of the growth of the federal government. (*Id*. at 2, fourth full paragraph.)  But this comment too refers to no "current policy" of the government, such as Medicare, Social Security or Medicaid. Mr. Rapp also objects to Fr. Anderson's criticism of the Governor of Virginia's decision not to observe Confederate history month (*See id*. at 7, first full paragraph), which is neither the criticism of a federal or a private policy and thus clearly falls outside the scope of "partisan activities."

Some of Fr. Anderson's remarks did fall within the prohibition, such as his criticism of the NAACP's policy on the Confederate flag.  (*Id*. at 4-5.)  But as shown above, much of it did not.  Since § 1.218(a)(14) is a criminal statute, the rule of lenity requires that it be read in favor of avoiding criminal exposure.  *Scheidler v. National Organization for Women, Inc.*, ___ U.S. ___, 123 S.Ct. 1057, 1068 (2003)('[W]hen there are two rational readings of a criminal statute, one harsher than the other, [courts] are to choose the harsher only when Congress has spoken in clear and definite language.')  Mr. Rapp thus not only went beyond the limits of the "partisan activities" prohibition.  He did so contrary to a fundamental rule of interpreting criminal statutes.

To forbid most of the parts of Fr. Anderson's speech the VA found objectionable, Mr. Rapp had to think up new prohibitions that go well beyond the "partisan activities" prohibition *as written*.  That is why Mr. Rapp phrased the VA's objections in terms of "personal views that were critical of a number of individuals and organizations," "commentary on current events and other statements of a partisan nature," and warned the Camp to "avoid statements of a partisan or political nature from taking place" during the Confederate memorial ceremony.

The VA's application of the "partisan activities" prohibition by means of the unwritten restrictions makes "partisan activitites," as applied, overbroad, overly vague and unreasonable.  Significantly, "partisan activities" does not apply only to formal speeches but also to informal addresses and casual conversation.  Especially when applied to informal as well as formal speech, a restriction on "partisan or political" remarks silences virtually all historical discussion.  A ban on "commentary on current events" cannot be justified in terms of preserving the forum for its intended uses.  Much speech that does not further the purposes of the forum ("Did you hear what the President said on TV last night?"  "I can't believe the governor canceled

27

Confederate history month." "My son shipped out to Iraq in March." "Nice to see you again.") is protected, even in a nonpublic forum. *Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, 107 S.Ct. 2568, 2573 (1987); *Multimedia*, 991 F.2d at 162. The same is true of "critical" remarks. Criticism is a staple of human discourse. To stifle all of it would require a substantial justification (*see* Inj. Mot. at 21-22), which the VA has not provided.

Applying the unwritten prohibitions as purported "synonyms" (Mot. at 21-22) for the types of speech forbidden by as "partisan activities" makes the prohibition void for vagueness. The language of the unwritten restrictions is anything but synonymous. For example, "partisan activities" does not forbid criticism of an individual or of a state government. But Mr. Rapp specifically objects to Fr. Anderson's criticism of the Governor of Virginia for his refusal to acknowledge Confederate history month (Griffin Supp. Decl. Exh. 6 at 7, first full paragraph about mid-page) as an example of speech that may never be repeated. Although the "partisan activities" prohibition exempts criticism of past federal policies, a ban on "partisan" and "political" remarks removes any security a speaker might have in this area. The unwritten prohibitions thus forbid speech the written language of "partisan activities" permits.

The result of considering the unwritten speech prohibitions as applications of the "partisan activities" prohibition is a statute that has no clear boundaries, but which imposes serious criminal sanctions for saying the "wrong" words. 38 C.F.R. § 1.218(b). "[S]tandards of permissible statutory vagueness are strict in the area of free expression," and government may regulate in this area only with "narrow specificity." *NAACP v. Button* 371 U.S. 415, 432, 83 S.Ct. 328, 337 (1963). The "partisan activities" prohibition, as applied via the VA's unwritten prohibitions, therefore is impermissibly vague.

**E.**    **The VA's Censorship Requirement is Viewpoint-Based and is not Embodied in any**

**Written Rules.**

Plaintiffs' fourth claim for relief challenges the VA censorship scheme.  (FAC at 18-20.)

