IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Patrick J. Griffin, III, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action No. WMN-02-1917 |
| v.  ) | |
| ) | |
| **Department of Veterans Affairs, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiffs are under no immediate threat of injury and VA has taken no action to enforce the regulation against plaintiffs for the 2003 Point Lookout ceremony. Nothing in plaintiffs' opposition changes this fundamental fact, which precludes standing for the organization plaintiffs and renders plaintiff Griffin's claims unripe.

Even if plaintiffs' claims were properly before this Court, they should be dismissed for failure to state a legally cognizable claim. By focusing narrowly on their own proposed activities, plaintiffs overlook the fact that the regulation, if it is applied to them at all, will be applied in the same manner as it is applied to others. The regulation is not unconstitutionally viewpoint based merely because it prohibits plaintiffs from engaging in partisan speech that is inconsistent with the decorum required at a national cemetery. Conversely, plaintiffs also attempt to support their claims by crafting overly broad interpretations of the regulation to sweep in arguably protected spontaneous conversations among small groups of people. But this effort fails as it contradicts the binding precedent stating that the terms of the regulation at issue are

clear and understandable to those of ordinary intelligence.  Nor can plaintiffs position be reconciled with the stated interpretation of VA that the regulation does not prohibit such speech, an interpretation which is entitled to substantial deference.

I.      **PLAINTIFFS' CLAIMS ARE NOT PROPERLY BEFORE THE COURT**

      A.      **Plaintiffs' Have Failed to Meet Their Burden To Demonstrate Standing To Pursue Their Claims.**

Plaintiffs have correctly identified the standards by which standing must be judged.  A plaintiff has standing if there is a credible threat of prosecution or where an impending injury is likely.  See, Babbitt v. United Farm Workers, 442 U.S. 289, 298.  That is simply not the case here.  Sanctions never have been enforced, or even threatened, by the National Cemetery Administration (NCA), the organization within VA responsible for operation of its national cemeteries, for violation of this part of §1.218(a)(14), and never have been suggested in connection with these plaintiffs.  VA has merely indicated that it may limit future opportunities to violate §1.218(a)(14) by possibly denying future requests of a third party not present here - - the Camalier Camp of the Sons of Confederate Veterans ("Camalier Camp") - - to hold ceremonies at Point Lookout.  See, Amended Complaint, Ex. 3 & 7.  Particularly where, as here, plaintiffs misinterpret the regulation to cover activities (such as informal discussions on cemetery grounds) NCA has stated it does not cover, there can be no "credible threat" of prosecution or "impending injury" based on NCA's communication with a third party about future use of a cemetery.

Plaintiff Griffin also asserts standing to challenge the orations prohibition based on a theory that VA is conspiring to restrict plaintiffs' First Amendment rights.  In plaintiff Griffin's

Supplemental Declaration to Plaintiffs Opposition ("Griffin Opp. Dec."), he states his fears that VA may, at any time, begin "cracking down" on informal speech in the cemetery. Griffin Opp. Dec. at ¶ 8. But this faulty premise is not sufficient to establish a credible threat of prosecution or impending injury. Plaintiffs have offered no evidence that NCA has ever enforced §1.218(a)(14) to restrict informal speech, let alone a threatened enforcement against these plaintiffs. To the contrary, by their own admission, plaintiffs face no imminent threat of prosecution as VA has never used the regulation to restrict informal conversations. Griffin Opp. Dec. ¶ 8 (". . . VA has not yet fined or arrested anyone for engaging in informal speech . . ."). Enforcement of VA's flag policy, while feeding plaintiffs' conspiratorial fears, see, id. at ¶ 8, cannot be the basis for fear of prosecution for entirely different activities.

Plaintiffs' citation to Virginia Society for Human Life, Inc. v. FEC, 263 F.3d 379 (4th Cir. 2001) ("VSHL"), and Babbitt v. United Farm Workers, 442 U.S. 289 (1979) for the proposition that plaintiffs have standing to bring their claims against the orations prohibition in the absence of a threat of enforcement is unavailing. First, plaintiffs' analysis only accounts for the first step of the test for standing outlined in Babbitt. The Supreme Court cautioned that, "'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'" Babbitt, 442 U.S. at 298 (quoting Younger v. Harris, 401 U.S. 37 (1971)). Second, plaintiffs' claim rests on the assumption that the regulation would restrict impromptu conversations among small groups at the cemetery, Pl. Opp. at 6-7, a position to which only plaintiffs subscribe. Plaintiffs' cannot bootstrap themselves into standing by misinterpreting the regulation to cover activity in which plaintiffs may engage. The Federal

Circuit has already decided there is no confusion as to the term oration and that reasonable people understand what it prohibits.  See, Griffin II at 1330.

