UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Patrick J. Griffin, III, an individual, ) | Civil Action No. WMN-02-1917 |
| 14101 Berryville Road ) | |
| Darnestown, Maryland  20874-3517 ) | REPLY MEMORANDUM IN |
| ) | SUPPORT OF PLAINTIFFS' |
| Sons of Confederate Veterans, ) | MOTION FOR PRELIMINARY |
| a Mississippi non-profit corporation, ) | INJUNCTION |
| R.G. Wilson, Commander-in-Chief, ) | |
| 740 Mooresville Pike, Columbia, TN 38401 ) | |
| ) | |
| Point Lookout Prisoner of War Assn., ) | |
| A nonprofit unincorporated association, ) | |
| Patricia B. Buck, President, ) | |
| 1214 Moyer Road, Newport News, VA 23608-2453 ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Department of Veterans Affairs, ) | |
| a Department of the United States Government; ) | |
| 810 Vermont Avenue, NW ) | |
| Washington, D.C.  20420-0001 ) | |
| ) | |
| Roger R. Rapp, Director, ) | |
| National Cemetery System, ) | |
| a Division of the Department of Veterans Affairs, ) | |
| an individual, in his official capacity, ) | |
| 810 Vermont Avenue, NW ) | |
| Washington, D.C.  20420-0001 ) | |
| ) | |
| Ken Stoner, Director, ) | |
| Point Lookout Confederate Cemetery, ) | |
| an individual, in her official capacity, ) | |
| 5501 Frederick Avenue ) | |
| Baltimore, Maryland  21228, ) | |
| ) | |
| Defendants. ) | |

*****************************************************************************

# TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PLAINTIFFS ARE ENTITLED TO AN  INJUNCTION OR JUDGMENT WITH
      RESPECT TO THEIR INFORMAL SPEECH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Defendants Make No Showing That Their Speech Restrictions
            Are Reasonable as Applied  to Plaintiffs' Informal Speech . . . . . . . . . . . . . . . . . 3

      B.    Defendants Cannot Avoid a Decision on the Merits by Adopting a
            Litigation Position That § 1.218(a)(14) Is Inapplicable to Informal Speech . . . . . 5

III.  PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION OR
      JUDGMENT WITH RESPECT TO THEIR FORMAL SPEECH . . . . . . . . . . . . . . . . . 6

      A.    Plaintiffs Assert As-Applied Challenges, Based on Injury to Their Own
            Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    The "Partisan Activities" Prohibition Is Viewpoint-Based as Applied to
            Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1.    By Its Terms, the "Partisan Activities" Prohibition Is
                  Viewpoint-Based . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    The VA's Enforcement Letters Are Viewpoint-Based . . . . . . . . . . . . . . 10

            3.    The "Partisan Activities" Ban Prohibits Viewpoints,
                  Not Subject Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.    Plaintiffs' Speech Addresses "Otherwise Includible Subjects" . . . . . . . 12

            5.    Prohibition of Opposing or Competing Viewpoints Is Not
                  "Viewpoint-Neutral" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            6.    The VA's Censorship Requirement Is Viewpoint-Based . . . . . . . . . . . 15

      C.    Application of the VA's "Partisan Activities" and Unwritten Prohibitions
            to Plaintiffs' Formal Speech Is Unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . 15

            1.    Defendants Must Show More Than "Undifferentiated Fear"
                  of Disruption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

|  |  | 2. | The VA's Purported Concern with Decorum and Tranquility Is a Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 |

|  | D. | As Applied to Plaintiffs, "Partisan Activities" is Void for Vagueness . . . . . . . 20 |

|  | E. | Plaintiffs Assert an As-Applied Challenge to the "Attempting to Influence" Prohibition, Which is Not Barred by *Griffin II* . . . . . . . . . . . . . . . . . . . . . . . . . 21 |

| IV. | THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FAVOR ISSUANCE OF THE REQUESTED INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . 22 |

|  | A. | Defendants Claim No Harm as to Plaintiffs' Informal Speech . . . . . . . . . . . . . 22 |

|  | B. | The Balance of Hardships Favors an Injunction with Respect to Formal Speeches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23 |

|  | C. | The Public Interest Favors Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24 |

| V. | CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 |

# TABLE OF AUTHORITIES

Page

Airline Pilots Assn., Intern. v. Dept. of Aviation of City of Chicago
45 F.3d 1144 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Charities, Etc. v. Pinella County
221 F.3d 1211 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

American Library Ass'n v. Reno
33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cohen v. California
403 U.S. 15, 91 S.Ct. 1780 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Cornelius v. NAACP Legal Defense and Educational Fund, Inc.
473 U.S. 788, 105 S.Ct. 3439 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 18

Griffin v. Dept. of Veteran Affairs
129 F.Supp.2d 832 (D. Md.), *reversed* 274 F.3d 818 (4th Cir. 2001),
cert. denied, 123 S.Ct. 410 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Griffin v. Secretary of Veterans Affairs
288 F.3d 1309 (Fed. Cir.), cert. denied ,123 S.Ct. 410 (2002) . . . . . . . . . . . . . . . . . . . . . *Passim*

Hughes Aircraft Co. v. Jacobson
525 U.S. 432, 119 S.Ct. 755 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jacobs v. Florida Bar
50 F.3d 901 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9

Lorillard Tobacco Co. v. Reilly
533 U.S. 525, 121 S.Ct. 2404 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Majors v. Abell
317 F.3d 719 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Manning v. Hunt
119 F.3d 254 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Multimedia Publ. Co. Etc. v. Greenville-Spartanburg Airport Dist.
991 F.2d 159 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

NAACP v. Button
371 U.S. 415, 83 S.Ct. 328 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

North Carolina Right to Life, Inc. Gardner
168 F.3d 705 (4th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 5

Perry Educ. Ass'n. v. Perry Local Educs. Ass'n.
460 U.S. 37 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Rappa v. New Castle County
18 F.3d 1043 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rosenberger v. Univ. of Virginia
515 U.S. 819, 115 S.Ct. 2510 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

Sammartano v. First Judicial Court, Etc.
303 F. 3d 959, 969-970 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Seling v. Young
531 U.S. 250, 121 S.Ct. 717 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Smith v. Goguen
415 U.S. 566, 94 S.Ct. 1242 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sons of Confederate Veterans, Inc. ex rel. Griffin
v. Commission of Virginia Dept. of Motor Vehicles
288 F.3d 610 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 14

Sypniewski v. Warren Hills Reg. Bd. Of Education
307 F.3d 243 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tinker v. Des Moines Independent Community School Dist.
393 U.S. 503, 89 S.Ct. 733 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

U.S. v. Welch
___ F.3d ___, 2003 WL 1909285 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Virginia Society for Human Life, Inc. v. FEC
268 F.3d 379 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## STATUTES

38 C.F.R. § 1.218(a)(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

iv

# I.

## INTRODUCTION

Plaintiffs' speech at the Cemetery can be divided into two categories: formal speeches from the podium at the memorial ceremony and informal speech. Plaintiffs' informal speech includes conversation between two individuals and group speech. Group speech in turn includes casual addresses, recitation of prayers or poems by one group member to the others, and group conversation. Clearly the great bulk of the speech at issue in this case is informal speech.

