```
           IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

PATRICK J. GRIFFIN, III.,   :
et al.                      :
                            :
                            :
v.                          :    Civil Action WMN-02-1917
                            :
DEPARTMENT OF               :
VETERANS AFFAIRS, et al.    :
```

**MEMORANDUM**

Before the Court is Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment.  Paper No. 21.  The motion is ripe for the Court's consideration.  Upon a review of the pleadings and applicable case law, the Court determines that the motion will be granted.

**I. FACTUAL BACKGROUND**

This case arises out of a dispute regarding possible penalties for expressing prohibited speech at Point Lookout Confederate Cemetery.  Plaintiffs in this case are: Sons of Confederate Veterans, Inc. (SCV), an organization that sponsors Confederate memorial services; Patrick J. Griffin III (Griffin), a member of the SCV; and Point Lookout Prisoners of War (PLPOW), an organization that honors Confederate soldiers held at the Point Lookout Prison Camp.

Defendants in this case are: Department of Veterans Affairs (VA), which operates the Point Lookout Cemetery

1

(Cemetery) through the National Cemetery Association; Roger R. Rapp, former VA Deputy Under Secretary for Operations and the Director of the National Cemetery Association; and Ken Stoner, director of the Cemetery.

For twenty years, Plaintiffs have held annual memorial services at the Cemetery.  On several occasions formal speeches have been given at the services.  On June 8, 2002, Plaintiffs held a memorial service at the Cemetery, where Plaintiff Griffin delivered a formal speech.

Prior to the memorial service, Griffin corresponded with the VA in an effort to ensure that the regulations set forth in 38 C.F.R. §1.218(a)(14)[1] would not be enforced against him or against the Captain Vincent J. Camalier Camp No. 1539 (Camalier Camp), not a party to this litigation.  In his correspondence, Griffin voluntarily enclosed a copy of his proposed speech, which included references to the VA's flag

---

[1] Section 1.218 was issued in 1985 and sets forth security and law enforcement regulations applicable at all VA facilities and property not administered by the General Services Administration.  Section 1.218(a)(14)(i) prohibits any service, ceremony, or demonstration on VA property, unless authorized by the head of the facility, while section 1.218(a)(14)(ii) prohibits in relevant part to these motions, "any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service;" and "partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise."

policies and his litigation against the VA regarding those policies.  Defendant Rapp responded to the Camalier Camp, advising it that Griffin's speech contained statements adverse to the desired decorum of the Cemetery.  Rapp warned the Camp that if Griffin gave the speech, the Camalier Camp may have difficulty obtaining permission to hold similar services in the future.  The VA also responded directly to Griffin, advising him to revise his speech.

In hopes of preventing any action by the VA against Plaintiffs or the Camalier Camp, Griffin filed the instant complaint and applied for a temporary restraining order (TRO) the day before the 2002 memorial service.  Judge Andre Davis presided over the TRO hearing and denied Griffin's petition. Judge Davis determined that Griffin's allegation that the regulation is viewpoint-discriminatory was speculative and that it was inappropriate to issue a TRO prior to the speech. Not wanting to risk penalty from the VA, Griffin revised his speech.

At the 2002 memorial service, Father Alister Anderson, a speaker whose text was not previously screened by the VA, criticized certain ideals of modern society, such as "the rise of uncontrolled feminism, the ugly, demonic sexual revolution and the ever increasing octopus-like domination and control of

the Federal Government." In response to this speech, Defendant Rapp wrote a letter to the Camalier Camp in August, 2002. In his correspondence, Rapp characterized certain portions of the speech as "political remarks", "personal views critical of persons and organizations", and "commentary on current events." Rapp stated that the remarks were partisan activity within the meaning of the regulation, and consequently, the Camp would need to submit a brief summary of any intended remarks along with their requests for any future ceremonies.

When the Camalier Camp began to plan its 2003 memorial service, it complied with the VA's request for summaries of the intended remarks with its application to hold the ceremony. In order to compile the summaries, the Camalier Camp required each speaker to submit an outline of any intended remarks and sign a document indicating an understanding of the VA's speech requirements.

Griffin's initial remarks contained comments regarding the VA's flag policy. The Camalier Camp instructed Griffin to edit the remarks because it sought to avoid any potential conflicts with the VA. As a result, Plaintiffs filed their first Amended Complaint in this action in February, 2003.

