NOTICE OF ISSUANCE OF MANDATE

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

September 21, 2004

MANDATE

TO: Clerk, District Court/Agency

FROM: Diane H. Burke
      Deputy Clerk

RE: 03-2042 Griffin v. Dept Veterans Affrs
    CA-02-1917-WMN

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 22 ?

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

HEREWITH IS THE MANDATE OF THIS COURT, ISSUED THIS DATE,
ON THE JUDGMENT ENTERED BY THE COURT ON 7/30/04.

[ ] Order and Certified Copy of Judgment
[x] Opinion and Certified Copy of Judgment
[ ] Order on Costs
[ ] Order dismissing appeal R42(b) or Local Rule 45
[ ] Other: _____
[ ] The record has been retained for use in case number

cc: John Samuel Koppel
    Mark Bernard Stern
    Michael F. Wright

JUDGMENT

FILED: July 30, 2004

UNITED STATES COURT OF APPEALS

the

Fourth Circuit

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

       SEP 2 2 2004

        AT BALTIMORE
   CLERK U.S. DISTRICT COURT
      DISTRICT OF MARYLAND
                        DEPUTY
BY
```

03-2042
CA-02-1917-WMN

PATRICK G. GRIFFIN, III, an individual; MARYLAND DIVISION SONS OF CONFEDERATE VETERANS, a Maryland non-profit corporation; POINT LOOKOUT PRISONER OF WAR ASSOCIATION, a non-profit unincorporated association

   Plaintiffs - Appellants

v.

DEPARTMENT OF VETERANS AFFAIRS, a Department of the United States Government; ROGER R. RAPP, Director, National Cemetery System, a Division of the Department of Veterans Affairs, an individual, in his official capacity; KEN STONER, Point Lookout Confederate Cemetery, an individual in his official capacity

   Defendants - Appellees

---------------------

Appeal from the United States District Court for the
District of Maryland at Baltimore

---------------------

  In accordance with the written opinion of this Court filed this day, the Court affirms in part and reverses in part the judgment of the District Court. This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

  A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate

A True Copy, Teste:
Patricia S. Connor, Clerk
BY _____
  Deputy Clerk

/s/ Patricia S. Connor
_____
CLERK

S/W/ℒℓ

UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| PATRICK G. GRIFFIN, III, an individual; MARYLAND DIVISION SONS OF CONFEDERATE VETERANS, a Maryland non-profit corporation; POINT LOOKOUT PRISONER OF WAR ASSOCIATION, a non-profit unincorporated association,<br>          *Plaintiffs-Appellants,* | ____FILED      _ENTERED<br>____LODGED.    _RECEIVED<br><br>SEP 2 2 2004<br><br>AT BALTIMORE<br>CLERK U.S. DISTRICT COURT<br>DISTRICT OF MARYLAND<br>BY _____ DEPUTY |
| DEPARTMENT OF VETERANS AFFAIRS, a Department of the United States Government; ROGER R. RAPP, Director, National Cemetery System, a Division of the Department of Veterans Affairs, an individual, in his official capacity; KEN STONER, Point Lookout Confederate Cemetery, an individual, in his official capacity,<br>          *Defendants-Appellees.* | No. 03-2042 |

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(CA-02-1917-WMN)

Argued: June 2, 2004

Decided: July 30, 2004

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

## COUNSEL

**ARGUED:** Michael F. Wright, CASE, KNOWLSON, JORDAN & WRIGHT, Los Angeles, California, for Appellants. John Samuel Koppel, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Thomas M. DiBiagio, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Richard J. Hipolit, Deputy Assistant General Counsel, Martin J. Sendek, DEPARTMENT OF VETERANS AFFAIRS, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

SHEDD, Circuit Judge:

Plaintiffs Patrick Griffin, Sons of Confederate Veterans, Inc. ("SCV"), and Point Lookout Prisoner of War Association ("PLPOW") brought First Amendment challenges to Department of Veterans Affairs ("VA") regulations that prohibit "partisan activities" and "orations" at national cemeteries. The district court granted summary judgment in favor of the VA, holding that the regulations, as applied to the plaintiffs, are constitutional because they provide for reasonable restrictions on speech in a non-public forum. For the reasons set forth below, we affirm the judgment of the district court in part but hold that the district court lacked jurisdiction to consider two of the plaintiffs' claims on the merits.

Point Lookout Confederate Cemetery is administered by the VA and is located near the former Point Lookout Prison Camp, where Union forces held Confederate prisoners during the Civil War. For approximately the last twenty years, SCV and PLPOW have held formal Confederate memorial ceremonies at the cemetery. In accordance with Congress' instructions that national cemeteries "shall be considered national shrines as a tribute to our gallant dead," 38 U.S.C. § 2403(c), the VA regulates "demonstrations" at its facilities, providing as follows:

> (i) All visitors are expected to observe proper standards of decorum and decency while on VA property. Toward this end, any service, ceremony, or demonstration, except as authorized by the head of the facility or designee, is prohibited. Jogging, bicycling, sledding and other forms of physical recreation on cemetery grounds is [sic] prohibited.
>
> (ii) For the purpose of the prohibition expressed in this paragraph, unauthorized demonstrations or services shall be defined as, but not limited to, picketing, or similar conduct on VA property; *any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service*; the display of any placards, banners, or foreign flags on VA property unless approved by the head of the facility or designee; disorderly conduct such as fighting, threatening, violent, or tumultuous behavior, unreasonable noise or coarse utterance, gesture or display or the use of abusive language to any person present; and *partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.*

38 C.F.R. § 1.218(a)(14) (emphasis added). Unauthorized demonstrations or ceremonies on the premises of a national cemetery are punishable by removal from the premises and a $250 fine. *Id.* § 1.218(b).

During preparations for the 2002 ceremony, Griffin submitted proposed remarks to the VA, in which he criticized its policy of limiting

| 4 | GRIFFIN v. DEP'T OF VETERANS AFFAIRS |
|---|---|

the flying of the Confederate flag at national cemeteries to two days a year. Griffin's proposed speech said, "The soldiers here at Point Lookout deserve to have the banner they fought and died under flying over their graves every day as a symbol of their honor, courage, contemporary decency, and respect for their memory and spirit." Griffin also intended to speak about inadequate maintenance at the cemetery, asserting that "it would appear as though Veterans Administration officials are honoring our heroic ancestors with a deliberate program of demolition by neglect" and that "perhaps the Veterans Administration would have some funds for this cemetery if it weren't too busy using our tax dollars to defend pernicious rules aimed squarely at disrespecting our Confederate ancestors."

In response to Griffin's submitted remarks, the VA's General Counsel wrote Griffin's lawyer saying, "As the Point Lookout Confederate Cemetery is a shrine to honor the dead, it would be inappropriate for your client to include in his remarks political statements." The letter also said that the VA "expected" Griffin to "revise his proposed remarks and limit them to paying tribute to those who rest within the hallowed grounds of Point Lookout Confederate Cemetery." On the same day, Deputy Under Secretary Roger Rapp wrote the SCV indicating that if Griffin delivered his proposed remarks, the SCV's ability to hold future ceremonies would be jeopardized.[1]

In hopes of delivering the speech as originally proposed, the plaintiffs filed the underlying complaint and applied for a temporary restraining order ("TRO") the day before the 2002 memorial service. The district court denied the petition for a TRO, and Griffin delivered a revised version of the speech. At the ceremony, however, Father Alister Anderson gave a speech that the VA had not screened, in which he referred, among other things, to the "rise of uncontrolled feminism, the ugly, demonic sexual revolution and the ever-increasing octopus-like domination and control of the federal government." As a result, Under Secretary Rapp wrote the SCV for a second

---

[1] This is the first of two letters that Rapp sent to the Camalier Camp, the organization within the SCV that sponsors the ceremony. The Camalier Camp, however, is not a party to this suit. Because the distinction between the two organizations is not relevant for our purposes, we will refer to the Camalier Camp as "SCV."

| GRIFFIN v. DEP'T OF VETERANS AFFAIRS | 5 |
|---|---|

time and expressed his view that Anderson's remarks violated VA regulations because they constituted partisan activities. Rapp also objected to Anderson's "commentary on current events" and his expression of "personal views that were critical of a number of individuals and organizations." Rapp requested that, for future ceremonies, the SCV provide brief summaries of the intended remarks of any speakers.