A restriction that prohibits speech before it is uttered must at least be viewpoint-neutral.  *See*

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc*. 473 U.S. 788, 812-813, 105

S.Ct. 3439, 3454 (1985).  Defendants admit (Mot. at 26) that the VA's censorship requirement is

a "direct consequence" of Fr. Anderson's speech on June 8, 2002.  As shown above, the

language of the "partisan activities" prohibition and the VA's objections to Fr. Anderson's

speech are squarely based on viewpoint.  As applied to Plaintiffs, the censorship requirement is a

screening device for detecting disfavored viewpoints before they are expressed.  (FAC ¶ 40.)

Although it is not attached to the FAC, the VA's letter of March 21, 2003 from the VA's Ken M.

Stoner to Camp commander Frank A. Willis (Wright Decl. Exh. 1) shows that the VA censors

speeches to detect "partisan or political" messages, which as shown above boils down to

viewpoint discrimination and is unreasonably broad. The censorship scheme thus violates the

First Amendment.

The censorship scheme also does not appear in any written rule.  The statute that

authorizes VA rulemaking, 38 U.S.C. § 901, contemplates that such rules will be reduced to

writing and posted near affected VA property.  Defendants make no showing that either of these

requirements has been met. Plaintiffs' fourth claim therefore should not be dismissed.

29

## V.

## DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

**A.      The VA's Application of the "Partisan Activities" Prohibition on Other Occasions does not Make its Application to Plaintiffs Viewpoint-Neutral.**

Defendants' final argument on the merits (Mot. at 28-31) is that the VA's application of its speech restrictions to Plaintiffs is viewpoint-neutral because the VA purportedly has applied the "partisan activities" restriction to others in a viewpoint-neutral fashion.  Defendants adduce evidence that the VA has denied a Congressman, a group of war protesters and an SCV camp access to national cemeteries, but on another occasion the VA allowed an SCV camp to hold a ceremony.  These facts, Defendants argue, establish as a matter of law that the VA's suppression of Plaintiffs' speech at the Cemetery is viewpoint-neutral.  This argument is without merit.

Even if one assumes that the VA has acted in a viewpoint-neutral way in other cases, that does not establish its viewpoint neutrality here.  Plaintiffs certainly are not required to show that the VA has discriminated against disfavored viewpoints on other occasions.  Plaintiffs have shown above and in their injunction brief (Inj. Mot. at 22-26) that (1) the "partisan activities" prohibition *by its terms* is viewpoint-based; and (2) the VA's application of it via its letters of June and August, 2002 and March 21, 2003 is also explicitly based on the speaker's viewpoint. Plaintiffs incorporate these arguments here.  Defendants' application of a viewpoint-based statute in a manner that targets specific disfavored viewpoints, at a minimum raises a triable issue of viewpoint discrimination.

**B.**    **If Either Side is Entitled to Judgment, it is Plaintiffs.**

In their injunction motion and in this brief, Plaintiffs show that the VA's application of "partisan activities" to Plaintiffs is viewpoint-based and therefore unconstitutional. Even if one assumes that on other occasions the VA has acted in a viewpoint-neutral way in excluding or allowing speech at its cemeteries, the evidence is uncontradicted that here the VA has Prohibited Plaintiffs' speech on the basis of viewpoint. Defendants have further failed to meet their burden of showing that the suppression of the speech § 1.218(a)(14) defines as "partisan activities" is necessary to preserve the Cemetery for its intended use. This is especially true with respect to informal speech, but it also applies to formal speeches. The discussion in Section A. above shows that if one interprets the VA's unwritten restrictions as applications of the "partisan activities" prohibition, as Defendants argue they should be, the result is that the "partisan activities" ban is void for vagueness. For all these reasons, the Court would be justified in entering judgment for Plaintiffs on their first claim under Fed. R. Civ. P. 65.

Plaintiffs' second claim alleges that the "orations" prohibition is unreasonable as applied to informal group speech. The VA completely fails to show that the prohibition *as written* exempts informal addresses to or conversation among members of a group. The VA's response is belatedly to claim that the restriction is inapplicable to informal group speech, but the Fourth Circuit has rejected such attempts to rewrite a speech restriction in a litigation brief. The significance of the VA's position is that it clearly cannot show that the "orations" prohibition as written is reasonable as applied to informal group speech. Therefore the Court would be justified in entering judgment for Plaintiffs on their second claim.