Plaintiffs correctly maintain that VSHL and N.C. Right to Life, Inc. v. Bartlett, 168 F.3d 705 (4th Cir. 1999) ("NCRL") stand for the proposition that the language of the regulation determines what conduct is prohibited.  Pl. Opp. at 6.  They go astray when they claim that VA's interpretation of its regulation is an attempt to rewrite regulation.  Id.  VA, which agrees with the appellate court's interpretation of § 1.218(a)(14), is doing no such thing.  It is plaintiffs who adopt a novel interpretation to cover activities never before restricted.  Further, even if there were ambiguity in the text of the regulation, plaintiffs do not account for the substantial deference that must be paid to an agency's interpretation of its own regulations.  Barnhart v. Walton, 122 S. Ct. 1265, 1269 (2002) (agency is entitled to deference unless the plain language "unambiguously forbids the Agency's interpretation" or the construction "exceeds the bounds of the permissible.") (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)).  To meet this test, the agency's interpretation "need not be the best or most natural one by grammatical or other standards," Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991), nor does it need to be "the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.'" Regions Hospital v. Shalala, 522 U.S. 448, 460 (1998) (quoting Chevron, 467 U.S. at 843 n.11).  The view "need be only reasonable to warrant deference." Pauley, 501 U.S. at 702; see also Verizon Communications, Inc. v. FCC, 535 U.S. 467, 469 (2002) (agency construction need only be within "the zone of reasonable interpretation"); Your Home Nurse Services, Inc. v Shalala, 525 U.S. 449, 450 (1999) ("within

the bounds of reasonable interpretation"). In this case, what plaintiffs' erroneously label "unwritten restrictions" are actually the agency's legitimate construction of its own regulation.

In addition, both VSHL and NCRL involved facial challenges where the defendant agency's representations regarding non-enforcement were not relevant because the regulation's plain language prohibited the plaintiffs' expressive activities. VSHL 263 F.3d at 388. In the present case, VA's regulation has already been held facially constitutional because its plain language does not restrict expressive activity in an unconstitutional manner. See, Griffin II at 1327.

Moreover, the VSHL decision is distinguishable on yet another ground. In VHSL, the plaintiffs could not rely upon the defendant agency's interpretation of its regulation because the agency's statement of non-enforcement was too narrow to fully protect the plaintiffs. VSHL 263 F.3d at 388-89. The agency's non-enforcement policy was limited to activities that occurred in the Fourth Circuit due to the rulings on the regulation in that Circuit. Id. at 389. The VSHL Court held this was not sufficient protection for plaintiffs as they intended to engage in activity outside the Fourth Circuit that could subject them to prosecution in other jurisdictions where the agency had not adopted a non-enforcement policy. Id. In contrast, VA's interpretation of its regulation is applicable to all properties under its control so there is no danger of enforcement under different standards.

     **B.**    **Plaintiffs' Do Not Have Standing To Assert A Violation Of Their First Amendment "Right-To-Receive" Speech Because The Regulation Does Not Completely Restrict Plaintiffs' Access To The Information.**

Plaintiffs also argue they have standing based on the right to hear speeches and

viewpoints offered by speakers such as Rev. Anderson and Ms. Buck. Pl. Opp. at 10-11.

Plaintiffs' citation to Board of Education vs. Pico, 457 U.S. 853, 866-867 (1982) is

distinguishable because it pertains to the narrow context of educational material available in

public school libraries and whether the First Amendment imposed limitations on the removal of

library books from high school and junior high school libraries. Id. at 856. While the First

Amendment encompasses a right to receive ideas, that right is not absolute.[1]

A more apt precedent is the earlier Supreme Court decision, Martin v. City of Struthers,

319 U.S. 141 (1943) where the Court expressly limited the scope of the right-to-receive speech:

> Yet the peace, good order, and comfort of the community may imperatively require regulation of the time, place and manner of distribution. Cantwell v. Connecticut, 310 U.S. 296, 304. No one supposes, for example, that a city need permit a man with a communicable disease to distribute leaflets on the street or to homes, or that the First Amendment prohibits a state from preventing the distribution of leaflets in a church against the will of the church authorities.