Defendants make no pretense of defending the reasonableness of the VA's prohibitions as applied to Plaintiffs' informal speech. Instead, they try to avoid a decision on the merits. They argue that Plaintiffs' claims are not ripe. But as Plaintiffs have shown, they face a credible threat of prosecution and their claims therefore are justiciable. Plaintiffs do not have to wait to be prosecuted to challenge the VA's restrictions. Plaintiff therefore are entitled to an injunction with respect to their informal speech.

Defendants also claim – after a year of litigation – that the "orations" prohibition does not apply to informal speech. But the Fourth Circuit has held that government cannot avoid a decision on the merits by taking the "litigation position" that the statute does not apply to the plaintiff. If Defendants' belated admission shows anything, it is that the VA has inflicted needless anxiety on Plaintiffs and unnecessary litigation burdens on Plaintiff and this Court. On their face, the "orations" and "partisan activities" prohibitions apply to informal speech. Plaintiffs are entitled to a decision that as so applied, *both* prohibitions are unreasonable.

With respect to formal speech, *i.e.* that delivered from a podium, the VA again seeks to avoid defending the language of the "partisan activities" prohibition, as applied here, on

-1-

viewpoint or reasonableness grounds.  Defendants argue that Plaintiffs have asserted a "facial challenge," over which this Court lacks jurisdiction.  Plaintiffs, however, have brought *as-applied* challenges because their claims are based on injury to their own rights and the relief they seek is limited to their own speech.  Contrary to Defendants' assertions, the Supreme Court has recognized that a statute may be held unconstitutional *as applied* because of a constitutional defect apparent *on its face*.

Defendants' own arguments show that the "partisan activities" prohibition is viewpoint-based.  Defendants argue that the prohibition forbids "taking a position" with respect to a subject matter.  The Supreme Court and the Fourth Circuit, however, hold that "taking a position" defines the expression of a viewpoint.  The VA has forbidden expression as "partisan" precisely because of the speaker's position.  With respect to reasonableness, Defendants make no showing that *any kind of disturbance* is likely to result from speeches that include the viewpoints set forth in Mr. Griffin's and Fr. Anderson's speeches.  On the merits, Plaintiffs therefore will prevail.

The balance of hardships and public interest favor issuance of the requested injunction.  The friendly, well-behaved and receptive crowd at the Confederate memorial ceremony finds Mr. Griffin's and Fr. Anderson's remarks edifying.  Such speech will do no harm.  Similar speeches did none at four prior ceremonies.  The public interest also favors speech, not its suppression.  The Court therefore should enjoin the VA from enforcing its speech restrictions against Plaintiffs' verbal speech at the Cemetery.  In its discretion, the Court also would be justified in granting Plaintiffs judgment under Fed. R. Civ. P. 65.

## II.

## PLAINTIFFS ARE ENTITLED TO AN INJUNCTION OR JUDGMENT
## WITH RESPECT TO THEIR INFORMAL SPEECH

**A.     Defendants Make No Showing That Their Speech Prohibitions Are Reasonable as Applied to Plaintiffs' Informal Speech.**

Plaintiffs have challenged the "partisan activities" and "orations" prohibitions of § 1.218(a)(14) as applied to informal speech.  (FAC ¶¶ 4, 5, 13,16, 23-25 and first and second claims for relief; Griffin Supp. Decl. ¶¶ 4-7, 19; Griffin Opp. Decl. ¶¶ 6-7; Buck Decl. ¶ 7.) Indeed, most of the speech involved in this case is informal speech, not "oration[s] from a podium."  (Opp. at 12.)  Defendants do not even attempt to show that application of the VA's restrictions to Plaintiffs' informal speech is reasonable, although they bear the burden of doing so.  (*See* Plaintiffs' Motion for Preliminary Injunction ("Inj. Mot.") at 21-22, 29-31.)

Instead, Defendants argue (Opp. at 4, 14-15) that (1) Plaintiffs have not been threatened with enforcement against their informal speech; (2) the "orations" prohibition does not apply to informal speech; and (3) *Griffin II* bars Plaintiffs' claims with respect to informal speech.  These arguments are wrong.

"A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him." *Majors v. Abell,* 317 F.3d 719, 721 (7th Cir. 2003).  "A non-moribund statute that 'facially restricts expressive activity by the class to which plaintiff belongs' presents a [credible threat of prosecution], and a case or controversy thus exists in the absence of compelling evidence to the contrary."  *North Carolina Right to Life, Inc. v. Gardner*, 168 F.3d 705, 710 (4th Cir.

1999)("*NCRL*"); *Virginia Society for Human Life, Inc. v. FEC*, 268 F.3d 379, 388-389 (4th Cir.

2001)("*VSHL*").  Under these circumstances, the plaintiff may also assert a pre-enforcement as-

applied challenge.  *Jacobs v. Florida Bar*, 50 F.3d 901, 905-906 (11th Cir. 1995); *American*

*Charities, Etc. v. Pinellas County*, 221 F.3d 1211, 1214-1215 (11th Cir. 2000).  As Plaintiffs have

shown (Plf. Opp. to Motion to Dismiss ("Plf. Opp.") at 4-9), they satisfy this test.

Defendants argue (Opp. at 4, 14) that the "orations" prohibition does not apply to

informal speech.  Forbidden "orations" purportedly are "clearly distinguishable from informal,

impromptu discussions among groups of people."  The VA's "orations" prohibition, however,

does not ban just "orations" themselves, but "any" expression that is *similar to an oration*.

When informal groups assemble to hear a prayer, a poem or historical commentary (Griffin

Supp. Decl.¶ 8), from one member while the others listen (*id*.; Griffin Opp. Decl. ¶¶ 6-7), they

engage in conduct "similar" to an oration.  The same is true when one group member after

another converses with the rest of the group.  (*Id*.; Griffin Supp. Decl. ¶ 5; Buck Decl. ¶ 5.)