Plaintiffs bring four claims for declaratory and

injunctive relief against Defendants.  First, Plaintiffs claim that the "partisan activities" prohibition of §1.218(a)(14) violates the First Amendment as applied to Plaintiffs' speech and speech Plaintiffs wish to hear.  Second, Plaintiffs claim that the "orations" prohibition of §1.218(a)(14) violates the First Amendment as applied to Plaintiffs' speech and speech Plaintiffs wish to hear.  Third, Plaintiffs claim the terms "political remarks," "personal views," and "commentary on current events," contained in Rapp's August 2002 letter to the Camp violate the First Amendment on its face and as applied to Plaintiffs' speech and speech Plaintiffs wish to hear.  Fourth, Plaintiffs allege that the requirement, contained in the August 2002 letter, to send in brief summaries of speakers' intended remarks along with the Camp's application for an authorized ceremony is a censorship scheme designed to filter undesired viewpoint speech and violates the First Amendment on its face and as applied to Plaintiffs.

In May, 2003, this Court held a hearing and denied Plaintiffs' request for injunctive relief.  As such, all that is left to consider are Plaintiffs' claims for declaratory relief.

## II. STANDARD OF REVIEW

A court considers only the pleadings when deciding a

motion to dismiss. If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Fed. R. Civ. P. 56. See <u>Villeda v. Prince George's County, MD., et al.</u>, 219 F.Supp.2d 696, 698 (D. Md. 2002). In this case, the parties have submitted matters outside the pleadings, and the Court has considered these matters. Defendants' motion shall be considered a motion for summary judgment and decided accordingly.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation. <u>Id.</u>

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and indentifying the portions of the opposing party's cause of action which it believes demonstrate the absence of a

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324.

**III. DISCUSSION**

Defendants argue that Plaintiffs lack standing to bring these claims because they are not injured parties and their claims are not yet ripe. For the purposes of this motion only, the Court will assume that Plaintiffs have standing and that their claims are ripe and will move on to discuss the merits of the case. The Court will consider only the as-applied challenges because this regulation was found constitutional on its face, by the Federal Circuit, in prior litigation involving these same parties.[2]

---

[2] Griffin v. Secretary of the Veterans Affairs, 288 F.3d 1309 (Fed. Cir. 2002)(Griffin II). In Griffin II, the Federal Circuit noted in dicta that as-applied challenges to the

It has long been held that the constitutionality of speech limitations differs depending on the forum in question. Parties in the present case do not dispute that the Cemetery is a "nonpublic forum". "In nonpublic fora, the government may restrict access by content or speaker identity, so long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Griffin II, 288 F.3d at 1321. Additionally, there does not need to be a record of past disturbances to justify the denial of access to a non-public forum on the grounds that the proposed use may disrupt the property's intended functions. See Perry Educ. Ass'n. v. Perry Local Educs.' Ass'n., 460 U.S. 37, 52 n.12 (1983) (citing Greer v. Spock, 424 U.S. 828 (1976)).

A. "Partisan activities"- Counts I and III.

In Count I, Plaintiffs claim that the "partisan activities" prohibition of §1.218(a)(14)(ii) violates the First Amendment as applied to them because it is unreasonable, viewpoint-based, vague, and chills speech. In Count III, Plaintiffs argue that the terms used by Rapp in his August 2002 letter "appear to be unwritten speech prohibitions

---

regulation may still exist regarding individual decisions to approve or exclude speech if the decision is unreasonable or viewpoint discriminatory. Id at 1325.

devised by Defendants" which were not properly promulgated within the confines of 38 U.S.C. §901.³  Amended Complaint at ¶ 36.  Alternately, Plaintiffs argue that these terms "reflect an attempt to apply the 'partisan activities' prohibition."  Pls.' Opp. at 24.

Defendants argue that the application of the partisan activities prohibition in this situation is reasonable in order to "'honor, as Americans, <u>in tranquil and nonpartisan surroundings</u>, those who have given their lives to the Nation.'"  Defs.' Mot. at 21 (quoting <u>Griffin v. Dep't. of Veteran Affairs</u>, 274 F.3d 818, 820 (4th Cir. 2001), <u>cert. denied</u>, 123 S.Ct. 410 (2002)) (<u>Griffin I</u>) (emphasis in Defendants' motion).  According to Defendants, their goal in restricting partisan speech is "'to ensure that cemeteries remain sacred to the honor and memory of those interred or memorialized there.'"  Defs.' Mot. at 21 (quoting <u>Griffin II</u>, 288 F.3d at 1325).  In support of Plaintiffs' argument that the "partisan activities" prohibition is unreasonable and chilling, they allege the prohibition as applied "will stifle

---

³ Section 901 allows the Secretary of each agency to prescribe rules of conduct and penalties for violation of the rules.  Section 901(d), in pertinent part, states, "[t]he rules...together with the penalties for violations of such rules, shall be posted conspicuously on property to which they apply."  38 U.S.C. §901(d).

an enormous amount of informal as well as formal speech." Id. at 19.