Before the 2003 ceremony, Griffin again submitted proposed remarks to the VA. The VA requested that Griffin edit the remarks to delete comments regarding the VA's Confederate flag policy, including the sentences, "The government is surely right in allowing our flag to fly here today," and "Especially in this place, the flag should fly every day, just as it is doing this morning." The VA did not object to the phrase, "[W]e are all aware that the battle flag has been misused by various groups as a symbol so utterly unworthy of what Confederate soldiers stood for and what they accomplished, that its misuse constitutes an outright atrocity." The VA also failed to object to Griffin's description of the federal government's treatment of Confederate prisoners during the Civil War as "wrongful."

The plaintiffs subsequently filed an amended complaint seeking injunctive and declaratory relief. The district court denied the plaintiffs' request for injunctive relief and granted the VA's motion for summary judgment on the declaratory relief claims. This appeal followed.

## II.

Plaintiffs bring as-applied challenges to § 1.218(a)(14), arguing that (1) the "partisan activities" prohibition violates their First Amendment rights to engage in formal speech; (2) the "partisan activities" and "orations" prohibitions violate their First Amendment rights to engage in informal speech; (3) the prohibitions in Rapp's letter[2] regarding "personal views" and "commentary on current events" violate the First Amendment and are improperly promulgated regula-

---

[2] Here, we refer to the second letter that Rapp sent to the SCV. To the extent plaintiffs are still pursuing any claim regarding Rapp's first letter, we address that claim in note 5 *infra*.

tions; and (4) the VA's requirement that proposed remarks be submitted prior to the ceremony is an unconstitutional prior restraint.[3] We review the district court's grant of summary judgment *de novo*, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the plaintiffs. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### A.

We first address plaintiffs' formal speech claims. The district court found, and the parties agree, that the cemetery is a non-public forum. The government may reserve a non-public forum for its intended purpose, and speech restrictions will be upheld if they are reasonable and viewpoint-neutral. *Perry*, 460 U.S. at 46; *Griffin I*, 274 F.3d at 820. A reasonable restriction "need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985). We determined in *Griffin I* that the purpose of the cemetery is "to honor, as Americans, in tranquil and nonpartisan surroundings, those who have given their lives to the Nation." 274 F.3d 818, 821. With this purpose in mind, we will uphold the VA's application of the regulation if done in a reasonable and viewpoint-neutral manner.

The plaintiffs argue that the VA applied its speech restrictions unreasonably in light of the fact that the VA allowed the display of the Confederate flag on the day of the ceremony. Because the VA restricts the flying of the Confederate flag to two days a year, in an apparent recognition of the contentious nature of the flag, the plain-

---

[3]Plaintiffs also mounted facial challenges in their complaint. The district court, however, only addressed the as-applied claims because the Federal Circuit previously held § 1.218(a)(14) constitutional on its face. *See Griffin v. Sec'y of Veterans Affairs* ("*Griffin II*"), 288 F.3d 1309 (Fed. Cir. 2002). To the extent that plaintiffs assert facial challenges on appeal, we do not have jurisdiction to consider them. *See* 38 U.S.C. § 502 (conferring exclusive jurisdiction on the Federal Circuit to hear challenges to VA rulemaking); *Griffin v. Dep't of Veterans Affairs* ("*Griffin I*"), 274 F.3d 818, 825 (4th Cir. 2001).

tiffs contend that the VA necessarily opens the forum to discussion of this issue on the day of the ceremony and, accordingly, may not restrict plaintiffs' speech.

We find that this argument lacks merit. By allowing the Confederate flag to fly on the day of the ceremony, the VA did not abandon its statutory directive that national cemeteries are to serve as "shrines to our gallant dead" nor did it undermine the cemetery's purpose of honoring the dead soldiers in "tranquil and nonpartisan surroundings." To the contrary, the VA simply accommodated the plaintiffs by allowing them to display the Confederate flag in commemoration of the soldiers buried at the cemetery. Because the VA's action favored the plaintiffs, it cannot be the very thing that renders the VA's implementation of § 1.218(a)(14) unreasonable *as to these same plaintiffs*.