31

Plaintiffs' third claim challenges the VA's unwritten restrictions. The VA's main defense of these restrictions is their confused argument that any challenge to the restrictions would necessarily be a facial challenge to § 1.218(a)(14), which Defendants erroneously claim is barred by *Griffin II*. As shown above, whether one views the unwritten restrictions as independent restrictions or an application of the "partisan activities" prohibition, they are unconstitutional. The Court therefore would be justified in granting judgment to Plaintiffs on their third claim. If the Court did so, Plaintiffs would be willing to dismiss their facial challenge to the VA's unwritten restrictions.

Plaintiffs' fourth claim challenges the VA's censorship scheme. The VA's own letters of August, 2002 and March 21, 2003 show that the purpose of the censorship scheme, at least as applied here, is to detect disfavored "partisan or political" viewpoints in proposed speeches. As applied, the censorship scheme thus is viewpoint-based and unconstitutional. The Court therefore would be justified in granting judgment to Plaintiffs on this claim as well. Plaintiffs would be willing, if the Court were to grant judgment on that basis, to dismiss their facial challenge to the censorship scheme.

## VI.

## THE PUBLIC INTEREST DOES NOT SUPPORT THE VA'S ARBITRARY SPEECH RESTRICTIONS

Defendants' last gasp (Mot. at 31-33) asserts that if the Court allows Plaintiffs' speech, national cemeteries will be opened up to speech "inherently unsuited to the forum...." (*Id*. at 32.) The VA, however, has a very arbitrary view of which speech is "suited" and which is "unsuited." To take but a single example, a speaker can work his audience into a rage over the federal

32

government's mistreatment of prisoners at Point Lookout. He may use references to deliberate cruelty, genocide, war crimes, viciousness and inhumanity. He can have steam figuratively coming out of his listeners' ears. He can inflame his audience with animosity toward the government for its wrongful past policies. And if such a speech were given at the Cemetery, as far as the "partisan activities" prohibition is concerned, it would be just fine.

But if the speaker compliments the government for its pivotal role in the ongoing work of preserving Confederate graves and suggests that the Cemetery's atmosphere would be better still if the VA changed its rules restricting display of the Confederate flag, he faces a fine and might even go to prison. This is why the VA's continual references to "disruption" and "quiet places to honor deceased veterans" are hollow. The VA's speech restrictions do not target "disruptive" behavior, loud or obscene speech or anything else one might use as a reasonable indicator of the "inappropriate." Instead, they prohibit the expression of forbidden viewpoints.

No harm will befall the Cemetery if speech such as Mr. Griffin's or Fr. Anderson's is allowed at the Cemetery. All that will happen is that people speak their minds, and honor the Confederate dead in their way, in informal groups and before a friendly audience that will listen politely, chat for a while and go home. Verbal speech is evanescent. It is spoken and it goes away, leaving no trace that it was ever there. Not a fence will be scratched nor a monument defaced. Not a penny will be lost. And for a few minutes, freedom will ring.

## VII.

## CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss, or in the alternative for summary judgment, should be denied.

May 1, 2003                          Respectfully submitted,

GREBER & BURGOON                     CASE, KNOWLSON, JORDAN & WRIGHT

By:_____/s/_____    By: _____/s/_____
    Stephen S. Burgoon                       Michael F. Wright (*pro haec vice*)
    (U.S. Bar No. 22207)                     (U.S Bar ID No. 82536)
    [signed by Michael F. Wright with        2049 Century Park East, Suite 3350
    permission of Stephen S. Burgoon]        Los Angeles, California 90067
    8 East 2nd Street, Suite 203             Phone: (310) 552-2766
    Frederick, Maryland 21701                Fax: (310) 552-3229
    Phone: (301) 696-9636                    e-mail:mwright@ckjw.com
    Fax: (301) 696-9637

Attorneys for Plaintiffs Patrick J. Griffin, III, Sons of Confederate Veterans, Inc. and Point Lookout Prisoner of War Association.

34