Id. at 143. What NCA has done in this instance, via its regulation and interpretation thereof, is to

ensure that "peace and good order" are maintained in this nonpublic forum. Any "right to hear"

plaintiffs assert under the First Amendment must be balanced against VA's need to preserve the

decorum of its property. Here, that balance weighs against permitting partisan speeches on

---

[1] As pointed out in Justice Rehnquist's dissent, "the denial of access to ideas inhibits one's own acquisition of knowledge only when that denial is relatively complete. If the denied ideas are readily available from the same source in other accessible locations, the benefits to be gained from exposure to those ideas have not been foreclosed by the State." Id. at 913 (Rehnquist, dissenting). Justice Rehnquist goes on to point out that inherent in the "right-to-receive" principle adopted by the majority was a complete denial of access to the ideas sought. Id. The analysis contained in Justice Rehnquist's dissent points out the fallacy in plaintiffs' right to hear argument -- because plaintiffs are free to hear Ms. Buck, Rev. Anderson, or any of the other speakers at different times and more appropriate locations, their right to hear has not been restricted.

hallowed ground.²

### C.  Plaintiffs Claims Are Not Ripe At This Time

Plaintiffs' claims are not ripe because there has been no application of the regulation to these plaintiffs and there is no imminent likelihood of future application.  See, Abbott Laboratories. v. Gardner, 387 U.S. 136, 148-49 (1967).  As stated above, the only action VA has taken is to suggest possible future limits on opportunities for the non-party Camalier Camp to hold ceremonies if its invited speakers violate the law.  Should this ever happen, such action could be challenged (presumably by the Camalier Camp) on a complete record.  No speech would be foregone at the cemetery until a court would rule on that issue.  Thus, there is no risk that plaintiffs, or anyone else, will be subject to a prior restraint on speech.

Plaintiffs' dilemma - - being unable to fashion an "as applied" challenge because they are not in imminent danger of having their First Amendment rights infringed - - is illustrated by their repeated retreat to facial attacks on the regulation, even though it is unquestioned that such claims are foreclosed by the decision in Griffin II.  Plaintiff Griffin states that VA's regulation prohibits protected First Amendment activities "**by its terms**."  Griffin Opp. Dec. ¶ 8. (emphasis added).  Even more revealing, plaintiffs' argue they face "a non-moribund statute that **facially** restricts expressive activity."  Pl. Opp. at 8 (emphasis added).

Plaintiffs' citation to Babbitt and VSHL in the ripeness context are unavailing as both

---

² In addition, plaintiffs' assertion of a "right to hear" can get plaintiffs no further than their assertion of the right to speak.  If it is found that VA's enforcement of the regulation is both reasonable and viewpoint neutral, it necessarily follows that plaintiffs' have no greater right to hear partisan speech in this nonpublic forum than they have to deliver partisan speech.

involved facial challenges, not as applied challenges. In order for plaintiffs' as applied challenges to be ripe for adjudication, there must be a present, unconstitutional application of the regulation. This has not yet happened.

### D. The Rapp Letter To The Camalier Camp Is Not An Application Of VA's Regulation And, Thus, Cannot Be The Basis For An "As Applied" Challenge.

Plaintiffs once again correctly frame the legal standard, and once again fail to apply it properly. Pl. Opp. at 15-16. They correctly state that the holding of Griffin II does not bar review of an individual decision to permit or exclude speech at Point Lookout. Id.; see also, Griffin II at 1325. Plaintiffs then claim challenges based on the "political" remarks, "personal views . . . critical of . . . individuals and organizations" and "commentary on current events," outlined in the August 2002 Rapp letter to the Camalier Camp are "applications" of the "partisan activity" prohibition, and thus, not barred by the facial validity of the regulation. Pl. Opp. at 16-17.

Plaintiffs' semantical argument does not withstand scrutiny. The use of synonyms to illustrate the scope of "unauthorized services, ceremonies or demonstrations," in § 1.218 (a)(14)(i) and "partisan activities" in § 1.218 (a)(14)(ii) - - terms already held constitutional and without ambiguity by Griffin II, - - is not an "application" of the regulation against these plaintiffs. Likewise, VA does not "apply" the regulation against plaintiffs here by telling the Camalier Camp that the regulation covers certain speech. Id. An as applied challenge will only lie where VA acts or action is so imminent as to be concrete in a manner that threatens plaintiffs. This is not a case where defendants are asking the court to apply *res judicata* to claims that did not previously exist. Because there has been no action by VA, there can be no as applied

challenge and facial challenges are barred.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Plaintiffs' Oration Claim Must Be Dismissed.