Defendants argue (Opp. at 15) that "[t]o violate § 1.218(a)(14), it would be required that

the assembled people would be present to listen to a presentation **delivered** by a speaker, not to

engage in impromptu conversation."  (Defendants' emphasis.)  That, however, is exactly what

happens when a small group "assembles" to "listen to" one group member deliver a prayer, a

poem or historical commentary.  (Griffin Supp. Decl. ¶8; Griffin Opp. Decl. ¶¶ 6-7.)  When a

group gathers to talk among themselves, one "speaker" after another "delivers" a "presentation."

It is therefore not merely arguable, *Majors*, 317 F.3d at 321, but quite clear, that the "orations"

prohibition *by its terms* applies to Plaintiffs' informal group speech.  Such conduct may not be

an "oration," but it is similar and that is why it falls within the scope of the prohibitions as

written.

Defendants do not even try to argue that the "partisan activities" prohibition is inapplicable to informal speech. *By its terms* the "partisan activities" prohibition applies to all "commentary or actions in support of, or in opposition to, or attempting to influence," any current federal or private policy. It does not exempt informal speech. Both prohibitions are unreasonable (Inj. Mot. at 31-33, 36-38) as applied to Plaintiffs' informal speech.

**B.    Defendants Cannot Avoid a Decision on the Merits by Adopting a Litigation Position That § 1.218(a)(14) Is Inapplicable to Informal Speech.**

Defendants' new-found limitation on the "orations" prohibition is not reflected in the language of the regulation. It is not embodied in any interpretive rule or formal policy. It is instead a "litigation position," *NCRL*, 168 F.3d at 710, devised to avoid an adverse adjudication. As the Fourth Circuit held in *NCRL*, at 710-711, such devices do not shield speech restrictions *as written* from First Amendment scrutiny. *See also VSHL*, 263 F.3d at 388-389 (non-enforcement policy); *Majors*, 317 F.3d at 721-722.

The VA's position, moreover, comes only when the VA must defend its restrictions as applied to informal speech. If the VA's position is sincere in its present position, one wonders why the VA never expressed the position before. The VA had opportunities to do so when (1) it received Plaintiffs' May 24, 2002 demand letter discussing informal speech (Griffin Supp. Decl. Exh. 1, p. 2); (2) Plaintiffs argued in their TRO brief (at 1, 15) that "partisan activities" and "orations" were unreasonable as applied to informal speech; and (3) Plaintiffs filed their First Amended Complaint ("FAC") alleging claims based in substantial part on informal speech.

-5-

Plaintiffs can take no comfort in the VA's present grudging admission. And the VA could reverse its current position at any time. *See NCRL* at 711 (rights "at sufferance" of state board.)

Defendants argue (Opp. at 14-15) that *Griffin II* forecloses Plaintiffs' challenge to the "orations" prohibition. The argument is meritless The issue decided in *Griffin II*, 288 F.3d at 1330, was whether the "orations" restriction was unconstitutionally *vague on its face*. The issue here is the very different question of whether the "orations" restriction, as applied to Plaintiffs' speech, is reasonable. *Griffin II* expressly recognized that it did not foreclose future as-applied challenges. *Id*. 288 F.3d at 1325, 1327.

In short, Defendants make no attempt to defend the reasonableness of the "partisan activities" and "orations" prohibitions as applied to informal speech. Defendants' attempts to avoid a decision on the merits with respect to informal speech fail. Plaintiffs therefore are entitled to a preliminary injunction prohibiting Defendants from enforcing the VA's restrictions against Plaintiffs' informal speech. In its discretion, the Court would also be justified in entering final judgment for Plaintiffs under Fed. R. Civ. P. 65 with respect to their informal speech.

### III.

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION OR

### JUDGMENT WITH RESPECT TO THEIR FORMAL SPEECH

**A.      Plaintiffs Assert As-applied Challenges, Based on Injury to Their Own Rights.**

To avoid having to defend the *language* of the "partisan activities" or "orations" prohibitions, Defendants argue (Opp. at 7, 8, 11, 14) that Plaintiffs are asserting a facial

challenge outside this Court's jurisdiction and purportedly decided against them in *Griffin II*.[1]

Plaintiffs, however, seek to vindicate their own rights, not those of others, and therefore assert an

*as-applied* challenge.  *Jacobs*, 50 F.3d at 905-906.  In *Jacobs*, plaintiffs challenged the state

bar's limitations on attorney advertising.  The burden of proof and the result in the case turned

on whether plaintiffs' challenge was "as applied" or facial.  Although the plaintiffs styled their

claim as a facial attack, the court held that plaintiffs brought an as-applied challenge because

they sought to "vindicate their own rights...."  *See also American Charities,* 221 F.3d at 1214-

1215 (pre-enforcement as-applied challenge); *American Library Ass'n v. Reno,* 33 F.3d 78, 83,

(D.C. Cir. 1994)(same).  Here, Plaintiffs seek solely to vindicate their own rights to engage in,

and hear, verbal speech at the Cemetery.  That is an as-applied, not a facial, challenge.

An as-applied challenge also differs from a facial challenge in the scope of the relief

sought.  *Griffin I*, 129 F.Supp.2d at 837-838.  Plaintiffs do not ask this Court to invalidate *all

applications* of the VA's restrictions, as they would in a facial challenge.  They only ask for

relief against those restrictions *as applied* to Plaintiffs' verbal speech at the Cemetery.  If

Plaintiffs prevail in this case, the VA will still be able, for example, to prohibit political

discussions in a VA hospital or office and to arrest picketers outside a VA building.  *Griffin II*,

288 F.3d at 1331 (Dyk, J., concurring in part and dissenting in part).  With respect to most

applications, the "partisan activities" prohibition, which one of the *Griffin II* judges described as

---

[1] Defendants seem to think that *Griffin II* insulates § 1.218(a)(14) from any further facial
challenges on any grounds.  This clearly is not the case as to subsequently arising challenges on
grounds *not decided* in *Griffin II,* such as whether the "partisan activities" and "orations"
restrictions are viewpoint-based or unreasonable on their face.

so "grossly overbroad" that it resembles a law school exam, will remain intact.[2]  The same is true of the "orations" restriction.  This case therefore is an *as applied* challenge to portions of § 1.218(a)(14).