The Court is satisfied that section 1.218(a)(14)'s partisan activities prohibition as applied to Plaintiffs is reasonable in light of the characteristic nature and function of national cemeteries. As explained in Griffin II, the Court is obliged to examine the nature of the forum because restrictions in nonpublic fora "may be reasonable if they are aimed at preserving the property for the purpose to which it is dedicated." Griffin II, 288 F.3d at 1323. Here, by the express command of Congress, cemeteries under the VA's control "shall be considered national shrines as a tribute to our gallant dead." 38 U.S.C. § 2403(c). Speech can have an effect on a forum, and the Court is convinced that opening the Cemetery to the type of speech proposed by Plaintiffs might disrupt the VA's mandate to preserve the tranquil nature and expected decorum of national cemeteries.

Plaintiffs also argue that the partisan activities prohibition is unconstitutionally vague because it gives government officials vague, subjective, and virtually unrestrained power to arrest and criminally prosecute speakers for engaging in disfavored speech. Amended Complaint at ¶ 28(c). The Court concludes that Plaintiffs have not

demonstrated a triable issue of fact as to their vagueness argument because the prohibition has already been found to be constitutional on its face in Griffin II, and Plaintiffs proffer nothing beyond unsupported speculation in support of their as-applied argument.  At this stage of litigation, unsupported speculation is insufficient to defeat a motion for summary judgment.

Finally, Plaintiffs argue that the partisan activities provision prohibits and criminalizes speech on the basis of viewpoint.  Amended Complaint at ¶ 28(a).  Plaintiffs claim that the "regulation does not prohibit all mention of current federal or private policies. . . .  It only forbids the expression of certain 'opinions,' 'perspectives,' or 'particular views' on those subjects. . . .  Such prohibitions are viewpoint-based."  Pls.' Opp. at 21 (citing Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995)).

As explained above, restrictions on speech in a non-public forum must be viewpoint-neutral.  "The essence of viewpoint-based discrimination is the state's decision to pick and choose among similarly situated speakers in order to advance or suppress a particular ideology or outlook."  Berner v. Delhanty, 129 F.3d 20, 28 (1st Cir. 1997), cert. denied 523

U.S. 1023 (1998) (citing <u>Lamb Chapel v. Center Moriches School Dist.</u>, 508 U.S. 384, 393-94 (1993)).  As the United States Supreme Court has stated, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity."  <u>Perry</u>, 460 U.S. at 49.  For example, "[p]ermissible content-based restrictions exclude speech based on topic, such as politics or religion, regardless of the particular stand the speaker takes on a topic."  <u>Diloreto v. Downey Unified School Dist. Bd. of Ed.</u>, 196 F.3d 958, 969 (9th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1067 (2000).

   Here, section 1.218(a)(14) prohibits partisan activities regardless of whether such activities support, oppose, or attempt to influence current government policies.  It is not the "motivating ideology or the opinion or the perspective of the speaker that is the rationale for the restriction."  <u>Rosenberger</u>, 515 U.S. at 829.  Plaintiffs' argument essentially reduces to the proposition that partisan speech itself is the forbidden viewpoint discriminated against.  But the essence of permissible viewpoint neutral speech restrictions is to treat similarly all types of speech on a given subject.  The crucial question is not whether the regulation restricts partisan speech as a category verses

other types of speech, which it does, but rather, whether the restriction on the category of partisan speech is applied in a viewpoint neutral manner so that all those seeking to express a partisan viewpoint are treated the same.  It is not enough to contend, as Plaintiffs do, that because the speech they propose expresses a viewpoint and is restricted, application of the regulation to such speech is viewpoint discriminatory. See Pls.' Opp. at 22.  Accordingly, the Court will grant summary judgment in favor of Defendants as to Count I of the Amended Complaint.

In Count III of the Amended Complaint, Plaintiffs point to Rapp's August 2002 letter written to the Camalier Camp following Father Anderson's speech at the 2002 memorial service.  Rapp's letter characterized Father Anderson's remarks as "political remarks," "personal views," and "commentary on current events," which were not permitted in formal speeches delivered at the Cemetery.  Plaintiffs contend these terms represent either a prohibition independent of the regulation or an attempt to apply the partisan activities prohibition.

Defendants maintain that the "terms challenged by plaintiffs are synonyms for partisan/political activities and track directly with the definition provided in

§1.218(a)(14)(ii)." Defs.' Mot. at 21. Defendants claim Rapp's letter merely explained the way in which the speaker's remarks fell within the "partisan activities" wording of the regulation. Id. at 22. Additionally, because the letter was sent to the Camalier Camp, and not to Plaintiffs, Defendants assert that Plaintiffs have not shown that they suffered any injury.

The Court agrees with Defendants. Rapp's letter characterized parts of Anderson's speech and used the above terms to explain why Anderson's speech was unacceptable. The terms were not used to create additional restrictions on speech. Additionally, the Court concludes that Plaintiffs have not presented any as-applied challenge. Rapp's letter to Camalier Camp explaining that the regulations cover certain speech is not an "application" against the Plaintiffs in the present action. Because the Federal Circuit has already decided that the regulations are constitutional on their face, there is no claim on which relief can be granted.