The plaintiffs also argue that the VA's application of the regulation was unreasonable because the VA did not demonstrate how Griffin's proposed remarks and Anderson's comments threaten the cemetery's intended use. This argument fails, however, because the Supreme Court has said that no such determination is necessary regarding non-public forums. See *Perry*, 460 U.S. at 52 n.12 ("We have not required that [proof of past disturbances or likelihood of future disturbances] be present to justify the denial of access to a non-public forum on grounds that the proposed use may disrupt the property's intended function."). Because the VA is not required to make this showing, and the plaintiffs have pointed to no other evidence that the VA acted unreasonably, we find that the VA's application of § 1.218(a)(14) as to the plaintiffs was reasonable.

2.

The plaintiffs argue that the VA engaged in viewpoint discrimination by objecting to pro-flag statements in Griffin's proposed speech for the 2003 ceremony while failing to object to other partisan statements in the same speech. For example, the VA did not object to Griffin's reference to "wrongful former policies of the federal government in regard to the treatment of Confederate prisoners." The VA also failed to object to Griffin's criticism of groups that have "misused" the Confederate flag. The plaintiffs therefore contend that the VA applied the regulation selectively to squelch their pro-flag speech.

As to Griffin's comment about "wrongful former policies," the regulation, which has already been upheld on a facial challenge, clearly does not apply. By its terms, § 1.218(a)(14) prohibits "commentary or actions in support of, or in opposition to . . . any *current* policy of the Government of the United States or any private group, association, or enterprise." (emphasis added). Because Griffin was referring to a "former" policy of the government, the regulation is inapplicable. As to Griffin's reference to the "misuse" of the Confederate flag, however, we find that these comments would likely fall under the purview of the regulation because Griffin criticized current policies of private groups. Indeed, the VA would have been justified in striking this language as well. But the plaintiffs' argument in this regard suffers from a fundamental defect: their remedy, if anything, would be for the VA to strike even more of their speech, rather than allowing all speech. Under the regulation, partisan activities are prohibited, and the plaintiffs cannot seriously contend that they should be allowed to make any statement they wish, no matter how partisan, if the VA errs on the side of allowing speech when reviewing proposed remarks. We are unpersuaded, therefore, that the VA has applied § 1.218(a)(14) in such a way as to discriminate against a particular viewpoint. Accordingly, we hold that the district court correctly granted summary judgment for the VA on the plaintiffs' formal speech claims.

B.

We turn next to the plaintiffs' argument that § 1.218(a)(14) violates the plaintiffs' First Amendment rights to engage in informal speech. The crux of the plaintiffs' informal speech claims is that the "partisan activities" and "orations" prohibitions of the regulation apply to informal gatherings, and thus, interfere with their practice of gathering in small groups to deliver prayers or tributes to Confederate soldiers. Although the VA has not applied the regulation to plaintiffs' informal speech, the plaintiffs argue that they have standing under *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (holding that where the "plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief").

| GRIFFIN v. DEP'T OF VETERANS AFFAIRS | 9 |
|---|---|

While not expressly ruling on the question whether the plaintiffs have standing to assert their claims regarding informal speech, the district court determined that the plaintiffs' arguments failed under the Federal Circuit's decision in *Griffin II*.[4] We conclude, however, that the district court lacked jurisdiction to consider the merits of these claims because the plaintiffs have failed to establish a "credible threat" that the VA will seek to enforce the regulation against informal speech. In fact, the VA takes the position before this court that "informal, impromptu discussions among small groups of people plainly are not the same thing as orations to assembled groups." Thus, plaintiffs have failed to demonstrate a "threatened injury that is concrete and particularized," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and have failed to set forth justiciable claims. We therefore vacate the district court's judgment on the informal speech claims and remand with instructions that they be dismissed.