In attempting to manufacture a claim against the orations prohibition in § 1.218 (a)(14), plaintiffs create a strawman to repeatedly attack. Pl. Opp. at 17-18. Plaintiffs should not be heard to proffer their own broad definition of the term oration, which has been specifically rejected by VA, and then claim they are in imminent threat of prosecution for actions that fall under their overbroad interpretation. The regulation at issue prohibits unauthorized services, ceremonies, or demonstrations. See § 1.218 (a)(14)(i). Section 1.218 (a)(14)(ii), upon which plaintiffs rely, lists examples of such "unauthorized demonstrations." See Griffin II at 1330. As held in Griffin II:

> Terms like "demonstration" standing alone have been upheld against vagueness attack. See, e.g., Schenk v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 383, 117 S.Ct. 855, 137 L.Ed.2d. 1 (1997); Culver v. Sec'y of the Air Force, 559 F.2d. 622, 628-629 (D.C. Cir. 1977). We therefore doubt that additional terms fleshing out the definition of "demonstration" render the prohibition unconstitutionally vague.

Griffin II at 1330. In this manner, the Court held the term "oration" to be unambiguous and clear to those of reasonable intelligence. Id.[3] Plaintiffs attempt to redefine the regulation to justify a fear of prosecution should be rejected.

---

[3] The Court applies the same logic when holding "[t]he term 'partisan activity' is "well-explained by the regulation and we fail to see any real ambiguity in its definition." Griffin II at 1330.

B.  **Plaintiffs' Partisan Activities Claim Must Be Dismissed Because It Is a Facial Challenge.  The Regulation Is Neither Unreasonable, Nor Applied In A Viewpoint Discriminatory Manner.**

Plaintiffs have, perhaps inadvertently, crystalized the issue before this Court by their acknowledgment on the first page of their opposition that their claim is based on the theory that "VA's 'partisan activities' restriction is *by its terms* viewpoint based." Pl. Opp. at 1 (emphasis in original).  By attacking the terms of the regulation, plaintiffs have asserted another facial attack on the regulation.  This fact alone requires this Court to grant defendants' motion to dismiss pursuant to Griffin II's precedent.

Even if plaintiffs' own characterization is discounted, however, plaintiffs cannot establish the partisan activities prohibition of § 1.218 (a)(14) is either unreasonable or viewpoint discriminatory as applied to these plaintiffs.  Defendants explained in Def. Opening Mem. that a plaintiff cannot mount a facial attack against the regulation after the decisions in Griffin I and Griffin II.  Def. Opening Mem. at 20-26.  Plaintiffs' challenges to the regulation on the basis of reasonableness and vagueness are, in fact, facial challenges.  These issues were specifically addressed by the Federal Circuit in Griffin II and cannot be relitigated.  This is not an application of the doctrine of *res judicata* to claims not in existence when those decisions were issued.  Contrary to plaintiffs' assertions, they have not brought "exactly the kind of as-applied challenge to § 1.218(a)(14) the Griffin II court left open." Pl. Opp. at 15-16.  Griffin II left open the possibility of future as applied challenges for any "individual decision to exclude or permit a certain speaker" if that decision were made in an unreasonable or viewpoint discriminatory fashion.  Griffin II at 1325.  In this case, there has been no decision regarding exclusion or

permission of plaintiffs to speak at Point Lookout.  If plaintiffs could show particular facts as to how the regulation was either unreasonable, viewpoint discriminatory or vague as applied to them, such as being barred from the cemetery or not being permitted to speak at the ceremony, they would have a claim upon which relief might be granted.  But as the regulation has not been applied to these plaintiffs in a manner that would give rise to an as applied claim, it must be dismissed.

Plaintiffs resort to Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819 (1995) to support their argument that § 1.218 (a)(14) is viewpoint discriminatory.[4]  Defendants agree that a court must look to the terms of a regulation to determine whether it is viewpoint neutral.  Pl. Opp. at 20.  The Griffin II court engaged in precisely this analysis.  The Federal Circuit held the regulation is, on its face, viewpoint neutral because it does not "reach a substantial amount of protected speech," nor does its "impermissible applications substantially exceed its permissible ones."  Griffin II at 1327.  Plaintiffs' err by focusing solely on the nature of their speech and crying foul because their particular viewpoint is being restricted, without recognizing that the terms of the regulation restrict all viewpoints of a partisan nature.