Defendants assume (*see* Opp. at 8, 14) that a court may only consider a constitutional defect apparent on the face of a regulation in a facial challenge.  But "in any case of statutory construction ... analysis begins with 'the language of the statute.'...  And where the statutory language provides a clear answer, it ends there as well."  *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 760 (1999).  "Typically, an 'as applied' challenge is a claim that a statute *by its own terms* infringe[s] constitutional freedoms in the circumstances of a particular case."  *Seling v. Young*, 531 U.S. 250, 271, 121 S.Ct. 717 (2001) (Thomas, J., concurring.) (Emphasis added.)  The language of a restriction, and the effects of that language, thus are integral parts of an as-applied challenge.

In *Smith v. Goguen* 415 U.S. 566, 577-578, 94 S.Ct. 1242, 1250 (1974), the defendant based his constitutional challenge to a flag-desecration statute on the facial vagueness in the statutory language and the "unfettered latitude" it conferred on government officials.  The state argued that defendant's only real claim was a facial challenge, which he allegedly had not preserved for review.  In rejecting the state's argument, the Court held that defendant could assert a facial defect in the statute as applied to him.  The deficiency, the Court reasoned, "affects all who are prosecuted under the statutory language.  In our opinion the defect exists in this case."  The Court's discussion on the merits dealt with the vagueness of the statutory language *on its face*.  "Statutory language of such a standardless sweep," the Court reasoned,

---

[2]  Perhaps the VA finds Judge Dyk's characterization "shrill."  (*Cf.* Opp. at 11, top line.)

"allows policemen, prosecutors, and juries to pursue their personal predilections." *Id*. at 575. The Court held that "[t]he language at issue is void for vagueness as applied to" the defendant. *See also U.S. v. Welch* ___ F.3d ___, 2003 WL 1909285, at *10 (10th Cir. 2003). As in these cases, Plaintiffs may argue that the VA's prohibitions (and "partisan activities" in particular) are unconstitutional *as applied to Plaintiffs* because of a constitutional violation (*e.g.* viewpoints discrimination) *apparent on the face of the prohibitions*.

When a statute is unconstitutional as applied because of a defect apparent on its face, a court normally "is free to hold that the statute is unconstitutional on its face." *Jacobs,* 50 F.3d at 906 n. 19. This Court cannot take that additional step for jurisdictional reasons. *Griffin I*, 129 F.Supp.2d at 837. But that limitation does not prevent the Court from holding the "partisan activities" prohibition unconstitutional *as applied to Plaintiffs* because of viewpoint discrimination apparent on the face of the prohibition.

**B.    The "Partisan Activities" Prohibition Is Viewpoint-Based as Applied to Plaintiffs.**

**1.    By Its Terms, The "Partisan Activities" Prohibition Is Viewpoint-Based.**

In their moving papers (("Inj. Mot.") at 22-23) Plaintiffs show that the "partisan activities" prohibition *by its terms* is viewpoint-based. The relevant subject matter is the policy of the federal government or of private groups. The VA does not ban all discussion of such policy, but only certain "opinions," "perspectives" or "particular views," *i.e.* those "in support of, or in opposition to," or that attempt to influence, current federal or private policies.

Defendants counter (Opp. at 8) that: "What makes speech 'partisan' is *the taking of a position* in support of or opposition to the topic." (Emphasis added.) "Taking a position in support of or in opposition to" something, however, is the *expression of a viewpoint*. In *Sons of*

*Confederate Veterans, Inc. ex rel. Griffin v. Commission of Virginia Dept. of Motor Vehicles,* 288 F.3d 610, 624 n. 11 (4th Cir. 2002) the Fourth Circuit recognized that viewpoints are "the specific positions taken" with respect to a subject.  In *Rosenberger v. Univ. of Virginia*, 515 U.S. 819, 829, 115 S.Ct. 2510, 2516 (1995), the Court reasoned: "When the government targets not the subject matter, but *particular views taken by speakers on a subject*, the violation of the First Amendment is all the more blatant."  (Emphasis added.)  By Defendants' own reasoning, the defining aspect of "partisan" speech is the expression of a viewpoint.

## 2.    The VA's Enforcement Letters Are Viewpoint-Based.

Viewpoint discrimination leaps off the pages of the VA's August, 2002 letter to Mr. Couch applying the "partisan activities" prohibition.  (Couch Decl. Exh. 2.)  In the letter, the VA's Roger Rapp objects to Fr. Anderson's "lamenting," "criticizing," call to opposition, "personal views that were critical" and "commentary on current events," with respect to various subject matters.  The basis of Mr. Rapp's objections was not Fr. Anderson's mere mention of certain subjects but his "taking of a position in support [of] or opposition to" some aspect of them.  The VA's objections thus were viewpoint-based.  *SCV*, 288 F.3d at 624 n. 11.

## 3.    The "Partisan Activities" Ban Prohibits Viewpoints, Not Subject Matter.

Defendants argue that the "partisan activities" prohibition forbids: "all viewpoints on 'partisan' subject matters" (Opp. at 8); "all speech of partisan content" (*id*. at 9); "the general subject matter of partisan speech"; and "allows for no type of partisan speech in any form on cemetery grounds."  (*Id*. at 10.)  This argument is either (1) wrong, because "partisan activities" does not forbid all, or necessarily any, "partisan" speech as the term "partisan" is commonly understood; or (2) meaningless, because it is based on a circular justification.

As Plaintiffs have shown (*see* Plf. Opp. at 21-23), the "partisan activities" prohibition does not ban nearly all, or necessarily *any*, speech that is "partisan," as that term is commonly understood.  "Partisan" speech is characterized by "a strong or sometimes blind and unreasoning adherence to a single cause or group."  Statements the "partisan activities" prohibition permits, *e.g.* that the Southern cause in the Civil War was right, or that the Federal government's policy on treatment of Confederate prisoners was horrific (*see* Anderson Speech, June 8, 2002, Griffin Supp. Decl. Exh. 6 at 3, 6; *see also* Rapp letter August 2002, Couch Decl. Exh.2), are in this sense just as "partisan" as the prohibited statement that the VA's flag policy is wrong.[3]  Nor is the expression the VA forbids as "partisan activities," *e.g.* opposition to the VA's flag policy, necessarily indicative of a partisan position.  One could oppose the VA's flag policy for reasons having nothing to do with a strong or single-minded adherence to anything.  The VA's argument that the "partisan activities" prohibition bans "all speech of partisan content" is patently wrong, as the term "partisan" is commonly understood.