### B. "Orations" Prohibition - Count II

In Count II, Plaintiffs claim that the "orations" provision of §1.218(a)(14)(ii) is unreasonable, chills speech, and confers vague and subjective power on VA officials to determine prohibited conduct. Amended Complaint at ¶ 32.

Plaintiffs argue that the orations provision unreasonably "prohibits a broad range of informal group speech that need not be banned in order to preserve the Cemetery for its intended use." Pls.' Opp. at 17. Plaintiffs reason that the words "similar conduct" found in the orations prohibition prohibit informal speech.[4] Plaintiffs claim that "similar conduct" "includes all conduct similar to an oration, such as a prayer or other address spoken by one group member while the others listen or even simple conversation among group members." Id.

Defendants reject Plaintiffs' interpretation of "similar conduct," maintaining that the provision is aimed at prohibiting unauthorized services, ceremonies, or demonstrations. Defs.' Reply at 9. Defendants argue that Plaintiffs have offered no evidence that the VA has ever enforced the regulations at issue to restrict informal speech, let alone threatened enforcement against these Plaintiffs. Id. at 3. Further, Defendants note that in Griffin II, the court found the oration term to be "unambiguous and clear to those of reasonable intelligence." Id. at 9 (citing Griffin

---

[4] The orations provision prohibits "any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service." §1.218(a)(14)(ii)(emphasis added).

15

II, 288 F.3d at 1330).

While the Federal Circuit did not interpret this term in Griffin II, it did hold that the orations prohibition was not unconstitutionally vague on its face and that the "[c]hallenged terms must be read in context of the regulation as a whole . . . and we have little doubt that visitors of ordinary intelligence reading § 1.218(a)(14) would understand what behavior was expected of them on VA property--particularly on the grounds of a national cemetery." Griffin II, 288 F.3d at 1330 (citations omitted). As noted by the court in Griffin II, the "regulation itself literally prohibits only unauthorized services, ceremonies, or demonstrations, see 38 C.F.R. § 1.218(a)(14)(i); all of the challenged terms appear as examples of unauthorized demonstrations. Terms like 'demonstrations' standing alone have been upheld against vagueness attack. . . . We therefore doubt that additional terms fleshing out the definition of 'demonstration' render the prohibition unconstitutionally vague." Id. (internal citations omitted).

This Court, in considering Plaintiffs' as-applied challenge to the orations prohibition, follows the reasoning of the Federal Circuit. The regulation seeks to prevent organized speeches to assembled groups of people which have

not been approved by the VA. Plaintiffs have made no showing that the VA has ever enforced its regulations in a manner that would restrict conversations between small groups of people or that the VA intends to do so in this situation. The Court concludes that the orations provision is a reasonable method of maintaining the decency and decorum of the Cemetery.

### C. "Censorship Requirement" - Count IV

Plaintiffs' fourth claim is derived from Rapp's August 2002 correspondence with the Camalier Camp, which requires the Camp to submit brief summaries of intended remarks for the 2003 ceremony. Plaintiffs claim the requirement violates the First Amendment as applied to Plaintiffs because it is an unconstitutional prior restraint and censorship tool. Amended Complaint at 19. Plaintiffs use the reasoning discussed above in support of their argument that this scheme is viewpoint-based. Additionally, Plaintiffs object to the requirement because it is not reduced to writing or posted near the VA property, in accordance with 38 U.S.C. §901. Pls.' Opp. at 29.

Defendants argue that the brief summary is a reasonable response to actions that took place that were not in keeping with the purpose of the Cemetery and that it is viewpoint-neutral. Defs.' Mot. at 27. Defendants claim the requirement

is not censorship; rather, it is a reasonable application of a constitutional regulation that is <u>not</u> being applied to Plaintiffs.  According to Defendants, Camalier Camp, the group which received approval for the ceremony, is the party affected by this application.

Again, the Court agrees with Defendants' reasoning.  The Fourth Circuit in <u>Griffin I</u> and the Federal Circuit in <u>Griffin II</u> stressed the importance of the Cemetery as a place for reverence and solemnity and found that the VA's regulations in furtherance of these goals were reasonable.  In this action, the Court rejects Plaintiffs' viewpoint-based argument for the same reasons as discussed above.  The challenged requirement was a direct reaction to Father Anderson's speech at the 2002 service and is a reasonable method to prevent similar speeches at the 2003 service and to further the goals of the forum.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted.  A separate order consistent with this memorandum will issue.

                                        _____/s/_____
                                        William M. Nickerson
                                        Senior United States District Judge

Dated: July 30, 2003