### C.

We next address plaintiffs' claim that Rapp's second letter to Camalier Camp, written in response to Anderson's speech at the 2002 ceremony, improperly promulgated new regulations and that these regulations violate the First Amendment. In his letter, Rapp objected to Anderson's "commentary on current events" and expression of "personal views that were critical of a number of individuals and organizations." The district court determined that the VA never applied Rapp's letter to the plaintiffs, and accordingly, they failed to present a proper as-applied challenge. The district court also determined that Rapp's letter did not create additional restrictions on speech, but instead explained why Anderson's speech was unacceptable under the terms of § 1.218(a)(14).

We need not decide whether Rapp's letter set forth new regulations or, if so, whether they were improperly promulgated, because the plaintiffs have not presented any evidence that the VA ever used the

---

[4]There, in rejecting a facial challenge to § 1.218(a)(14), the court said that "visitors of ordinary intelligence reading § 1.218(a)(14) would understand what behavior was expected of them on VA property—particularly on the grounds of a national cemetery." *Griffin II*, 288 F.3d at 1330.

| 10 | GRIFFIN v. DEP'T OF VETERANS AFFAIRS |
|---|---|

terms of the letter to restrict speech. Rapp's letter was a response to Anderson's speech at the 2002 ceremony, and the VA, therefore, could not have restricted speech at that ceremony based on a letter written after its occurrence. Moreover, in objecting to portions of Griffin's speech at the 2003 ceremony, the VA made no reference to Rapp's letter, relying solely on § 1.218(a)(14). Thus, the plaintiffs cannot demonstrate that they have been injured by the VA's application of any term in Rapp's letter. Nor have they established a "credible threat" of prosecution under *Babbitt* because even if the VA plans to enforce the terms of Rapp's letter against them in the future, the screening procedure ensures that the plaintiffs will not be forced to subject themselves to criminal prosecution as the only means of seeking relief. Because the plaintiffs lack standing, we vacate the district court's judgment on these claims and remand with instructions that they be dismissed.[5]

### D.

Finally, we address the plaintiffs' claim that the VA, by requiring plaintiffs to submit proposed remarks to the VA prior to the ceremony, engaged in an unconstitutional prior restraint. The plaintiffs, relying on *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987), argue that this requirement violates the First Amendment because it places unbridled discretion in the hands of VA officials. We conclude, however, that to the extent the plaintiffs bring an as-applied challenge, there is no indication in the record that VA offi-

---

[5]In their complaint, the plaintiffs also challenged the first letter written by Rapp, which was never addressed by the district court. In that letter, Rapp objected to "political statements" in Griffin's proposed remarks for the 2002 ceremony. Because Griffin amended his remarks in response to this letter, it appears that the plaintiffs would have standing to challenge it. It is unclear, however, whether the plaintiffs argue on appeal that the district court erred by not addressing this prior letter. To the extent that they do, we conclude that such a challenge is without merit. Rapp's use of the word "political" was clearly meant to be synonymous with the term "partisan," and in any event, § 1.218(a)(14) explicitly provides that the list of activities included in the term "unauthorized demonstration" is nonexclusive. Moreover, the VA's application of § 1.218(a)(14) to Griffin's proposed speech at the 2002 ceremony was reasonable in light of the clearly partisan remarks that Griffin intended to make.

GRIFFIN v. DEP'T OF VETERANS AFFAIRS　　11

cials looked to anything other than the terms of § 1.218(a)(14) in objecting to the plaintiffs' speech—terms which have been upheld on a facial challenge. Moreover, when considered in light of the forum's purpose of honoring those who gave their lives to the nation in tranquil and nonpartisan surroundings, *Griffin I*, 274 F.3d at 821, this requirement was a reasonable response to the partisan remarks delivered by Anderson at the 2002 memorial service. To the extent that the plaintiffs bring a facial attack, we are without jurisdiction to consider it. *See* 38 U.S.C. § 502.

### III.

For the foregoing reasons, we affirm the judgment of the district court in part, vacate in part, and remand for proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*