Plaintiffs' further claim that forbidding "opinions", "perspectives", or "particular views" on federal government or private policy, but not explicitly prohibiting all non-partisan speech constitutes viewpoint discrimination.  Pl. Opp. at 21-22.  Plaintiffs' argument essentially reduces to the proposition that partisan speech itself is the forbidden viewpoint discriminated against.

---

[4] As explained in Def. Opp. to P.I. at 8-9, Rosenberger does not hold, as plaintiffs would have it, that all restrictions on issues with multiple viewpoints is impermissible viewpoint-based discrimination.

But the essence of permissible viewpoint neutral speech restrictions is to treat similarly all types of speech on a given subject. The crucial question is not whether the regulation restricts partisan speech as a category versus other types of speech, which it does, but rather, whether the restriction on the category of partisan speech is applied in a viewpoint neutral manner so that all those seeking to express a partisan viewpoint are treated the same. It is not enough to contend, as plaintiffs do, that because the speech proposed by plaintiffs expresses a viewpoint and is restricted, application of the regulation to such speech is viewpoint discriminatory. See, Pl. Opp. at 22. Were plaintiffs' position correct, Griffin II could not have been decided as it was and the concept of viewpoint neutrality would be rendered meaningless.[5]

Lastly, plaintiffs attack VA for expressing its concern to non-party Camalier Camp regarding Reverend Anderson's speech. Once again, plaintiffs miss the point. The viewpoints expressed by Rev. Anderson were completely irrelevant to VA's objection, it was its blatantly partisan nature that made it objectionable and inconsistent with the purpose of the cemetery's memorial service. Anderson's speech criticized, lamented, and opposed government and private policy and expressed Anderson's personal opinions on various subjects. In critiquing the speech, Mr. Rapp addressed those elements directly and provided his description as to how those comments were inappropriate. When examined in the context of enforcement of the regulation as a whole, VA's sole interest in preserving the decorum of Point Lookout cemetery is manifest.

---

[5] Plaintiffs' again unwittingly concede that their claim is a facial attack, as opposed to an as applied challenge, when they argue that the "partisan activities" prohibition, "*[b]y its terms*" does not exclude speech based on how partisan or political it is, but on whether it expresses a forbidden viewpoint. Pl. Opp. at 22 (emphasis in original).

VA's post speech critique and cautionary comments sent to the Camalier Camp via the Rapp Letter do not represent "censorship" as alleged by plaintiffs. VA has not censored any speech by plaintiffs through this letter, rather, VA has put the Camalier Camp on notice that the agency, may, in the future take necessary steps to both enforce its regulations and protect the nature of the cemetery.

    **C.    Plaintiffs' Third and Fourth Claims For Relief Must Be Dismissed Because Neither Are An Application of the Regulation To Plaintiffs.**

Plaintiffs discern unwritten restrictions on speech in the Rapp Letter to the Camalier Camp in August 2002. As discussed above, these are not restrictions at all. They are merely descriptive terms used to describe the ways in which Rev. Anderson's speech violated § 1.218 (a)(14). In addition, plaintiffs cannot state a claim based on the letter because any of the descriptions used by Mr. Rapp in the letter are not applied to plaintiffs. The only parties that could conceivably have a claim are Rev. Anderson, as it was his speech, and the Camalier Camp, because the letter puts them on notice that further speeches similar to Rev. Anderson's could jeopardize Camalier's Camp ability to hold future ceremonies.

Plaintiffs also advance the novel proposition that the "restrictions" are insufficiently distinct and therefore, void for vagueness. Pl. Opp. at 25. Plaintiffs reliance on Bd. of Airport Commissioners v. Jews for Jesus, 482 U.S. 569 (1987) in purported support of the notion that Mr. Rapp's letter creates restrictions that are void for vagueness is misplaced in two ways. First, the Supreme Court found the term "airport-related" ambiguous, id. at 576, whereas the terms at issue here have been held not to be ambiguous. Second, and equally important, an airport is a fundamentally different forum from a cemetery. A wide variety of speech that would not be

disruptive in an airport – where thousands of travelers are moving about, stores are selling various wares, and passengers are being paged – would be disruptive in a cemetery. See Griffin II, 288 F.3d at 1325 ("national cemeteries are not interstate highway rest areas").

Plaintiffs' arguments do prove one point, although not one they intended. The ill-defined and wild theories plaintiffs advance on how the regulation might be unconstitutionally applied to others or to themselves in the future are strong evidence that plaintiffs' claims are unripe. The uncertainty regarding how the challenged regulation might be enforced and its scope is precisely why the Court should wait for the application of the regulation, if any, by VA. In a concrete context, the scope of the regulation as applied will be clear.