Defendants try to avoid this problem by basing their argument on the *VA's own definition* of "partisan," *i.e.* speech "in support of, in opposition to, or attempting to influence" current federal or private policy.  By arbitrarily defining "partisan" speech in these terms and calling such speech a "subject matter," Defendants argue (*see* Opp. at 9-10) that the "partisan activities" prohibition is a subject-matter restriction.  The VA's argument, however, is circular: speech is prohibited because it is "partisan," but it is "partisan" because it is included in the prohibition.

---

[3]  Virtually any expression of opinion can be the result of a partisan conviction.  The viewpoints the VA prohibits as "partisan" thus may be, but are not necessarily, partisan.  The same is true of the viewpoints the VA permits, *e.g.* praise for Rhode Island's honoring a Confederate veteran.  (*See* Griffin original speech, June, 2002, Griffin Supp. Decl. Exh. 1 at p. 1.)

Therefore speech is prohibited because it is prohibited. To the extent the VA seeks to avoid the obvious flaw in its justification (*i.e.* that "partisan activities" does not exclude nearly all, nor necessarily any, "partisan" speech in the real-world sense), its argument is based on an arbitrary definition and circular reasoning. It therefore is meaningless.

As Plaintiffs have shown above and in their moving papers (Inj. Mot. at 22-23), "partisan activities" is defined in terms of *viewpoints*. This becomes very clear when one examines the elements of the prohibition. For example, speech criticizing a private organization's current policy is the expression of a viewpoint. *Airline Pilots Assn., Intern. v. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1157 (7th Cir. 1995)(criticism of major airline is expression of a viewpoint). Opposition to government policy is also "the taking of a position" on such policy that defines expression of a viewpoint. *SCV*, 288 F.3d at 624 n. 11. Application of the "partisan activities" prohibition to Plaintiffs is necessarily viewpoint-based because application of the prohibition is a *nothing more than a hunt for forbidden viewpoints*. The "partisan activities" prohibition as applied here thus represents unconstitutional viewpoint discrimination.

### 4.     Plaintiffs' Speech Addresses "Otherwise Includible Subjects."

Defendants suggest (*see* Opp. at 10) that the viewpoints Plaintiffs wish to express do not address "otherwise includible subjects." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc*. 473 U.S. 788, 806, 105 S.Ct. 3439, 3451 (1985). The speech Mr. Griffin sought to give at the 2002 ceremony (Griffin Supp. Decl. Exh. 1), entitled "Respect for Confederates," dealt with the subjects of how Confederates are honored or dishonored and why they deserve respect. In criticizing the VA's flag restrictions and the Fourth Circuit's opinion upholding those restrictions, Mr. Griffin's proposed speech emphasized the role of the flag "as a symbol of

-12-

[Confederate soldiers'] honor, courage, contemporary decency, and [as a token of] respect for their memory and spirit." (*Id.* at 2.) Mr. Griffin tied his criticisms of the VA's upkeep of the Cemetery to respecting Confederates. (*Id.* at 3.) In his proposed "three-minute" 2003 address (Griffin Opp. Decl. Exh. 2), Mr. Griffin again ties his criticism of the VA's flag restrictions to the flag's use in "honor[ing] Confederate soldiers of all races and backgrounds."

The portions of Fr. Anderson's 2002 that the VA prohibited (Griffin Supp. Decl. Exh. 6) addressed subject matter within the scope of the forum. Fr. Anderson discussed the subjects of how people, and especially SCV members, honor the Confederate dead and why Confederates deserve to be honored. He also sought to account for why Confederates are honored or dishonored. He referred to "white liberal socialists and elitist activists," feminism, the sexual revolution and the increased power of the federal government as historical forces that in his view made SCV members indifferent to honoring Confederates. (*Id.* at 2.) He went on to contrast this past indifference with what he sees as new attitudes among the SCV that resemble those of the Confederates themselves, including opposition to centralized government. These new attitudes have led, in Fr. Anderson's view, to a revival of interest among the SCV in protecting the good name of Confederate soldiers. These viewpoints relate to the subject matter of how the Confederate dead are, and should be, honored.

Fr. Anderson further criticized and praised individuals and organization in contemporary society, but he did so on the basis of their attitudes toward Confederate history. He criticized the Governor of Virginia for not recognizing Confederate history month (*id.* at 7) and praised the African-American mayor of Suffolk, Virginia because he did recognize it. He criticized the NAACP's attacks on the Confederate flag (*id.* at 4-5) and praised an African-American woman

-13-

who accepted an invitation to join the UDC.  (*Id*. at 7.)  These remarks too are part of the subject of whether Confederate soldiers deserve honor and whether they receive the respect that is due them.  In short, the viewpoints Mr. Griffin and Fr. Anderson expressed, and which the VA prohibited, addressed "otherwise includible subjects."

> **5.      Prohibition of Opposing or Competing Viewpoints Is Not "Viewpoint-Neutral."**

As Plaintiffs have shown (Inj. Mot. at 24-26),the Supreme Court in *Rosenberger*, 515 U.S. at 831-832, 895-896, rejected the argument that a speech prohibition achieves viewpoint neutrality by prohibiting competing or opposing viewpoints.  Defendants try to distinguish *Rosenberger* on the grounds that (1) it purportedly did not deal with a nonpublic forum (*see* Opp. at 9, n.5) and (2) if *Rosenberger* holds prohibition of multiple viewpoints unconstitutional, then no speech regulation is possible where multiple viewpoints exist.  These arguments are wrong.

*Rosenberger* applies in a nonpublic forum.  In *SCV,* 288 F.3d 610, 622, a nonpublic-forum case, the Fourth Circuit relied heavily on *Rosenberger*.  Moreover, *Rosenberger* does not prohibit "speech restrictions where multiple viewpoints exist."  (Opp. at 9.)  It holds that (1) where a speech restriction prohibits "particular views taken on a subject," *i.e.* when the "specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction," 515 U.S. at 829, the restriction is based on viewpoint; and (2) such a regulation cannot be saved because it also prohibits opposing or competing viewpoints.  *Id*. at 831-832. Speech of course may be regulated where multiple viewpoints exist.  But government may not target the speaker's particular views on a subject, nor excuse viewpoint discrimination on the grounds that it also prohibits opposing or competing viewpoints.