Plaintiffs' fourth claim for relief challenges VA's requirement that the Camalier Camp provide a brief summary of intended remarks prior to VA giving final approval for the 2003 Point Lookout ceremony. As argued in defendants' Opening Mem., this is not "censorship", rather it is a reasonable application of a constitutional regulation that is not being applied to plaintiffs. Def. Opening Mem. at 26-27. It is a communication with the Camalier Camp expressing NCA's views on decorum required in the cemetery and an effort to ensure VA's regulation is followed. Plaintiffs argue that because the "partisan activities" regulation is viewpoint biased, this "censorship requirement" is a means for screening out disfavored viewpoints. Pl. Opp. at 29. But this argument is entirely based on the erroneous assumption that the "partisan activities" restriction is viewpoint based. As demonstrated above, the restriction is viewpoint neutral and is applied in a viewpoint neutral manner. Once plaintiffs' faulty premise is removed, the censorship argument crumbles. What is left is an agency interpreting and applying

a regulation governing activities on its own property, which, as noted earlier in this brief, is entitled to deference. See, supra p. 4.

**III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE EVIDENCE SHOWS VA'S CONSISTENT, VIEWPOINT NEUTRAL ENFORCEMENT OF ITS REGULATION.**

Plaintiffs misstate defendants' position on the merits to be that since § 1.218(a)(14) has been applied in a neutral manner to others, it is necessarily applied to plaintiffs in a neutral manner. Pl. Opp. at 30. This is obviously wrong as past conduct does not necessarily prevent a future "as applied" challenge to the regulation. See, Griffin II at 1325. What VA has shown is that it consistently applies its regulation to all those seeking to make inappropriate partisan speeches in a national cemetery. Despite the informal discovery conducted directly on this topic, plaintiffs provide no evidence that VA is treating plaintiffs' partisan speech differently from any other partisan speech that violates the regulation. In the absence of any evidence that VA has applied its regulation in a viewpoint discriminatory fashion, defendants are entitled to summary judgment.

**IV.   THE PUBLIC INTEREST IS HARMED BY SPEECH THAT IS CONTRARY TO THE NATURE OF NATIONAL CEMETERIES.**

Plaintiffs' argument on where the public interest lies labors under the misimpression that there must be physical damage or disruption to justify VA's restriction of speech with in the cemetery. See, Pl. Opp. at 32-33. Section 1.218(a)(14) need not be directed at physical disruption or destruction to be constitutional. The Fourth Circuit held that VA may be legitimately concerned with disruption that is not necessarily physical. In Griffin I, the Court held VA could limit "controversy" in its cemeteries as controversy could "undermine the goal of

15

keeping cemeteries free from partisan conflict." Griffin I at 823. The Court also found that VA had a legitimate concern over counter-speech and the "probable effects of demands made by other groups." Speech can have an effect on a forum, despite its "evanescent" nature. For these reasons, the public interest supports restrictions which seek to promote VA's mandate to preserve the tranquil nature and expected decorum at national cemeteries.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiffs' claims because plaintiffs lack standing and their claims are not ripe for adjudication. In the event the Court determines plaintiffs have standing and their claims are ripe, this Court should dismiss plaintiffs' claims for failure to state a claim upon which relief can be granted, or in the alternative, enter summary judgment for defendants.

Dated:  May 15, 2003

        Respectfully submitted,

        ROBERT D. McCALLUM, JR.
        Assistant Attorney General

        THOMAS M. DIBIAGIO
        United States Attorney

        _____\\s\\_____
        ARIANA WRIGHT ARNOLD
        Assistant United States Attorney
        6625 United States Courthouse
        101 West Lombard Street
        Baltimore, Maryland 21201-2692
        Telephone: (410) 209-4973
        Fax:  (410) 962-2310


        _____\\s\\_____
        RICHARD G. LEPLEY
        Assistant Director
        JAMES J. SCHWARTZ
        Trail Attorney
        U.S. DEPT. OF JUSTICE, CIVIL DIV.
        FEDERAL PROGRAMS BRANCH
        20 Massachusetts Ave, N.W., Room 7310
        P.O. Box 883
        Washington, D.C.  20044
        (202) 514-3378 ph
        (202) 616-8202 fx

        OF COUNSEL:

        RICHARD J. HIPOLIT
           Deputy Assistant General Counsel
        MARTIN J. SENDEK
           Staff Attorney
        Department of Veterans Affairs
        Counsel for Defendant