-14-

Defendants argue (Opp. at 9) that Plaintiffs' speech is inconsistent with *Griffin I*'s holding that Point Lookout be maintained as a place to honor the Confederate dead in "nonpartisan" surroundings. *Id.* 274 F.3d at 821. *Griffin I* did not hold that the VA's flag restrictions were viewpoint-neutral. It held, *id.* at 824, that the VA could forbid Mr. Griffin's viewpoint to protect its own message. It also held that, far from being viewpoint-neutral, the VA's New Flag Manual prefers the Confederate flag over others. *Id.* The Supreme Court and the Fourth Circuit, moreover, have held that *all* speech restrictions in a nonpublic forum must be viewpoint-neutral. *Rosenberger*, 515 U.S. at 829-830; *SCV*, 288 F.3d at 623. This is true of restrictions designed to preserve the tranquility of the forum. *See Cornelius*, 473 U.S. at 811. The "partisan activities" restriction, however, is based squarely on viewpoint.

### 6. The VA's Censorship Requirement Is Viewpoint-based.

To make sure Fr. Anderson's viewpoints are never repeated, the VA implemented its censorship requirement. (Couch Decl. Exh. 2.) It is applying that requirement to Mr. Griffin's proposed speech as this brief is written. Plaintiffs have shown that the purpose of the requirement is to silence disfavored viewpoints. (Inj. Mot. at 40.) Defendants admit (Opp. at 16) that the censorship requirement is "a direct consequence of the political comments made by Rev. Anderson at the June 8, 2002 ceremony." The VA thus admits that the purpose of the censorship requirement is exactly as Plaintiffs contend.

### C. Application of the VA's "Partisan Activities" and Unwritten Prohibitions to Plaintiffs' Formal Speech Is Unreasonable.

### 1. Defendants Must Show More than "Undifferentiated Fear" of Disruption.

In its enforcement letters (Griffin Supp. Decl. Exhs. 3, 4, 7), the VA purported to prohibit

-15-

speech in order to preserve the "decorum" of the Cemetery.  Defendants argue (Opp. at 12-13) that the VA's restrictions "seek to limit verbal speech that would disrupt the tranquil and nonpartisan surroundings" of the Cemetery.  The record, however, is devoid of any evidence of disruption.  Indeed, the evidence is uncontradicted that no such disruption has ever occurred.  (Griffin Supp. Decl. ¶ 22; Buck Decl. ¶ 8.)

Courts have consistently held that even in schools and courthouses, where government has greater leeway in controlling speech, mere "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression."  *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 508, 89 S.Ct. 733, 737 (1969).  To justify the prohibition of speech, government must demonstrate "'a significant fear of disruption, not just some remote apprehension of disturbance.'"  *Sypniewski v. Warren Hills Reg. Bd. of Education*, 307 F.3d 243, 253 (3rd Cir. 2002); *Sammartano v. First Judicial Court, Etc.*, 303 F. 3d 959, 967-968 (9th Cir. 2002); *Cohen v. California*, 403 U.S. 15, 23, 91 S.Ct. 1780 (1971).  Unable to make any such showing, Defendants apparently contend that Plaintiffs' speech lacks "decorum" because of the ideas expressed, a notion the courts have rejected.  *See Sammartano*, 303 F.3d at 969-970.

Defendants raise four arguments to avoid these cases: (1) they are not required to show "physical disruption or destruction"; (2) the above cases dealt with symbolic speech, not verbal speech; (3) a footnote in *Perry Educ. Ass'n. v. Perry Local Educs. Ass'n.*, 460 U.S. 37, __ n. 12 (1983) and *Griffin I* purportedly relieve Defendants of of showing disruption is likely; and (4) no showing is needed in light of the "special needs of a national cemetery."  (Opp.at 13.)

Argument (1) does not relieve Defendants of their burden. Defendants must show a

-16-

likelihood of *some kind* of "interference, actual or nascent with" use of the Cemetery or "collision with the rights of other[s]...." *Tinker*, 393 U.S. at 508; *Sypniewski*, 307 F.3d at 254. Evidence must show that the speech the VA prohibits is more likely to cause disturbance than other speech. *Sammartano*, 303 F.3d at 968 (requiring showing of "intimidation"); *see also Cohen*, 403 U.S. at 23. (Inj. Mot. at 26-28.) Defendants have made no such showing here.

Defendants' distinction between symbolic and verbal speech finds no support in the case law. *Tinker* treated the armbands at issue in that case as "closely akin to 'pure speech.'" *Id.*, 393 U.S. at 505. Any distinction between symbolic speech and "an oration delivered from a podium" is irrelevant for purposes of requiring government to show that "the asserted risks [of disruption] are real." *Sammartano* at 967. Verbal speech, moreover, lasts only as long as the speaker is talking. Symbolic speech continues as long as the symbol is visible. The evanescence of verbal speech therefore tends make it less disruptive than the display of symbols, not vice versa.

Defendants' attempted reliance on *Perry* overlooks an important distinction. In *Perry*, the exclusion of the rival union was based on speaker identity and the incumbent union's official status and duties as bargaining representative. *Id.* 460 U.S. at 51-52. The *Perry* majority distinguished *Tinker* on the grounds that it "did not involve the validity of an unequal access policy but instead an unequivocal attempt to prevent students from expressing their viewpoint on a political issue." *Perry*, 460 U.S. at 49 n. 9. Like *Tinker* but unlike *Perry*, this case arises out of an attempt to prevent Plaintiffs from expressing and hearing their viewpoints.

Defendants do not explain just why the "special needs of a national cemetery" would justify speech restrictions based on speculative fears of disruption, although evidence showing a

well-grounded fear is required in schools and courthouses. Those environments are full of people engaged in serious pursuits, some constitutionally protected. Speech by some may disrupt others' use of a school or courthouse. By contrast, there is no evidence at all that anything Plaintiffs will say at the Cemetery will interfere with others' rights.

Defendants argue (Opp. at 13) that *Griffin I* relieves them of showing a realistic fear of disruption. *Griffin I*, however, is factually distinguishable. It involved the placement of an unattended Confederate flag at the Cemetery every day between 9:00 a.m. and 6:00 p.m. *Id.*, 129 F.Supp.2d at 839 n. 9. The flag thus would have been visible at the Cemetery 3,285 hours per year. Here, by contrast, Plaintiffs' formal speech is presented only once a year, to a friendly audience (*see* Buck Decl. ¶ 9) comprised mostly of SCV and PLPOW members, and lasting only about an hour.[4]

Moreover, the evidence is uncontradicted that no disruption occurred (Buck Decl. ¶3 at p. 2, ¶ 9; Griffin Supp. Decl. ¶ 22) during *four years* of repeated calls for daily display of the flag, criticisms of the VA and private organizations (Buck Decl. Exh. 4), informal criticism of VA policies (Griffin Supp. Decl. ¶¶ 4-8; Griffin Opp.Decl.¶¶ 6-7), and Fr. Anderson's spirited defense of the Confederate cause and his own call for return of the flag. (*Id*. Exh. 5 at 4-7.) Under the facts of this case, there is no evidence of any realistic threat of disturbance.

## 2.  The VA's Purported Concern with Decorum and Tranquility Is a Pretext.

Even where reasonable grounds for prohibiting speech exist, the Court may reject them if it makes a factual finding that the government's real motivation is viewpoint discrimination.

---

[4]  To the extent *Griffin I* might be read to allow the VA to restrict speech on the basis of speculative fears of disruption, Plaintiffs submit the decision is contrary to *Tinker* and should not be followed.

*Cornelius,* 473 U.S. at 811; *Multimedia Publ. Co. Etc. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 159, 162 (4th Cir. 1993).  The VA's professed reason for enforcing its speech restrictions against Plaintiffs is to preserve "decorum," and "tranquility" and to avoid "partisan" speech.  (Griffin Supp. Decl. Exhs. 3, 4, 7.)  Plaintiffs show (Inj. Mot. at 26-30) in two ways that this purported concern is a pretext.  First, the "partisan activities" prohibition by its terms does not prohibit the great bulk of "disruptive" or "partisan" speech as those words are commonly understood.  Second, at the Confederate memorial service the VA allows display of the Confederate flag, a symbol that *the VA itself considers* nearly as controversial as a burning cross.  The VA cannot be very concerned about possible "disruption" by Mr. Griffin's speech calling for daily display of the flag or better upkeep of the Cemetery if it allows what *it believes to be* a symbol of slavery and oppression to be displayed throughout the ceremony.[5]  To infer from these facts that the VA's real purpose is to silence disfavored viewpoints is entirely reasonable.

Defendants' initial response (Opp. at 10-11) is a muddled assertion that Plaintiffs are making a facial challenge based on "hypotheticals," not actual application of the VA's regulations.  That the VA has applied its speech prohibitions to Plaintiffs, however, is incontrovertible.  (*See* VA letters June 5, 2002, August, 2002, Griffin Supp. Decl. Exhs. 3, 4, 7.) The result has been self-censorship, censorship and the chilling of speech.  (Griffin Supp. Decl. ¶¶ 7, 10; Buck Decl. ¶¶ 7, 8.)  The only issue is *why* the VA has enforced its regulations against Plaintiffs.  The best explanation is that the VA wishes to silence certain viewpoints.

---

[5]  The VA says (Opp. at 11) that it allows display of the Confederate flag "when it is appropriate to serve the purpose of honoring those interred at the cemetery."  That the flag is an appropriate symbol to honor the Confederate dead, however, has nothing to do with how it is perceived by persons who would attribute a negative message to the flag even when flown over Confederate graves.

The VA tries (Opp. at 11) to downplay its former position on the Confederate flag by arguing that it allows display of the flag "when it is appropriate to serve the purpose of honoring those interred at the cemetery."  The VA can't have it both ways.  In November, 2000, the VA submitted briefs to this Court in which it described the flag as a symbol of the South's attempt to "perpetuate the slavery of black persons" (Inj. Mot. at 28).  If such a symbol does not threaten the "decorum" of the Cemetery, neither do Mr. Griffin's and Fr. Anderson's speeches.  If the VA can justify two full days of display of what *it considers* a divisive symbol of hate, it can justify an hour of Mr. Griffin's and Fr. Anderson's speech.  Defendants seek to distinguish the flag from the purportedly more dangerous "oration from a podium."  (Opp. at 11-12.)  But Defendants do not show why a verbal oration, given to a friendly audience and lasting maybe an hour, is more disruptive than all-day display of the flag.  The VA's arguing out of both sides of its mouth seriously undercuts its claimed desire to preserve "decorum" or "tranquility."

Defendants also assert that their speech prohibitions are "time place and manner restrictions."  "But the abiding characteristic of valid time, place, and manner regulations is their content neutrality."  *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 573, 121 S.Ct. 2404, 2431 (2001).  The VA's "partisan activities" and unwritten restrictions are not even viewpoint-neutral, much less content-neutral.

**D.     As Applied to Plaintiffs, "Partisan Activities" is Void for Vagueness.**

Defendants argue that their "unwritten" prohibitions are really applications of the "partisan activities" prohibition.  If so, they show that *as applied to Plaintiffs*, "partisan

-20-

activities" is void for vagueness.[6]  Plaintiffs have shown that the VA went well beyond the

language of "partisan activities" in prohibiting portions of Fr. Anderson's speech.  (Plf. Opp. at

26-27.)  Indeed, most portions of Fr. Anderson's speech the VA objected to do not fall within the

"partisan activities" ban as written, including his criticism of the Governor of Virginia.

Defendants also assert (Opp. at 11) that their list of objections was not exclusive, which suggests

Defendants might try to prohibit yet additional, unspecified remarks of the type made by Fr.

Anderson.

    In trying to apply the "partisan activities" prohibition, the VA has lapsed into forbidding

"political" remarks, "commentary on current events" and criticisms of state officials.  The VA's

application of "partisan activities" shows that it does not respect, or cannot discern, the

boundaries set by the language of the prohibition.  "Narrow specificity" is the standard of

regulation where, as here, criminal penalties may be assessed for saying the "wrong" words.

*NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337 (1963).  As applied here, the "partisan

activities" prohibition is completely devoid of such specificity.  A speaker can have no certainty

of avoiding prosecution even if he carefully tailors his words to avoid expression defined as a

"partisan activity," (*e.g.* criticism of a federal policy).  The Court therefore should hold that, as

applied to Plalintiffs, "partisan activities" is void for vagueness.

**E.    Plaintiffs Assert an As-Applied Challenge to the "Attempting to Influence"**

    **Prohibition, Which Is Not Barred by *Griffin II*.**

    Defendants argue (Opp. at 14) that Plaintiffs assert a facial challenge to the "attempting

---

[6] If they are independent prohibitions, they are void for the reasons set forth in Plaintiffs' papers.  (Inj. Mot. at 38-40.)

to influence" portion of "partisan activities," which purportedly is foreclosed by *Griffin II*.  As is

clear from the face of the VA's August 2002 enforcement letter (Griffin Supp. Decl., Exh. 7;

Couch Decl. Exh. 2 at p. 2), however, the VA applied the entire "partisan activities" prohibition

to Fr. Anderson's speech, including the "attempting to influence" restriction.  The VA did not

specify which portions of Fr. Anderson's speech purportedly violated any given portion of the

"partisan activities" ban, but the VA quotes the whole "partisan activities" definition, not just

part of it, in forbidding Fr. Anderson's remarks.  Any uncertainty as to which speech the VA has

forbidden under the "attempts to influence" portion is due to the VA's own lack of precision in

applying the prohibition.  This is an actual application of "attempting to influence," not a

hypothetical case.

Defendants make  no argument that the VA's application of the "attempting to influence"

clause to Fr. Anderson's speech is constitutional.  Instead, they claim that Plaintiffs' challenge is

barred by *Griffin II*.  But the very portion of *Griffin II* Defendants cite, 288 F.3d at 1325,

acknowledges that it does not bar future as-applied challenges.  Such a challenge is now before

the Court.  It is based on the VA's application of the clause to Plaintiffs and the VA's

demonstrated inability to remain within the confines of the "partisan activities" prohibition as

written.  Plaintiffs seek relief only with respect to their speech at the Cemetery.  Under the

authorities Plaintiffs cite in their moving papers (at 34-36), the language of the "attempting to

influence" portion of the regulation makes it void for vagueness as applied to Plaintiffs' speech.

## IV.

## THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST
## FAVOR ISSUANCE OF THE REQUESTED INJUNCTION

**A.    Defendants Claim No Harm as to Plaintiffs' Informal Speech.**

If the Court does not issue an injunction prohibiting Defendants from interfering with Plaintiffs' informal speech, Plaintiffs will remain under a cloud with respect to virtually everything they say at the Cemetery.  Members of the SCV and PLPOW will be there and will be talking, often in groups.  By issuing an injunction the Court will remove the discomfort that Mr. Griffin and Ms. Buck have described with respect to their informal speech.  (Griffin Supp. Decl. ¶ 7; Buck Decl. ¶ 7.)  The Court can infer that others similarly situated share this discomfort.  It is intolerable that citizens must weigh their every word for fear of being overheard by a zealous VA official.  By contrast, Defendants claim no harm arising from Plaintiffs' informal speech.

The VA argues (Opp. at 4-5) that Plaintiffs' challenge with respect to informal speech is premature "unnecessary litigation," because § 1.218(a)(14) purportedly doesn't apply to such speech.  Plaintiffs have shown that Defendants' belated admission does not affect the justiciability of Plaintiffs' claims.  *By their terms* the "partisan activities" and "orations" do not exempt informal speech.  It took this motion to extract the VA's admission.  Defendants have not claimed, moreover, that the "partisan activities" provision is inapplicable to informal speech. One can only conclude that Plaintiffs intend to cite attendees at the ceremony for informally criticizing VA policies or expressing other forbidden viewpoints in casual conversation.  The requested injunction is essential if Plaintiffs are to be free from such intrusions of VA "speech police."

**B.    The Balance of Hardships Favors an Injunction with Respect to Formal Speeches.**

If Plaintiffs are unable to give the formal speeches they wish to deliver and to hear, they will lose the benefits of speech they are willing to drive long distances to experience.  A more

serious cloud hangs over formal speech because the VA has enforced against such speeches

before.  Speeches critical of VA policies and private organizations were made at the Cemetery

from 1998 through 2001 (Buck Decl. ¶¶ 3-4, Exhs. 1, 2, 4, 5), without incident.  (Griffin Supp.

Decl. ¶ 22; Buck Decl. ¶ 9.)  There is no realistic prospect of harm if such speeches are made

again.

       Defendants argue that Defendants will be harmed because Plaintiffs' proposed formal

speech is "inappropriate," "partisan," and "political."  Defendants should know, however, that

they may not smuggle arguments on the merits into a discussion of the balance of hardships.

The very case they cite says so.  *Manning v. Hunt*, 119 F.3d 254, 265 (4th Cir. 1997).

**C.    The Public Interest Favors Speech.**

       The constitution "generally favors more speech."  *Rappa v. New Castle County,* 18 F.3d

1043, 1073 (3rd Cir.1994).  Absent a showing of harm -- which Defendants have never made

apart from vague assertions based on nothing -- speech communicates ideas that those who

attend the Confederate memorial ceremony find agreeable and efficacious, which the public

interest favors.

**V.**

**CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion for preliminary injunction should be granted.  In its discretion, the Court would further be justified in granting judgment for Plaintiffs under Rule 65.


DATED:  May 15, 2003                    Respectfully Submitted,

GREBER & BURGOON                        CASE, KNOWLSON, JORDAN & WRIGHT

By:_____/s/_____       By: _____/s/_____
    Stephen S. Burgoon                      Michael F. Wright (*pro haec vice*)
    (U.S. Bar No. 22207)                    (U.S. Bar ID No. 82536)
    [signed by Michael F. Wright with       2049 Century Park East, Suite 3350
    permission of Stephen S. Burgoon]       Los Angeles, California 90067
    8 East 2nd Street, Suite 203       Phone: (310) 552-2766
    Frederick, Maryland 21701               Fax: (310) 552-3229
    Phone: (301) 696-9636                   e-mail:mwright@ckjw.com
    Fax: (301) 696-9637

    Attorneys for Plaintiffs Patrick J. Griffin, III, Sons of Confederate Veterans, Inc.
    and Point Lookout Prisoner of War Association.

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2003 a paper format copy of :

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

which were electronically filed in this case on May 15, 2003, were sent out via federal express, to the Court and to:

Virginia B. Evans                                    Richard G. Lepley
Office of the United States Attorney                 US Department of Justice
US Courthouse Federal Garmatz Bldg.                  Civil Division Federal Programs Branch
101 W. Lombard Street, Sixth Floor                   20 Massachusetts Avenue NW
Baltimore, MD 21201                                  P.O. Box 883
                                                     Washington, DC 20530.


James J. Schwartz
Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 14524
Washington, D.C. 20044-4524


Respectfully submitted,


GREBER & BURGOON                          CASE, KNOWLSON, JORDAN & WRIGHT

By:_____/s/_____            By: _____/s/_____
   Stephen S. Burgoon                        Michael F. Wright (*pro haec vice*)
   (U.S. Bar No. 22207)                      (U.S. Bar ID No. 82536)
   [Signed by Michael F. Wright with         2049 Century Park East, Suite 3350
   permission of Stephen S. Burgoon]         Los Angeles, California 90067
   8 East 2nd Street, Suite 203         Phone: (310) 552-2766
   Frederick, Maryland 21701                 Fax: (310) 552-3229
   Phone: (301) 696-9636                     e-mail:mwright@ckjw.com
   Fax: (301) 696-9637

F:\FILES\6480\005\Drafts\Reply.prel.inj.1.28.wpd